LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
(212) 465-1180
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOUSSAINT WORTHAM, *on behalf of himself and all others similarly situated*,<br><br>                            Plaintiff,<br><br>            -against-<br><br>TOTAL TRANSPORTATION CORP.,<br>PRIDE TRANSPORTATION SERVICES INC.,<br>BROOKLYN TRANSPORTATION CORP.,<br>BELLA BUS CORP.,<br>QUALITY TRANSPORTATION CORP.,<br>L & M BUS CORP.,<br>MAGGIES PARATRANSIT CORP.,<br>GVC II INC.,<br>MAT BUS CORP.,<br>21ST AVE BUS CORP.,<br><br>                         Defendants. | Case No.: 21-cv-00085<br><br>**AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff TOUSSAINT WORTHAM ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned attorneys, as and for his Complaint against Defendants TOTAL TRANSPORTATION CORP ("TTC"), PRIDE TRANSPORTATION SERVICES INC., ("PTS"), BROOKLYN TRANSPORTATION CORP. ("BTC"), BELLA BUS CORP. ("BBC"), QUALITY TRANSPORTATION CORP. ("QTC"), L & M BUS CORP. ("L&M"), MAGGIES PARATRANSIT CORP. ("MPC"), GVC II INC. ("GVC"), MAT BUS

CORP. ("MAT"), 21ST AVE BUS CORP. ("21A"), (TTC, BTC, BBC, QTC, L&M, MPC, GVC, MAT, and 21A collectively referred to herein as "Defendants"), states on information and belief as follows:

## INTRODUCTION

1.      Plaintiff brings this action on behalf of himself and all others similarly situated to recover unpaid regular, overtime, and spread-of-hours wages, statutory penalties, liquidated damages, interest, and reasonable attorney's fees and costs under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 *et seq.*) and the wage orders promulgated thereunder by the U.S. Department of Labor and codified at 29 C.F.R. § 500 *et seq.* ("FLSA"), and Articles 6 and 19 of the New York Labor Law and the wage orders promulgated thereunder by the New York State Department of Labor and codified at 12 N.Y.C.R.R. §§ 135-146 ("NYLL").

2.      Plaintiff further alleges, pursuant to 29 U.S.C. § 215(a)(3) and NYLL § 215(2)(a), that Defendants retaliated against him for making lawful and protected complaints regarding his, and his fellow employees', compensation.  Due to Defendants' retaliation against him, he is entitled to recover from Defendants: (1) compensatory damages, (2) punitive damages, (3) attorneys' fees and costs, and all other penalties the Court deems appropriate.

3.      Defendants own and operate a bussing conglomerate.  Plaintiff and others similarly situated worked for Defendants as drivers and other laborers.  Plaintiff and others similarly situated regularly worked in excess of 40 hours per week for Defendant, but were not compensated properly for all of the hours they worked, or for their overtime hours.

## PARTIES, JURISDICTION, AND VENUE

4.      At all times relevant herein, Plaintiff was and is a resident of the State of New York, Kings County.

5.      At all times relevant herein, Defendant TTC was and is a domestic business corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at 3167 Atlantic Avenue, Brooklyn, New York ("Atlantic Avenue Garage").

6.      At all times relevant herein, Defendant PTS was and is a domestic business corporation duly organized under and existing by virtue of the laws of the State of New York, and having an address for service of process at 231 Malta St Brooklyn, New York, 11207.

7.      At all times relevant herein, Defendant BBC was and is a domestic business corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at the Atlantic Avenue Garage.

8.      At all times relevant herein, Defendant QTC was and is a domestic business corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at the Atlantic Avenue Garage.

9.      At all times relevant herein, Defendant L&M was and is a domestic business corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at the Atlantic Avenue Garage.

10.     At all times relevant herein, Defendant MPC was and is a domestic business corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at the Atlantic Avenue Garage.

11.     At all times relevant herein, Defendant GVC was and is a domestic business corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at the Atlantic Avenue Garage.

12.     At all times relevant herein, Defendant MAT was and is a domestic business

corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at the Atlantic Avenue Garage.

13.     At all times relevant herein, Defendant 21A was and is a domestic business corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at the Atlantic Avenue Garage.

