```
 1                  UNITED STATES DISTRICT COURT

 2                  EASTERN DISTRICT OF NEW YORK

 3   TOUSSAINT WORTHAM,           .   Docket No.
                                  .   1:21-cv-00085-LDH-MMH
 4         Plaintiff,             .
                                  .
 5           v.                   .   Brooklyn, New York
                                  .   Friday, December 3, 2021
 6   TOTAL TRANSPORTATION         .   2:15 p.m.
     CORP., ET AL.,               .
 7                                .
           Defendants.            .
 8    . . . . . . . . . . . . . . .

 9

10           TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
         BEFORE THE HONORABLE MAGISTRATE MARCIA M. HENRY
11                UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13   For the Plaintiff:          Lee Litigation Group, PLLC
                                  ROBERT  A. KANSAO, ESQ.
14                                148 West 24th Street
                                  Suite 8th Floor
15                                New York, New York  10011
                                  212-661-0052
16
     For the Defendants:          Mintz & Gold, LLP
17                                JEFFREY D. POLLACK, ESQ.
                                     CARLI M. ABERLE, ESQ.
18                                   TIMOTHY J. QUILL, ESQ.
                                  600 Third Avenue
19                                25th Floor
                                  New York, New York  10016
20                                212-696-4848

21

22   Transcription Service:       Opti-Script, Inc.
                                   P.O. Box 77
23                                 Winfield, PA 17889
                                   800-494-7500
24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