14.     All the Defendants share a common ownership in Augostino Vona and John Cronin and share a management team. The Defendants are operated as a single integrated enterprise, under the common control of the Defendant TTS and Augostino Vona and John Cronin.  Specifically, the Defendants are engaged in related activities, share common ownership and have a common business purpose:

  a) All of the Defendants share a common central office space, at the Atlantic Avenue Garage located at 3167 Atlantic Avenue, Brooklyn, New York.

  b) Including Defendants shared office space, Defendants operate the locations listed on their shared website[1] (submitted herewith as **Exhibit 2**).

  c) Plaintiff has witnessed Defendants regularly share and exchange non-exempt employees, who are interchangeable among the bussing corporations. Defendants require employees to work for different corporate entities on an as needed basis.  For example bus drivers would drive bus routes from various Defendants on an as needed basis.

  d) For example employees, including Plaintiff, were used interchangeably by the Defendants.  Even if an employee's primary corporate employer was BBC. Defendants would frequently instruct such individuals to work for their other

---

[1] https://totalbusco.com (last accessed February 13, 2020).

corporate entities on an as needed basis.  For example, when an employee whose primary corporate employer was BBC worked for PTS, his paystubs would remain unaltered and the work conducted for PTS would be paid with paystubs from BBC.

e) All the Defendants are all operated out of the same location, namely the Atlantic Avenue Garage located at 3167 Atlantic Avenue, Brooklyn, New York.

f) All the Defendants use a central marketing department located at the Atlantic Avenue Garage, 3167 Atlantic Avenue, Brooklyn, New York.

g) All paychecks of Defendants employees are issued through a centralized shared payroll department at the Atlantic Avenue Garage, 3167 Atlantic Avenue, Brooklyn, New York.

h) Defendants maintained a central office at the Atlantic Avenue Garage, for executive management and key managerial and support staff.  Augustino Vona is identified as the chief executive officer of TTC, BTC, QTC, L&M, MPC, MAT, and 21A in their filings with the New York Department of State.  Vona was or is also an owner, shareholder, officer, director, manager, and/or supervisor of one or both of BBC and GVC. John Cornin is the chief executive officer of BBC and PTS.

i) Defendants shared website at https://totalbusco.com has a common submission for individuals to book a charter.  *See* Exhibit 3 p. 1-3.

j) Defendants shared website has a common career page allowing individuals to apply to Defendants collectively. *See* Exhibit 3 p. 4-7.

k) Defendants share the lot on and around 400 Stanley Avenue, Brooklyn, NY

11207.  Defendants share the lot around 400 Stanley Avenue, and Defendants use trailers for remote offices for each of the Defendants.  Plaintiff has observed that Defendants' employees will frequently work and report to any of a number of the different trailers even if they primarily work with only one of the Defendants.  Plaintiff himself has frequently reported to PTS, which maintains a satelite trailer in or around 400 Stanley Avenue, Brooklyn, NY, even though he was hired through BBC.

l)  Plaintiff observed that even Defendants' buses were used interchangeably between the corporate entities.  Plaintiff observed Defendants send a vehicle from one corporate Defendant, to be used by another Defendant on an as needed basis.  Thus if a Defendnat was short on buses because of repair, buses used by other Defendants would be shared and utilized.

m)  Employees operate interchangeably out of the Defendants' New York locations and use vehicles and equipment without regard to the nominal ownership of the Defendants.

n)  The Defendants provide the same terms of employment to employees at all locations pursuant to their collective bargaining agreement with the International Union of Journeymen and Allied Trades.

o)  Because of the common nature of the joint enterprise, all bus drivers employed by Defendants were subject to the same wage policies, on-boarding documents, employee policies, human resources policies and workplace rules and guidelines

15.    The Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that

6

the employees of the Defendants handle goods and materials produced outside of New York (including vehicles, tools, cleaning supplies, and other items) that have moved in interstate commerce, and the Defendants are thus employers subject to the jurisdiction of the FLSA.

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under the FLSA.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those claims are related to Plaintiff's federal claims and form part of the same case or controversy.

17.     This Court has personal jurisdiction over the Defendants in that they are incorporated in the state of New York and have their principal places of business therein.

18.     This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b), because one or more Defendants reside in this district and the events giving rise to Plaintiff's claims occurred herein.

## JURY DEMAND

19.     Plaintiff demands a trial by jury of all issues so triable in this action.

## STATEMENT OF FACTS

*Wage And Hour Allegations*

20.     Defendants own and operate an enterprise that provides bussing services to public entities and private individuals in the New York City area.

21.     Since in or around March 2019, Plaintiff was hired to work, and has worked, as a bus driver for Defendants.  Plaintiff worked with Defendants until April 10, 2021, when due to Defendants' retaliation against Plaintiff for bringing the instant action, Plaintiff was constructively discharged.