```
 1                      P R O C E E D I N G S
 2            THE CLERK:  Good afternoon, everyone.  This is a
 3   civil cause for a telephone status conference, case number
 4   21-cv-0085, Wortham v. Total Transportation Corporation, et
 5   al.
 6            As a reminder, pursuant to local Civil Rule 1.8,
 7   the parties may not independently record any court
 8   proceedings.  A transcript of this proceeding may be ordered
 9   from the Clerk's office.
10            That being said, counsel for Plaintiff, please
11   state your appearance for the record followed by counsel --
12   counsels for the Defendants.
13            MR. KANSAO:  Sorry.  I was muted.
14            Robert Kansao, here for the Plaintiff.
15            MR. POLLACK:  And you have Jeff Pollack, Timothy
16   Quill, and Carlie Aberle for the Defendants, Your Honor.
17            THE COURT:  All right.  Good afternoon to everyone.
18            All right.  So we are on for -- well, it's a status
19   conference but, as you know, there are many pending motions
20   to cover.
21            Before we start the proceedings, I would like to
22   just offer some logistical guidelines for how we interact on
23   this call.  It is being audio recorded.  I would like to try
24   and keep the recording as clear as possible.
25            So the first and most important thing is that if
```

1  you're not speaking to please yourself on mute to avoid any

2  background noise that may interfere with the recording.

3        The second thing is if you could please wait until

4  I call upon you to speak because that will avoid us talking

5  over each other which can further cloud the recording.

6        And then third, I would note from this docket that

7  there's been a significant amount of motion practice in a

8  case that was filed only this year.  So if you hear something

9  that your adversary says with which you strongly disagree

10 rest assured you'll be given an opportunity to respond so

11 please don't interrupt them.

12        Again, there's been a lot of motion practice.

13 There has been a lot of, I'm sure, conversation between

14 counsel offline, and I would just ask that you keep the

15 proceeding civil today and not interrupt each other.  I will

16 call upon you to respond if needed.  All right?

17        So with that overview, I would like to get into the

18 case.  As I mentioned, there are a number of motions that are

19 pending, the primary one being the motion to amend the

20 complaint, which is I believe the main filing -- excuse me,

21 well, the memorandum of law is at docket number 31 but I

22 think the notice is at 30.

23        And there are also a number of discovery-related

24 motions which, frankly, I believe to be a little bit

25 premature given that there's no scheduling order that's been

1    put into place.

2           So what I'd like to do is start off with the motion

3    to amend.

4           And is it Mr. Kansao?

5           MR. KANSAO:  That's right, Your Honor.  Kansao.

6           THE COURT:  Kansao.  Okay.

7           All right.  If you'd like to start.  I have

8    specific questions but I'm happy to give you an opportunity

9    to make your general argument first.

10          MR. KANSAO:  Well, I'm happy to go over the

11   specific questions.  I think that the papers are speaking for

12   themselves.  We're seeking to amend the complaint to include

13   new Plaintiffs and new corporate entities, as well a claim

14   for split shift pay.  Well, I guess I'm making the general

15   argument as I'm speaking here.

16          The claims for the new Plaintiffs are for a

17   Pennsylvania Plaintiff and we are seeking to include the --

18   well, the corporations that are -- have the same exact name

19   as two of the New York Corporations that are incorporated in

20   Pennsylvania but are headquartered here with the remaining

21   Defendants in New York, as well as another Plaintiff who has

22   worked in New York and who's worked directly for two of the

23   companies.

24          It's my understanding that Defendants are opposing

25   this motion stating that these -- that there is no allegation

1    of joint employer and that there's not enough specificity to

2    allege specific -- a single integrated enterprise.

3             On our end, we obviously dispute that and we allege

4    common ownership, interlaced financial operations, and the

5    same management teams and structure, as well as common

6    marketing.  If you go through, I think, the majority of our

7    allegations demonstrating joint employer and single

8    integrated enterprise are found in paragraph 22 of our

9    proposed second amended complaint.

10            But most importantly, they allege that the

11   Defendants all jointly maintained their records when

12   Plaintiff worked for Bella Bus and another corporate entity,

13   whether it be Pride Transportation or L & H [sic throughout]

14   within the same week.  All of the hours are recorded on the

15   same pay stub.  He's paid the first 40 hours regular and is

16   paid the overtime after that without -- like I said, on the

17   same pay stub.

18            When he's transferred internally between these

19   corporations, there's just the same wage notice, there's no

20   new onboarding documents that have to be provided, that --

21   the companies all have the same handbook.

22            And as for the management, we've alleged that they

23   all share the same common career page.  We'll go more than

24   allege it.  We have actually appended to the second amended

25   complaint their common website where prospective employees

1  can apply to any of the Defendants on a single career page

2  and how they -- how prospective customers can all book buses

3  on, once again, a single career page.

4        And we have alleged that the Defendants themselves,

5  whether the Plaintiff is working for Bella Bus, L & H, or

6  Pride Transportation, or as in the case of Mary Evans,

7  Quality Transportation Company, they all share the same

8  dispatcher.

9        THE COURT:  All right.

10        MR. KANSAO:  And -- yeah.  Go ahead.

11        THE COURT:  You can finish.

12        MR. KANSAO:  No, no.  I was just going to go