22.     Neither Plaintiff nor any of the other drivers employed by Defendants are required

to travel outside of the State of New York on more than a *de minimis* basis.  Thus Plaintiff and others similarly situated are not exempt from the overtime regulations of the FLSA and NYLL pursuant to FLSA § 213(b)(1) and 12 N.Y.C.R.R. § 142-2.2.

23.     From the start of Plaintiff's employment in or around March 2019 through in or around August 2019, Plaintiff worked 5 night shifts per week for BBC, Sunday through Thursday. At the start of Plaintiff's daily shift, Plaintiff travelled from Defendants' vehicle depot located at 400 Stanley Avenue, Brooklyn, NY, with the bus assigned to him for that night.

24.     Plaintiff then commuted to Ward's Island Manhattan, a journey of fifty (50) minutes to an hour.  While in Ward's Island and throughout his shift, Plaintiff would receive calls from Defendants' clients, homeless shelters, and would be tasked with bussing the homeless population between shelters to accomodate overcapacity.  During this period of time, Plaintiff's shift was scheduled to last seven (7) hours between 9:00 PM to 4:00 AM. Plaintiff, FLSA Collective Members, and Class Members always worked past their shift schedule but would be paid for scheduled hours and not actual hours.

25.     At all times, Defendants had a policy of requiring Plaintiff, FLSA Collective Members, and Class Members to continue taking calls, until the end of their shift.  To accomodate these end of shift calls, Plaintiff FLSA Collective Members, and Class Members had to remain in the area of their assignment until the close of their shift.  After Plaintiff and Class Members finished their shift, they were then required to return their buses or vehicles to Defendants' vehicle depot.  Defendants had a policy of failing to compensate for this return time, and Defendants compensated Plaintiff and Class Members only for their scheduled shifts.  Defendants failed to compensate Plaintiff and Class Members for an hour for each of their shifts.

26.     From the start of Plaintiff's employment through in or around August 2019,

Plaintiff also would work a day shift approximately once per month with Defendants' L&M and PTS corporations. L&M and PTS provided school busses and drivers to their clients. When Plaintiff and Class Members worked the day-shift on behalf of Defendants, the shift would be compensated as if lasting only six (6) hours, from 6:00 AM to 9:00 AM and then again from 2:00 PM to 5:00 PM.

27. To start these day shifts, Plaintiff, FLSA Collective Members, and Class Members leave the Defendants' vehicle deport located at 400 Stanley Avenue, Brooklyn, NY at or around 6:00 AM. Plaintiff and Class Members would then drive through their assigned routes, picking up school kids, and dropping these children off at their respective schools at or around 9:00 AM. At this point, Defendants stop paying employees, and only continue paying employees at or around 2:00 PM when Plaintiff and Class Members begin to pick the same kids up from school, drop them off at their homes, and return the vehicles to Defendants' depot at or around 5:00 PM. Defendants fail to pay employees for the intervenning time between these two routes. Plaintiff and Class Members are still working in these intervening hours as they are required to care for the busses in their charge, inspect the buses for saftey and be on call for services that Defendants request, which prevent Plaintiff and Class Members from having the ability to engage in personal activities. Regardless of hours worked, Plaintiff and Class Members were paid only for their sechduled shift hours, and not actual hours worked. Plaintiff was paid exactly exactly six (6) hours for every day shift he worked. Plaintiff, FLSA Collective Members, and Class Members were never compensated for time in excess of Defendants' pre-determined shift length. Defendants failed to compensate Plaintiff and Class Members two (2) hours it took employees' to either travel out of these school districts, or the time it would take employees to travel back to Defendants' vehicle depot to drop off their busses. Such work exceeding the scheduled shift hours were

uncompensated.

28.     From the start of Plaintiff's employment through in or around August 2019, Plaintiff sufferred at least five (5) hours of unpaid working time per week.  FLSA Collective Members and Class Members similarly were shorted.

29.     Plaintiff's schedule changed in August 2019.  From August 2019 through and until the end of Plaintiff's employment, Plaintiff worked the night shift with BBC five days a week. Plaintiff worked nine (9) hour shifts Monday through Thursday from 9:00 PM to 6:00 AM, and worked a five (5) hour shift Sunday, from 9:00 PM to 2:00 AM.  In addition to working with Defendants' BBC, Plaintiff also began working on L&M and PTS bus routes.  While Plaintiff's hours and shift assignemnts remained the same, Plaintiff began working with L&M and PTS approximately five (5) days a week instead of around once per month.  From the start of Plaintiff's employment to the end of Plaintiff's employment, Defendants policies regarding uncompensated time remained the same.