13  through the ownership but they all have the same executive

14  management team.  They all have the same CEO, whether it's --

15  the same two CEO's, either John Cronin or Agostino Vona.  And

16  they all share the same office located at -- the same

17  headquarters located at 3167 Atlantic Avenue.

18        THE COURT:  All right.  So a couple of things.  So

19  you talked about no matter which of the entities that

20  Plaintiffs work for but which of the entities actually

21  employed the Plaintiffs?

22        MR. KANSAO:  Well, since drafting and submitting

23  this -- the second amended complaint, we have gotten

24  documents but before I get into the new documents, which we

25  filed a letter to attempt to supplement our motion, I'll say

1    that Toussaint Wortham worked for Bella Bus, L & H, and

2    Pride, and I'm shortening their corporate names.  And Marcell

3    Leonard worked for the Mat Bus Corporation, incorporated in

4    Pennsylvania.  And Mary Evans worked for Quality

5    Transportation Company and Pride Transportation Services here

6    in New York.

7            Now, the reason why I was hesitant to say just that

8    they worked for those is because, according to the new

9    documents we have received, it seems that these -- that they

10   were -- that Total Transportation Company employees were the

11   managers of Plaintiff Toussaint Wortham.

12           The employee that engaged in Plaintiff's onboarding

13   was an employee of Total Transportation Company.  The manager

14   that signed any disciplinary forms, whether he worked --

15   whether Plaintiff Toussaint Wortham worked for Bella Bus or L

16   & H was the employee, Samuel Bent that was an employee of

17   Total Transportation Company.

18           And finally, the Plaintiff -- I forgot to mention,

19   prior to this is the fact that the Defendants all have -- all

20   share the same lot, so Plaintiffs have alleged that they

21   observed employees transferring between all of these

22   different companies just as Toussaint Wortham did and Mary

23   Evans did.

24           THE COURT:  All right.  I'm not entirely sure that

25   addresses the question that I was asking but I'm going to

1    move on to another one, which is more pressing for me.

2              Can you explain the jurisdiction over the

3    Pennsylvania Defendants?

4              MR. KANSAO:  Oh, they're --

5              THE COURT:  And is it under a theory of general

6    personal jurisdiction?

7              MR. KANSAO:  That's correct.

8              THE COURT:  Okay.  Go ahead.

9              MR. KANSAO:  They have their headquarters here,

10   located at 3167 Atlantic Avenue, and I don't think that was

11   disputed in the opposition that Defendants put forward.

12             THE COURT:  All right.  And so could you -- you've

13   gone through and I think a lot of your -- a lot of what

14   you've just described is supporting your mirror department

15   theory; is that accurate?

16             MR. KANSAO:  It's supporting the mirror department

17   theory but I think these allegations also go to demonstrate

18   that employees of the Defendants are jointly managed, that

19   the Defendants engage in -- as a joint employer or as a

20   single integrated enterprise.

21             So yes, this also goes to our department theory.

22   But like I said, I don't believe that Defendants are

23   disputing that the Pennsylvanian corporations -- the

24   corporations incorporated in Pennsylvania are headquartered

25   here in New York.

1          THE COURT:  Well, I'm quite sure Mr. Pollack or his

2     colleagues will opine as to what they or are not contesting.

3          But since you have the floor I'm just going to --

4     and I actually forgot to say this at the outset so let me

5     just interrupt this part of the argument to note that, as I

6     stated earlier, there's been a lot of motion practice in this

7     case, particularly within the past, I would say, six months

8     or so, and a lot of it has contained a lot of commentary and

9     dare I say aspersions cast against each other's adversaries.

10         I just want to let you know that that's really not

11    relevant.  It's not helpful.  It doesn't help your clients.

12    It doesn't help your arguments.  I would appreciate if you'd

13    focus on your own arguments and focus on the claims that

14    you're making as opposed to casting aspersions, whether in

15    writing, and I'm not saying that you were doing that orally,

16    Mr. Kansao, but again, there's a fine line between

17    characterizing your adversaries arguments and getting into

18    making personal remarks about them.

19         And so I would just encourage everyone to avoid

20    that type of behavior.  It's just really unacceptable.  So

21    it's my hope that as this case continues that the pleadings

22    going forward can avoid that.

23         But back to the substantive argument.  So I think

24    my other related question on this mirror department theory is

25    how it squares with more recent Supreme Court personal

1    jurisdiction and jurisprudence.

2              MR. KANSAO:  I'm not sure how to respond to the --

3              THE COURT:  Is the mirror department theory still

4    relevant?

5              MR. KANSAO:  I didn't hear that last part.  Can you

6    repeat that?

7              THE COURT:  Sure.  Is the mirror department theory

8    under New York law still valid?

9              MR. KANSAO:  I believe so.  I don't know of a

10   Supreme Court precedent that would invalidate it.

11             THE COURT:  All right.  Perhaps Mr. Pollack can

12   help us.

13             MR. KANSAO:  I apologize.  I think that in -- it

14   was -- the most recent case that I cited to was Vega against

15   Hastings Beds Incorporated, which was from 2021.

16             THE COURT:  All right.  I was referring to Daimler,

17   but again, this may be a topic that Mr. Pollack or his

18   colleagues address.

19             So did you want to add anything else, Mr. Kansao?

20             MR. KANSAO:  No, Your Honor.

21             THE COURT:  All right.  Thank you.

22             Turning to the Defense, Mr. Pollack, are you going