30.     From August 2019 to the end of his employment Plaintiff was scheduled for approximately sixty (60) hours, but worked more hours that were uncompensated.

31.     On the days Plaintiff worked the day shift with L&M and PTS, Plaintiff would leave Ward's Island, his assigned area, so as to arrive back at Defendants' vehicle depot by 6:00 AM to begin his day-shift.

32.     From in or around August 2019 to the end of his employment, Plaintiff experienced approximately (6) hours of time shaving per week.

33.     FLSA Collective Members and Class Members experienced similar uncompensated hours to that of Plaintiff.

34.     At all times during Plaintiff FLSA Collective Members, and Class Members

employment, when employees worked for Defendants' other corporate entities employees would receive only one paystub. The paystub would be generated by the entity that primarily employed Plaintiff FLSA Collective Members, and Class Members. In the case of Plaintiff, the hours he worked for L&M and PTS would be shown on his paystubs from BBC.

35.     Defendants claim to pay Plaintiff and Class Members on an hourly basis, but in reality, Plaintiff and Class Members are paid by shift. Defendants pre-determine how many hours any shift will cover and paid Plaintiff, FLSA Collective Members, and Class Members, for those exact hours regardless of how many hours Plaintiff and Class Members actually worked. Defendants claim to pay Plaintiff at a rate of $17.75 per hour, but due to the excessive non-compensated work Plaintiff and Class Members are required to work, Plaintiff, FLSA Collective Members, and Class Members compensation actually falls far beneath that sum.

36.     Plaintiff's shifts would take longer than the pre-defined time that Defendants would pay him. Defendants purport to pay hourly, but as they actually pay based on shift, this extra-time would go entirely uncompensated and unrecorded. Class Members and FLSA Collective Plaintiffs similarly were only paid for scheduled hours and not actual hours.

37.     Given the shortfall in hours paid to Plaintiff FLSA Collective Plaintiff's and Class Members, their average rate of pay was actually below the prevailing minimum wage. Thus, on days where Plaintiff and Class Members workday exceeded 10 hours per day, they do not receive spread-of-hours compensation as required under the NYLL.

38.     Defendants also failed to properly record the unpaid time Plaintiff and others similarly situated worked, and thereby failed to make and keep accurate payroll records and provided Plaintiff and others similarly situated with fraudulent wage statements in violation of the FLSA and NYLL.

39.    Defendants were or should have been aware of their statutory requirements as employers, including specifically but without limitation the requirements under the FLSA and NYLL to pay Plaintiff and others similarly situated for all of the time they worked (and to pay hours over 40 per week at the premium overtime rate), to pay spread-of-hours compensation when Plaintiff and others similarly situated worked in excess of 10 hours per day, and to make and preserve proper payroll records.

40.    However, Defendants knowingly failed to pay Plaintiff and others similarly situated all of the regular and overtime wages to which they were entitled, and to make and preserve proper payroll records.

41.    As such, the various violations of the FLSA and NYLL alleged herein were committed knowingly, willfully, and intentionally by Defendants.

42.    Furthermore, these violations are ongoing, as Defendants continue to engage in the wrongful conduct described herein.

*Retaliation Claim*

43.    On January 7, 2021, Plaintiff brought the instant action to address Defendnants' above wage and hour violations.  At the time, Plaintiff continued to work for Defendants.

44.    After Plaintiff brought his complaint, Defendants began retaliating against him.

45.    After the filing of the Complaint, Defendants began denying Plaintiff opportunities that other employees, including Plaintiff, were previously provided.  Such opportunities included the ability to park his vehicles in Defendants' parking lot.  Previously, all employees were allowed to park in this area.  After Plaintiff brought this lawsuit this priviledge was denied to Plaintiff and he would have difficulty starting work on time because he could not readily find parking spots. This was used as a pretext to cause Plaintiff to be late.

46.     After the filing of the suit, Defendants began to take negative employment action against Plaintiff.  Before filing his Complaint, Plaintiff was allowed a grace period for arriving timely. After Plaintiff brought his suit, other employees were still allowed this grace period, but Defendants' began giving Plaintiff's shifts to other employees if he was even just a few minutes late caused by his inability to obtain parking.  Plaintiff's supervisor, Calisco Green, took such actions against Plaintiff exclusively.