23   to be the one who's arguing today?

24             MR. POLLACK:  Yes, Your Honor.

25             THE COURT:  Okay.  Go ahead.

1        MR. POLLACK:  So what was absent from counsel's

2   presentation is a relationship between each Plaintiff and all

3   the other companies they want to bring in.

4        So you know, let's start with Mr. Wortham.  Mr.

5   Wortham worked for Bella, L & M, and Pride.  He has not

6   alleged any relationship between any other company.

7        And what we also have to do, and I'm just going to

8   finish on that -- Leonard worked only for Mat in

9   Pennsylvania.  Mr. Leonard has not alleged any relationship

10  to New York.  He's never alleged he drove to New York.  He

11  never alleged he worked in New York.  He never alleged --

12        THE COURT:  All right.

13        MR. POLLACK:  -- he worked for any --

14        THE COURT:  All right.

15        MR. POLLACK:  -- other company.

16        THE COURT:  Mr. Pollack, just one quick question.

17  So are you focusing on -- because Bella and some of these

18  other companies are already in the the complaint.  And are

19  you talking about the addition of the two new companies, as

20  well?

21        MR. POLLACK:  Correct.  And it's hard to say that

22  because some of the companies that are in the complaint --

23  two of the companies are private transit companies.  They're

24  not even school bus companies.  So if and when we ever get to

25  that we're going to have to file a motion to dismiss on that.

1          THE COURT:  Well, let me --

2          MR. POLLACK:  But on --

3          THE COURT:  Let me actually offer something in that

4  regard because a lot of the opposition arguments that I read

5  through do seem to focus on arguments that will be raised --

6  that I am sure will be raised on a motion to dismiss should

7  this second amendment complaint be granted, but the -- or the

8  motion to amend the -- excuse me, the motion to amend the

9  complaint.

10         But the procedural posture that we're in now is

11  whether or not leave should be granted to amend the amended

12  complaint.  So to the extent that your arguments are, I

13  guess, geared toward your future motion to dismiss, I would

14  just offer that you could please keep them focused on the

15  procedural posture that we're in right now.

16         MR. POLLACK:  Okay.  I will.

17         So what we have right now is they want to add Mr.

18  Leonard.  Mr. Leonard worked in Pennsylvania only.  There's

19  no allegation that he ever came to New York.  There's no

20  allegation that Mr. Wortham ever went to Pennsylvania to

21  work.

22         Mr. Evans, he worked for Quality and Pride.  No

23  allegation that he ever went to Pennsylvania.  No allegation

24  relating to Pennsylvania at all.

25         There's an allegation that the Defendants -- I just

1    want to say, the Defendants share a vehicle depot.  This is

2    one of the problems with the pleading.  The pleadings use the

3    words Defendants all over.  The Defendants share a vehicle

4    depot at 400 Stanley Avenue in Brooklyn.  That's page 6 of

5    their reply.

6            Does anybody really think that a bus company in

7    Pennsylvania has a vehicle depot in Brooklyn and they drive

8    buses back and forth?  There's too much lumping together

9    using the word Defendants.  And there is no allegation of

10   interrelation and interchange of operations.

11           What we have here is concurrent employment.  And

12   that term was actually used in a case that counsel's firm --

13   let me just get to it.  Apologize.  And we did not cite this

14   case.  I apologize.  It's Weiss v. Starr Group -- Small

15   Restaurant Group, 2021 Westlaw 3099895 from the Southern

16   District of New York, July 21st, 2021.

17           THE COURT:  You're going extremely fast.

18           MR. POLLACK:  I'm sorry.

19           THE COURT:  That's 2021.  What's the case --

20           MR. POLLACK:  Westlaw 309 -- I'm sorry?

21           THE COURT:  What is the case name?

22           MR. POLLACK:  Weiss v. Starr, S-T-A-R-R Restaurant

23   Group.

24           THE COURT:  Okay.

25           MR. POLLACK:  2021 Westlaw 3099895.

1          THE COURT:  Okay.

2          MR. POLLACK:  And that's the Southern District of

3   New York, July 21st, 2021.  And that was Plaintiff's

4   counsel's case.  And that was a motion to dismiss.  And what

5   the judge said there is an allegation of concurrent

6   employment is not the same and not enough to get over the

7   hurdle to allege a single integrated enterprise.

8          A single integrated enterprise is when they just

9   shuffle back -- people back and forth randomly.

10          THE COURT:  Did you say on a 12(b)(6) motion?

11          MR. POLLACK:  That is -- yes.  That was a motion to

12   dismiss.  But you know, the motion to amend uses the motion

13   to dismiss standard.

14          THE COURT:  Actually, the amendment standard is a

15   little bit more liberal but I understand why you're saying

16   that.

17          Go ahead.

18          MR. POLLACK:  So the Court said that -- I'll read

19   it.  Plaintiff's allegations concerning a single employee's

20   concurrent employment at -- there's -- it's a neighborhood

21   restaurant/café and Lili and Loo, standing alone, is patently

22   insufficient to demonstrate they operate as part of a single

23   integrated enterprise.

24          And there's many cases that talk about the fact

25   that they may use a company policy that's the same.  That

1   doesn't matter.  The same -- that they use a website doesn't

2   matter.  What really matters is who's responsible for the

3   day-to-day decisions that affect an employee.  So there's

4   been no allegation that the person who's responsible for the

5   day-to-day allegations of Wortham is the same person that's

6   responsible for the day-to-day allegations of Leonard.

7           Same with Evans.  Now, it may be true that some

8   people wear multiple hats.  But the Courts also say that's

9   not enough to create a single integrated enterprise theory.

10  It's a much, much higher burden than sharing common things,

11  and the Courts refer to that as a economies of scale:  the