47.     Such retaliatory acts culminated in Plaintiff's supervisor, Mr. Green, telling Plaintiff that he should quit.

48.     Defendants enaged in the negative employment actions of: (1) additional discipline, (2) denial of priviledges given to other employees, (3) adversley affecting Plaintiff's pay by capriciously reassigning his shifts, and (4) Plaintiff's supervisor telling Plaintiff to quit.

49.     Given the foregoing actions of Defendants, Plaintiff left Defendants' employment on April 10, 2021 because he was contructively discharged.

*FLSA Collective Action Allegations*

50.     Plaintiff brings this action as a collective action pursuant to Section 216(b) of the FLSA on behalf of himself and all other bus drivers, dispatchers, and other non-exempt laborers employed by Defendants on or after the date that is six years before the filing of the initial Complaint in this case ("FLSA Collective Plaintiffs").

51.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper regular and overtime wages.  The FLSA claims of Plaintiff as stated herein are

essentially the same as those of the other FLSA Collective Plaintiffs.

52.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 216(b) of the FLSA.  The FLSA Collective Plaintiffs are readily ascertainable.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

*Class Action Allegations*

53.     Plaintiff brings claims for relief under the NYLL pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all other bus drivers, dispatchers, and other non-exempt laborers employed by Defendants on or after the date that is six years before the filing of the initial Complaint in this case ("Class Period").

54.     All said persons, including Plaintiff, are referred to herein as the "Class."  The members of the Class are readily ascertainable.  The number and identity of the members of the Class are determinable from Defendants' records.  The hours assigned and worked, the positions held, and rates of pay for each Class member are also determinable from Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under Rule 23.

55.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.  Although the precise number of such persons is unknown, as the facts on which the calculation of that number would be based are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

56.     Plaintiff's NYLL claims are typical of those claims, which could be alleged by any

member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions.  All the Class members were subject to the same corporate practices of Defendants (i) failing to pay spread-of-hours wages for work days greater than 10 hours; (ii) failing to pay proper wages for all hours worked; and (iii) failing to provide proper wage notices and statements that were in compliance with the requirements under the NYLL. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff sustained similar losses, injuries, and damages as other Class members, wth such injuries and damages arising from the same unlawful policies, practices, and procedures.

57.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.  Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

58.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing

the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources, while treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

59.     When wage and hour violations arise, current and former employees are often afraid to assert their rights.  Current employees fear direct or indirect retaliation by their employers, while former employees are fearful of damage to their current or future employment.     Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

60.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

     a.   Whether Defendants employed Plaintiff and other Class members within the meaning of the NYLL;

     b.   What are and were Defendants' policies and procedures regarding the types of work and labor for which Defendants did not pay the Class members properly;

     c.   At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the Class members for their work;

     d.   Whether Defendants properly notified Plaintiff and other Class members of their

hourly rate and overtime rate;

e.  Whether Defendants provided proper wage statements and wage and hour notices to Plaintiff and other Class members per requirements of the NYLL;

f.  Whether Defendants properly paid Plaintiff and other Class members spread-of-hours compensation per the requirements of the NYLL; and

g.  Whether Defendant properly compensated Plaintiff and other Class members for all hours worked under the NYLL.

**FIRST CAUSE OF ACTION**
**(FLSA Collective Action)**

61.  Plaintiff repeats each and every previous allegation as if fully set forth herein.

62.  At all relevant times Plaintiff and the other FLSA Collective Plaintiffs were employees of the Defendants within the meaning of the FLSA, and were persons covered by and intended to benefit from the provisions of the FLSA.

63.  At all relevant times the Defendants as a joint enterprise were an employer within the meaning of the FLSA.

64.  At all relevant times the Defendants were joint employers of Plaintiff and the other FLSA Collective Plaintiffs.

65.  As alleged herein, Plaintiff and the other FLSA Collective Plaintiffs regularly worked regular and overtime hours for Defendants for which they were not paid, in violation of the FLSA.

66.  Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the other FLSA Collective Plaintiffs for all of the hours they worked, including overtime hours, when Defendants knew or should have known such was due.

67.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and the other FLSA Collective Plaintiffs suffered damages in the form of unpaid regular and overtime wages.  Plaintiff and the other FLSA Collective Plaintiffs seek judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under the FLSA.

## SECOND CAUSE OF ACTION
### (NYLL Class Action)

68.     Plaintiff repeats each and every previous allegation as if fully set forth herein.

69.     At all relevant times Plaintiff and the other Class members were employees of the Defendants within the meaning of the NYLL, and were persons covered by and intended to benefit from the provisions of the NYLL.