12  fact that we use the same employee manual, the fact that we

13  have the overriding people in the human resources department.

14  What really matters is on a day-to-day basis who is making

15  the decisions that affect these employees?

16          There's another case I'd like to point out that we

17  did not cite and that is --

18          THE COURT:  Can I just -- before you do that, why

19  aren't these cases in your papers?  Because you clearly feel

20  strongly about them, so did you --

21          MR. POLLACK:  Mr. Quill wrote the papers and as I

22  was preparing for argument I found these cases.  That's --

23          THE COURT:  Okay.  Fair enough.

24          MR. POLLACK:  That's what happened.

25          THE COURT:  Okay.  And I appreciate your candor.  I

1    appreciate your candor.

2          Now again, why don't you talk about the case but I

3    want to say that how does the single integrated enterprise

4    theory defeat this particular motion to amend the complaint?

5          I understand that you are obviously going to make

6    these arguments on a 12(b)(6) motion, but given that leave

7    should generally be freely given to amend complaints, tell me

8    how your theory here defeats this particular motion to amend

9    the complaint, which is the procedural --

10         MR. POLLACK:  Because the amendment would be

11   futile.  It would be subject to a motion to dismiss.

12         THE COURT:  All right.  Yes.  Most of your papers

13   did focus on the futility argument.

14         So go ahead.

15         MR. POLLACK:  So that's what it is.  It's going to

16   be the same thing.  The Court would end up with the same

17   papers again.  They'd be a little beefed up because now we

18   have a couple more cases including two cases where

19   Plaintiff's counsel this year lost on this issue on a motion

20   to dismiss.  And I was about to give you the second --

21         THE COURT:  Again, I would like to caution you

22   between making your argument and talking about your

23   adversary.  Focus on your argument.

24         MR. POLLACK:  Well, it's the case that I'm citing

25   and the case drives home the point here, so.

1            THE COURT:  All right.  What's the case?

2            MR. POLLACK:  It's Stewart v. Hudson Hall, 2020

3    Westlaw 8732875, so Southern District of New York again, and

4    that's October 19th, 2020.  And what the Court said there is

5    even assuming -- and this again, motion to dismiss.  Motion

6    to dismiss was granted.  Even assuming Holdings and Think are

7    part of a broader enterprise, because Stewart does not allege

8    that Holdings or Think have any connection to him or control

9    of his employment there is no basis for bringing them into

10   the lawsuit which at present contains allegations of

11   violations solely as to him.

12            Stewart's allegations of common ownership and

13   common purpose without more do not answer the fundamental

14   question of whether each corporate entity controlled Stewart

15   or any other employees.

16            So you have to have a connection between the

17   Plaintiff and the entity they're trying to bring in.  Having

18   a common website is just not enough.  Having a common

19   employee manual is just not enough.

20            In fact, if you look at the allegations of Mr.

21   Leonard -- hold on.  I believe it's --

22            THE COURT:  Yes.

23            MR. POLLACK:  No.  It's Evans.

24            THE COURT:  Yeah.  Speak to me about the specific

25   proposed allegations here if that's what you're basing your

1    arguments on.

2             MR. POLLACK:  So Evans actually shows there was no

3    interchange.  Evans says --

4             THE COURT:  What's the specific allegation?

5             MR. POLLACK:  I'm sorry?

6             THE COURT:  Talk to me about the specific

7    allegations --

8             MR. POLLACK:  Well --

9             THE COURT:  Go ahead.

10            MR. POLLACK:  One of the allegations is interchange

11   of employees.  But there is no allegation of that.  That's a

12   conclusory allegation.  Evans says he worked for Quality the

13   first week only and then after the first week he only worked

14   for Pride.  That's not an interchange of employees.

15            Leonard only worked for Mat Pennsylvania.  No

16   interchange of employees.  Wortham worked concurrent jobs.

17            THE COURT:  Isn't the allegation that the entities

18   that are, again, that the intended -- subject to the intended

19   amendments to this complaint, isn't the allegation that these

20   new entities were employers of the new Plaintiffs?

21            MR. POLLACK:  Well, the Pennsylvania employees --

22   companies were certainly not employers of Wortham or Evans.

23   And the New York Companies were certainly not employers of

24   Mr. Leonard.

25            THE COURT:  Okay.  But understanding that you

1   disagree with the proposed allegation, is it not alleged?

2   Isn't that the proposed allegation?

3            MR. POLLACK:  Well, it was alleged insufficiently

4   that they're a single integrated enterprise.  The allegation

5   is that Wortham worked for Bella, L & M, and Pride.  We

6   haven't admitted or denied that because we haven't put in our

7   response to pleading.  But that's the allegation.  There's no

8   allegation that Bella -- Wortham worked for any other

9   company.

10            Leonard, the only allegation is Leonard worked for

11   a company in Pennsylvania.  That's the only allegation.

12            And Evans, the only allegation is that Evans worked

13   for Quality and Pride.

14            So it doesn't -- it seems to me it's futile to --

15   certainly at least with the Pennsylvania companies.  Where's

16   the interchange?  Where's the allegations of interchange

17   between the Pennsylvania companies and the New York

18   companies?  There just isn't.

19            THE COURT:  All right.  Clearly understanding that

20   you believe that this is a futile amendment, is there any

21   particular undue burden or prejudice if the motion is

22   granted?

23            MR. POLLACK:  Undue burden other than we're going

24   to have to repeat this motion and we're going to have more