70.     At all relevant times the Defendants as a joint enterprise were an employer within the meaning of the NYLL.

71.     At all relevant times the Defendants were joint employers of Plaintiff and the other Class members.

72.     Defendants failed to compensate employees for all hours which served to reduce the average hourly wage of Plaintiff and others similarly situated to below the applicable NYLL minimum wage.  Furthermore, Plaintiff and Class Members frequently had workdays exceeding 10 hours, but did not receive spread-of-hours compensation as required under the NYLL.  *See Espinosa v. Delgado Travel Agency, Inc.*, 2007 U.S. Dist. LEXIS 15149 (S.D.N.Y. 2007) (using plaintiff's allegations of time-shaving to calculate whether employees made more than minimum wage for purposes of determining spread of hours applicability).

73.     As alleged herein, Plaintiff and the other Class members regularly worked in excess of 10 hours per day and 40 hours per week, but were not paid all of the wages to which they were

entitled under the NYLL, including regular, overtime, and spread-of-hours wages.

74.     Defendants also failed to provide Plaintiff and the other Class members with accurate wage statements and wage notices, as required under the NYLL.

75.     Defendants knew of and/or showed a willful disregard for the provisions of the NYLL as evidenced by their failure to compensate Plaintiff and the other Class members for all of the hours they worked, including overtime hours, when Defendants knew or should have known such was due, and their failure to provide Plaintiff and the other Class members with accurate wage statements.

76.     As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff and the other Class members suffered damages in the form of unpaid regular, minimum-wage, overtime, and spread-of-hours wages.  Plaintiff and the other Class members seek judgment in an amount to be determined at trial for these damages as well as an award of statutory penalties, liquidated damages, interest, attorney's fees, and costs, as provided for under the NYLL.

## THIRD CAUSE OF ACTION
### (Retaliation Under The Fair Labor Standards Act)

77.     Plaintiff repeats each and every previous allegation as if fully set forth herein.

78.     Defendants retaliated against Plaintiff after he complained of Defendants improper employment and compensation practices.

79.     Defendants retaliated against Plaintiff by forcing the termination of his employment after he complained of Defendants' improper employment policies. Through Defendants' actions they made clear to Plaintiff that he would be denied accomadations given to

80.     Defendants' actions constitute a violation of 29 U.S.C. § 215(a)(3).

81.     Plaintiff's employment was compromised as a result of Defendants' retaliatory actions. Plaintiff was also denied promotion opportunities.

82.     Plaintiff suffered mental distress, including high levels of stress and anxiety, which includes therapy treatment.

83.     Plaintiff suffered further from Defendants' cancelling his Costco Membership, and insurance.

84.     Due to Defendants' retaliation under the FLSA, Plaintiff is entitled to recover from Defendants compensatory damages and punitive damages and all other penalties the Court deems appropriate.

## FOURTH CAUSE OF ACTION
### (Retaliation Under The New York Labor Law)

85.     Plaintiff repeats each and every previous allegation as if fully set forth herein.

86.     Defendants retaliated against Plaintiff after he complained of Defendants improper employment and compensation practices, and after he filed the herein Complaint.

87.     Defendants' actions constitute a violation of NYLL § 215(2)(a).

88.     Plaintiff's employment was compromised as a result of Defendants' retaliatory actions. Plaintiff was also denied priviledges and Defendants engaged in adverse employment actions.

89.     Plaintiff suffered mental distress, including high levels of stress and anxiety..

90.     Due to Defendants' retaliation under the NYLL, Plaintiff is entitled to recover from Defendants compensatory damages and punitive damages and all other penalties the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court assume jurisdiction herein and thereafter grant the following relief:

a.   Designation of Plaintiff as representative of the FLSA Collective Plaintiffs;

b. Designation of this action as a class action pursuant to Rule 23;

c. Designation of Plaintiff as representative of the Class;

d. Compensatory damages in an amount to be determined at trial, including unpaid regular, minimum-wage;

e. Statutory penalties and liquidated damages pursuant to the FLSA and NYLL;

f. Lost wages and punitive damages purusuant to the FLSA and NYLL to be determined at trial;

g. Pre- and post-judgment interest; and

h. Plaintiff's costs and reasonable attorney's fees;

Together with such other and further relief as the Court deems just and proper.

Dated: April 30, 2021
New York, New York

LEE LITIGATION GROUP, PLLC

By:     _/s/ C.K. Lee_____
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
(212) 465-1180
*Attorneys for Plaintiff*