25   motion practice, no.  I mean, we haven't had any discovery.

1    We haven't gone very far down the discovery.  We spent a

2    whole lot of money on motion practice, yes.

3              THE COURT:  Okay.

4              MR. POLLACK:  And I --

5              THE COURT:  I suspect that there's going to be more

6    motion practice in this case regardless of the outcome of

7    this particular motion, but okay.  I think I understand your

8    point here.

9              And now, can you then answer the flip side of my

10   question that was raised with respect to personal

11   jurisdiction?  Can you explain --

12             MR. POLLACK:  Yes.  I do not believe -- I'm sorry.

13             THE COURT:  Yeah.  Why the Court doesn't have

14   personal jurisdiction over the Pennsylvania Defendant?

15             MR. POLLACK:  There is no connection between the

16   Pennsylvania Defendant and New York.  There's no allegation

17   that Pennsylvania Defendant ever sends a single bus or a

18   single bus driver into New York State.

19             THE COURT:  But there is an allegation as to where

20   the Pennsylvania Defendants operate, correct?  And this is an

21   allegation of general jurisdiction.

22             MR. POLLACK:  The Pennsylvania Defendants -- is the

23   allegation that they're headquartered in New York or that

24   they operate in New York because they don't operate in New

25   York.  That's for certain.  There has been no specific

1   allegation that they operate in New York.  No Pennsylvania

2   person said anything about driving into New York, even one

3   time.

4            THE COURT:  All right.  But why can't the Court

5   exercise general jurisdiction if the allegation is that they

6   maintain headquarters in New York?

7            MR. POLLACK:  I guess the Court could exercise

8   general jurisdiction on that basis.  Yes.  It would not make

9   sense.  We would probably have to file a motion to transfer

10  venue if that's where the case would belong especially since

11  we're dealing with different laws.

12           We're not dealing with -- you know, Pennsylvania's

13  got a three-year statute of limitations.  New York's got a

14  six-year statute.  We've got different collective bargaining

15  agreements, different unions.

16           But general jurisdiction, yes.  The Court would

17  have general jurisdiction if that allegation is correct.

18           THE COURT:  Okay.  All right.

19           Is there anything else that you wanted to add?

20           MR. POLLACK:  No.  Just generally, you need more

21  than is what's alleged.  You need specific connections

22  between all of the Plaintiffs and all the Defendants they

23  seek to add.  And they are woefully short of alleging

24  specific connections between all the Plaintiffs they want to

25  have and a majority of the Defendants they want to have.

1          We haven't at this point argued about L & M and

2   Pride.  It is what it is.  At some point we'll make an

3   argument.  But as far as alleging a single integrated

4   enterprise to get these altogether, they fall woefully short.

5          THE COURT:  All right.  Thank you very much, Mr.

6   Pollack.

7          Mr. Kansao, can you just repeat for me who the

8   Plaintiffs allege that they work for?

9          MR. KANSAO:  So the Plaintiffs have alleged that

10  they are working for Total Transportation Company but they

11  didn't -- and let me go back.

12         They alleged that they work for Bella Bus, L & H,

13  Pride Transportation in the case of Toussaint Wortham --

14         THE COURT:  I'm sorry.  Can you just go by each

15  Plaintiff?  I think that's what you did before.  I just

16  didn't catch all of it then.

17         Go ahead.

18         MR. KANSAO:  Okay.  In the case of Toussaint

19  Wortham, he worked for Bella Bus, L & H, and Pride

20  Transportation Corporation.  That's the allegation.

21         I say that's the allegation because we have now

22  received documents to indicate that he also worked for, I

23  believe, Quality Transportation Company and I received

24  another subpoena from Defendants which indicated that he also

25  at east at one point drove the bus of Brooklyn Transportation

1    Services.

2          Let's move on to Marcell Leonard, that's what's in

3    the complaint.

4          THE COURT:  Okay.

5          MR. KANSAO:  Marcell Leonard worked for the Mat

6    Bus, Incorporated, in Pennsylvania.

7          THE COURT:  Mat Bus.  Okay.  Yep.

8          MR. KANSAO:  Mary Evans worked for Quality

9    Transportation Company and Pride Transportation --

10   (indiscernible) name -- Pride Transportation Services.

11         THE COURT:  Services.

12         MR. KANSAO:  I would say that they all worked for

13   Total -- that they were all employed by, generally, Total

14   Transportation Company, who employed the manager that

15   managed -- now that I have the documents I see that they

16   employed the managers -- and this was in our October letter

17   to the Court for supplementation -- the managers that

18   directly managed Plaintiff Toussaint Wortham, the individual

19   who we have some documents for in there.

20         To be clear, it is my understanding that Total

21   Transportation Company is the parent company that sets the

22   policy for its subsidiaries which are the remaining

23   Defendants in this case.  And because there is a parent

24   company that is setting the policy, we are alleging a common

25   violation that would -- of Total Transportation Companies and

1   these other defendant employees, which would be

2   (indiscernible) by their shared executive management team,

3   which are all headquartered at the same location in New York

4   and also --

5           THE COURT:  I --

6           MR. KANSAO:  -- and also had shared executive

7   personnel.

8           THE COURT:  I'm sorry.  I was on mute.

9           Go ahead.  You said shared the same personnel?

10          MR. KANSAO:  Shared the same executive personnel

11  and shared the same headquarters here in New York.

12          THE COURT:  All right.

13          MR. KANSAO:  I just believe it's premature to say

14  that it would be futile for us to be able to show a common

15  violation set by this shared executive management team before

16  we've engaged in any discovery.

17          THE COURT:  All right.  I think when you previously

18  walked through the basis of the single enterprise --

19          MR. KANSAO:  I'm sorry, Your Honor.  I didn't hear

20  that.  Was that a question?  I kind of missed it.  The

21  reception is not perfect here.

22          THE COURT:  Fair enough.  I think earlier in your

23  argument you walked through all of the reasons why you

24  believe that these are all the same company.

25          MR. KANSAO:  Yes.

1                    THE COURT:  All right.  Okay.  Fine.

2              Mr. Pollack, anything else --

3              MR. POLLACK:  I would just like to -- yes.  Just

4    clarify for one thing that Mr. Kansao said was the common

5    management.  So the name he used was Sam Bent, and Sam Bent

6    was the person in charge of, for lack of a better word, Mr.

7    Wortham.  There's been no allegation that Sam Bent has any

8    connection to Ms. Evans -- I'm sorry -- to Mr. Leonard who

9    only worked in Pennsylvania.  So that actually illustrates

10   our point.  There is no connection between Pennsylvania and

11   Mr. Bent.  There is no connection.

12             Again, simply because they might have the same

13   executives, the same CEO, that does not make them a single

14   integrated enterprise.  And I think you've probably heard

15   enough on that from us.

16             THE COURT:  No.  That's why we're here, to cross

17   our t's.  That's why we're here.

18             I mean, look.  I will tell you all that I am

19   actually inclined to grant this motion and let me tell you

20   why.  Maybe I'll start in reverse of Mr. Pollack and you were

21   discussing earlier in terms of the potential burden to the

22   Defendants.

23             I don't believe that in this case there are

24   currently, what, 10 Defendants?  This does not add a specific

25   burden such that -- particularly because discovery hasn't

1    actually -- there have been exchanges of documents but there

2    has not been a discovery scheduled, an order entered yet

3    because Plaintiffs requested entering such an order was held

4    over pending the outcome of this motion.

5         So the other thing is that I think a lot of the

6    focus here has been on the substantive merit of the claims

7    that are being made but I think that because of the posture

8    that we are in, which is a motion to amend the complaint

9    where the standard is fairly liberal under Rule 15, I don't

10   know that every single element of every single claim needs to

11   be proven at this stage.

12        And while I understand from your perspective, Mr.

13   Pollack, that you believe that most of these arguments are

14   just going to be repeated when you file the motion to dismiss

15   the newly filed complaint, again, it's about the Plaintiff's

16   allegations at this point and whether or not there's a

17   plausible basis to support the claims.

18        So I think that in this case much of what you've

19   argued against, the single enterprise theory, again, you will

20   likely argue in your motion to dismiss but it doesn't

21   necessarily need to be proven here.

22        In addition, going through the various paragraphs

23   of the complaint, although Mr. -- I'm sorry, I've just lost

24   my train of thought here -- Mr. Kansao, I think, was going to

25   talk about the format of the amended complaint.

1        But again, it's about the allegations here and I

2   think the allegations are sufficient.  Even though I

3   understand, Mr. Pollack, that your clients do not agree, I

4   think that the allegations are sufficient, again, for the

5   procedural posture where we are, which is at the motion to

6   amend the complaint.

7        So with that, Mr. Kansao, I do have to ask a

8   somewhat obvious question, which is why the paragraph as to

9   each Plaintiff are in an exhibit attached to the complaint

10  rather than just in the complaint?  I myself found it very

11  difficult to get through the moving papers in which you

12  attached the proposed complaint with having to flip back and

13  forth between exhibits on what is essentially the central

14  facts that support your claim.  So can you sort of shed some

15  light on that?

16       MR. KANSAO:  I apologize, Your Honor.  It was just

17  meant -- it was actually meant to be easier that the factual

18  allegations are -- for each individual Plaintiff would be in

19  essentially one location that would allow for a bit more ease

20  of viewing; in fact, it has accomplished the opposite.

21       THE COURT:  Okay.  Yes.  They did, as was noted by

22  Mr. Pollack and as I'm telling you right now.

23       So given that you're going to be amending this

24  complaint, I would advise you to consolidate all of your

25  factual allegations in the body of the complaint so that

1    when -- well, if, because I imagine that Mr. Pollack will be

2    filing a motion to dismiss forthwith, if the complaint ever

3    had to be answered all of the information would be available

4    at one -- in one space to allow for a paragraph by paragraph

5    response.

6                    MR. KANSAO:  Yes, Your Honor.

7                    THE COURT:  All right.

8                    Mr. Pollack, do you want to add anything else?

9                    MR. POLLACK:  No.  But just for clarification, I

10   just want it for the record, Mr. Kansao was referring to L &

11   H but it's actually L & M, so I just want to make sure that

12   the record is accurate.  It's L & M, not L & H.

13                   THE COURT:  Okay.  I heard M, but if it was in fact

14   L & H then the record has been corrected.  Thank you.

15                   All right.  So that leads us to the other motions

16   that were pending in this case, all of which, again, were

17   premature because there was no operative -- well, the

18   operative complaint was in question and now there will be

19   one.

20                   So Mr. Kansao, today's December 3rd.  The amended

21   complaint needs to be filed by December 13th.

22                   And I think I just heard someone call in for the

23   3:00 conference that I have.  I would just ask you to hold

24   tight because we started a little bit late and we are -- we

25   have a couple more things to go through.

1              So December 13th?

2              MR. KANSAO:  That's fine, Your Honor.

3              THE COURT:  All right.

4              MR. KANSAO:  For clarification, I am going to be

5    changing the second amended complaint as you've advised to

6    include what was Exhibit, I believe, 4 within the body.  I've

7    also received some documents.

8              I'm wondering if I can include the additional facts

9    we have received since the proposed second amended complaint

10   in our final final filing?

11             THE COURT:  Is that the document at docket number

12   45?

13             MR. KANSAO:  Yes, Your Honor.

14             THE COURT:  So the documents at docket number 45

15   are interrogatory responses.  So I see actual documents, I

16   think, at the end of that.

17             Mr. Pollack?

18             MR. POLLACK:  I would oppose it.  Everything was

19   geared toward the second amended complaint as it was

20   submitted.  I would oppose any new allegations.

21             THE COURT:  I would have to agree.

22             MR. KANSAO:  Okay.

23             THE COURT:  Mr. Kansao?

24             MR. KANSAO:  I'm fine with that, Your Honor.

25             THE COURT:  All right.  Okay.  All right.  So

1   that's the motion to amend the complaint.

2        Now we have what I'll call the discovery motions

3   and at this point, as I said, t he --

4        I'm sorry.  Was someone saying something?  If

5   that's a person who's coming on for the 3:00 initial

6   conference, just give me a few more minutes.

7        MR. GALLIGAN:  Yes.  I'm sorry.  It's Paul

8   Galligan.  I'm sorry.  I'm on the 3:00.

9        THE COURT:  Yes.  Yes, Mr. Galligan.  Not a

10  problem.  You can keep yourself on mute.  We're just

11  finishing up another --

12       MR. GALLIGAN:  Okay.  I'm sorry.  Thank you.

13  Sorry.

14       THE COURT:  No problem.

15       All right.  So there was a proposed scheduling

16  order, I believe, that was filed as an attachment to docket

17  number 33.  I mean, clearly these dates are not viable at

18  this point in time so I would -- I'm going to deny that

19  generally, as well as the discovery dispute and the motion to

20  compel.  I believe that involved docket numbers 42 and 43,

21  44, and 46, which gets into the actual motions and the

22  responses.

23       You know, I agree with the Defense assessment that

24  the motion to compel is -- at the time it was filed was

25  premature and remains premature.  There hadn't yet been a

1   decision made on the motion to amend the complaint.  The

2   amended complaint hasn't been filed yet.

3          So at this point I think that the parties need to

4   confer and submit a new scheduling order with respect to

5   discovery and then we can move from there.

6          In addition, again, I'm going to go back to the

7   beginning of the call and offer that the parties really do

8   need to attempt to confer before filing these discovery

9   motions.  The fact that there were four letters filed within

10  something like a three-week period is really unnecessary and

11  the parties really just need to have a conversation with each

12  other before raising issues with the Court.  It is unlikely

13  that any decision that I will make will make you happier than

14  a decision that you all make amongst yourselves.

15         So the you confer requirement is in the rules:  my

16  rules, the local rules, and the federal rules for a reason.

17  Please do it before filing these motions.

18         So I'm going to deny them with leave at this point

19  because I think that they're all premature.

20         With that, we have a date for the amended complaint

21  and in terms of a scheduling order -- well, the amended

22  complaint will be filed by the 13th, and I'm assuming then,

23  Mr. Pollack, that while I'm not holding you to your response,

24  I assume that you're again going to move for a pre-motion

25  conference before Judge DeArcy Hall.

1          MR. POLLACK:  Yes.  Correct.

2          THE COURT:  Okay.  I'm not going to set a deadline

3   for that.  I mean, that is something that you can review the

4   amended complaint and make your determinations on.

5          But in terms of a scheduling order, because there

6   will be an operative complaint and discovery will continue,

7   the parties are to confer and file a joint scheduling order

8   by January 6th.

9          MR. POLLACK:  Did you say 5th or 6th, Your Honor?

10         THE COURT:  Sixth.  Thursday, January 6th.

11         MR. POLLACK:  '22.

12         THE COURT:  Uh-huh.  There already.

13         All right.  Is there anything else that you wanted

14  to address today on behalf of Plaintiffs, Mr. Kansao?

15         MR. KANSAO:  No, Your Honor.

16         THE COURT:  All right.  And Mr. Pollack, on behalf

17  of the Defense?

18         MR. POLLACK:  No, Your Honor.  Thank you for your

19  time.

20         THE COURT:  All right.  Thank you all very much.

21         I wish you and your families a very safe and

22  healthy holiday season.

23         MR. POLLACK:  And I'll just note that Mr. Quill's

24  family just grew by one this week, so his family is just one

25  bigger this week.

```
1              THE COURT:  Congratulations.  Congratulations.

2              MR. QUILL:  Thank you, Your Honor.

3              THE COURT:  Continued health to all of you.

4              All right, everyone.  Have a good weekend.

5              MR. POLLACK:  Thank you.

6              THE COURT:  Take care.

7              MR. POLLACK:  Bye.

8              MR. KANSAO:  Bye.

9         (Proceedings adjourned at 3:03 pm)

10

11                    TRANSCRIBER'S CERTIFICATE

12         I certify that the foregoing is a correct

13  transcript from the electronic sound recording of the

14  proceedings in the above-entitled matter.

15

16   Terry Rubino                    December 23, 2021

17

18  _____         _____

19  Terry Rubino                     DATE

20  Legal Transcriber

21

22

23

24

25
```