UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

TOUSSAINT WORTHAM, MARCELL : 
LEONARD, and MARY EVANS, *on behalf of* :
*themselves and all others similarly situated,* :
  :
  Plaintiffs, :   Case No.: 1:21-cv-00085
  :   (LDH) (MMH)
  -against- :
  :   **ORAL ARGUMENT REQUESTED**
TOTAL TRANSPORTATION CORP., a :
    New York Corporation, :
TOTAL TRANSPORTATION CORP., a :
    Pennsylvania Corporation, :
PRIDE TRANSPORTATION SERVICES, INC., :
BROOKLYN TRANSPORTATION CORP., :
BELLA BUS CORP., :
QUALITY TRANSPORTATION CORP., :
L & M BUS CORP., :
MAGGIES PARATRANSIT CORP., :
GVC II INC., :
MAT BUS CORP., a New York Corporation, :
MAT BUS CORP., a Pennsylvania Corporation, :
21ST AVE BUS CORP., :
  :
  Defendants. :

---------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO COMPEL ARBITRATION AND
## STAY PROCEEDINGS AND PARTIAL MOTION TO DISMISS

Jeffrey D. Pollack
Kevin M. Brown
Timothy J. Quill, Jr.
MINTZ & GOLD LLP
600 Third Avenue, 25th Floor
New York, New York 10016
(212) 696-4848 (tel)
(212) 696-1231 (fax)

*Attorneys for Defendants*

DATE SERVED:  February 28, 2022

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT ............................. 2

THE COLLECTIVE BARGAINING AGREEMENTS.................................................... 6

ARGUMENT ......................................................................................................................... 7

       Point I       The Mandatory Arbitration Provisions in the CBAs Compel Arbitration
                     of All Plaintiffs' Claims ................................................................................ 7

       Point II      The Court Should Dismiss All Claims Against the Non-Employer
                     Defendants...................................................................................................... 12

       Point III     The Court Should Dismiss All Claims Premised on Allegations of
                     Willfulness for Failure to State a Claim ..................................................... 22

       Point IV     The Court Should Dismiss Plaintiffs' FLSA Claims Against
                     21st Ave Corp. as Time-Barred and Decline to Exercise Supplemental
                     Jurisdiction Over Any State Law Claims Against 21st Ave Corp. ................ 23

       CONCLUSION............................................................................................................. 26

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*14 Penn Plaza LLC v. Pyett*,
  556 U.S. 247 (2009)......................................................................................... 10

*Alfonso v. Maggies Paratransit Corp.*,
  203 F. Supp. 3d 244 (E.D.N.Y. 2016) .................................................................. 11

*Apolinar v. RJ 49 Rest., LLC*,
  No. 15-cv-8655 (KBF), 2016 WL 2903278 (S.D.N.Y. May 18, 2016)...................... 17, 21, 22

*Barfield v. New York City Health & Hosps. Corp.*,
  537 F.3d 132 (2d Cir. 2008).............................................................................. 13

*Bernstein v. The MONY Group, Inc.*,
  228 F. Supp. 2d 415 (S.D.N.Y. 2002).................................................................. 25

*Brown v. Daikin America, Inc.*,
  756 F.3d 219 (2d Cir. 2014)......................................................................... 14, 22

*Chang Yan Chen v. Lilis 200 West 57th Corp.*,
  No. 19-CV-7654 (VEC), 2020 WL 7774345 (S.D.N.Y. Dec. 30, 2020)...................... 17, 18

*Chen v. DG & S NY, Inc.*,
  406 F. Supp. 3d 216 (E.D.N.Y. 2016) ............................................................. 12, 13

*Chen-Oster v. Goldman, Sachs & Co.*,
  449 F. Supp. 3d 216 (S.D.N.Y. 2020)................................................................... 11

*Chung v. 335 Madison Avenue LLC*,
  No. 21-cv-3861 (LJL), 2021 WL 4710483 (S.D.N.Y. Oct. 7, 2021)......................... 11

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)........................................................................................... 8

*Diaz v. Consortium for Worker Educ., Inc.*,
  No. 10 Civ. 01848 (LAP), 2010 WL 3910280 (S.D.N.Y. Sept. 28, 2010)................ 13

*Dobrosmylov v. DeSales Media Grp., Inc.*,
  No. 19-cv-5122 (BMC), 2021 WL 1224376 (E.D.N.Y. Apr. 1, 2021) ...................... 12, 14

*Fenner v. News Corp.*,
  No. 09-cv-9832, 2013 WL 6244156 (S.D.N.Y. Dec. 2, 2013)................................. 14

*Gjoni v. Orsid Realty Corp.*,
  No. 14 Civ. 8982 (GBD), 2015 WL 4557037 (S.D.N.Y. July 22, 2015) ................... 10

ii

*Hamzaraj v. ABM Janitorial Northeast Inc.*,
    No. 15 Civ. 2030 (ER), 2016 WL 3571387 n.2 (S.D.N.Y. June 27, 2016) ............................ 10

*Harrington v. Atl. Sounding Co., Inc.*,
    602 F.3d 113 (2d Cir. 2010)...................................................................................... 9

*Hsieh Liang Yeh v. Han Dynasty*,
    No. 18 Civ. 6018 (PAE), 2019 WL 633355 n.6 .................................. 14, 17, 21, 22

*Huer Huang v. Shanghi City Corp.*,
    459 F. Supp. 3d 580 (S.D.N.Y. 2020)........................................................................ 21

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004).................................................................................. 9, 12

*Katz v. Cellco Partnership*,
    794 F.3d 341 (2d Cir. 2015).............................................................................. 11, 12

*Kocjancic v. Bayview Asset Mgmt., LLC*,
    Civil Action No. 14-4037, 2014 WL 5786900 (E.D. Pa. Nov. 6, 2014) ................... 10

*Kolari v. New York–Presbyterian Hosp.*,
    455 F.3d 118 (2d Cir. 2006)................................................................................... 24

*Kwan v. Sahara Dreams Co.*,
    No. 17-CV-4058 (RA), 2018 WL 6655607 (S.D.N.Y. Dec. 19, 2018).................... 21

*Lin v. Quality Woods, Inc.*,
    No. 17-CV-3043 (DLI) (SJB), 2021 WL 4129151 (E.D.N.Y. Aug. 10, 2021) ...................... 25

*Livi v. Hyatt Hotels Corp.*,
    Civil Action No. 15-5371, 2017 WL 5128173 (E.D. Pa. Nov. 6, 2017) ................... 13

*Lopez v. Acme Am. Env. Co.*,
    No. 12 Civ. 511 (WHP), 2012 WL 6062501 (S.D.N.Y. Dec. 6, 2012) ............................ 14, 18

*McLean v. Garage Mgmt. Corp.*,
    No. 10-cv-3950, 2011 WL 1143003 (S.D.N.Y. Mar. 29, 2011)............................... 10

*McPherson v. NYP Holdings, Inc.*,
    227 Fed.Appx. 51 (2d Cir. 2007)............................................................................ 24

*Mitsubishi Motors Corp. v. Soler Chrysler- Plymouth Inc.*,
    473 U.S. 614 (1985)............................................................................................. 8, 9

*Morangelli v. Chemed Corp.*,
    922 F. Supp. 2d 278 (E.D.N.Y. 2013) ................................................................... 20

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)..................................................................................................... 8, 9

*Murray v. Miner*,
  74 F.3d 402 (2d Cir. 1996)........................................................................................ 20

*New York State Court Clerks Ass'n v. Unified Court Sys. of State of New York*,
  25 F. Supp. 3d 459 (S.D.N.Y. 2014)......................................................................... 13

*Oldroyd v. Elmira Sav. Bank, FSB*,
  134 F.3d 72 (2d Cir.1998).......................................................................................... 9

*Podell v. Citicorp Diners Club, Inc.*,
  859 F.Supp. 701 (S.D.N.Y. 1994)............................................................................ 25

*Reynolds v. de Silva*,
  No. 09 Civ. 9218, 2010 WL 743510 (S.D.N.Y. Feb. 24, 2010) ............................. 10

*Rodriguez-Depena v. Parts Authority, Inc.*,
  877 F.3d 122 (2d Cir. 2017)..................................................................................... 10

*Rogers v. N.Y. Univ.*,
  220 F.3d 73 (2d Cir. 2000)....................................................................................... 10

*Sakalas v. Wilkes-Barre Hosp. Co.*,
  No. 3:11-CV-0546, 2012 WL 3230546 (M.D. Pa. Aug. 6, 2012) .......................... 12

*Shang Zhong Chen v. Kyoto Sushi, Inc.*,
  No. 15-CV-7398 (DLI) (JO), 2017 WL 4236556 (E.D.N.Y. Sept. 22, 2017)......... 10

*Solis v. ZEP LLC*,
  No. 19-CV-4230 (JGK), 2020 WL 1439744 (S.D.N.Y. Mar. 24, 2020) ................. 18

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984)........................................................................................................ 8

*Stewart v. Hudson Hall LLC*,
  No. 20 Civ. 885, 2020 WL 8732875 (S.D.N.Y. Oct. 19, 2020) ....................... passim

*Urresta v. MBJ Cafeteria Corp.*,
  No. 10 Civ. 8277, 2011 WL 4962969 (S.D.N.Y. Oct. 18, 2011) ........................... 24

*Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*,
  661 F.3d 164 (2d Cir. 2011)....................................................................................... 7

*Weiss v. Starr Rest. Org., LP*,
  No. 20-CV-8090, 2021 WL 3099895 (S.D.N.Y. July 21, 2021) ...................... passim

*Whiteside v. Hover-Davis, Inc.*,
   995 F.3d 315 (2d Cir. 2021)..................................................................................... 23


Statutes

9 U.S.C. § 1 ................................................................................................................. 1

9 U.S.C. § 2 ................................................................................................................. 8

9 U.S.C. § 3 ................................................................................................................. 8

9 U.S.C. § 4 ................................................................................................................. 8

28 U.S.C. § 1367(c)(3)................................................................................................. 24

29 U.S.C. § 255(a) ...................................................................................................... 22


Rules

Federal Rules of Civil Procedure 12(b)(1)............................................................... 1, 9

Federal Rules of Civil Procedure 12(b)(6)................................................... 1, 2, 12, 22

Defendants Total Transportation Corp., a New York Corporation ("TTC NY"), Total

Transportation Corp., a Pennsylvania Corporation ("TTC Penn."), Pride Transportation Services,

Inc. ("Pride"), Brooklyn Transportation Corp. ("Brooklyn"), Bella Bus Corp. ("Bella"), Quality

Transportation Corp. ("Quality"), L & M Bus Corp. ("L&M"), Maggies Paratransit Corp.

("Maggies"), GVC II Inc. ("GVC II"), MAT Bus Corp., a New York Corporation ("MAT NY"),

MAT Bus Corp., a Pennsylvania Corporation ("MAT Penn."), and 21st Ave Bus Corp. ("21st

Ave") (collectively, "Defendants"), by and through their undersigned attorneys, Mintz & Gold,

LLP, hereby submit this Memorandum of Law in Support of their Motion to Compel Arbitration

and Stay Proceedings and Partial Motion to Dismiss.

## PRELIMINARY STATEMENT

Defendants move, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, and

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to compel arbitration of (and stay the

proceedings related to) Plaintiffs' claims through the alternative dispute resolution procedures set

forth in the collective bargaining agreements ("CBAs") that govern nearly every claim at issue in

this action. Each of the respective CBAs contains (or will contain per a verbal agreement) a

provision stating that all disputes, controversies, claims, and grievances under the CBA or

under any federal, state, or local law must be resolved in accordance with the CBA's

mandatory grievance and arbitration procedure. Thus, the CBAs clearly and unmistakably

require arbitration of the disputes between Plaintiffs and Defendants in this matter and this

Court is not the proper forum in which to adjudicate Plaintiffs' claims.

In the alternative, Defendants TTC NY, TTC Penn., Brooklyn, Maggies, GVC II, MAT

NY, and 21st Ave (collectively, the "Non-Employer Defendants") move for dismissal of the

Second Amended Complaint (ECF No. 49) (the "SAC"), with prejudice, under Federal Rule of

Civil Procedure 12(b)(6) because the SAC fails to state a claim against them in that there are no specific allegations of any employment relationship between Plaintiffs and any of the Non-Employer Defendants. The allegations against the Non-Employer Defendants rely entirely on boilerplate, conclusory allegations of a "single integrated enterprise" that are insufficient to establish the employment relationship required for a claim under the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and Pennsylvania Minimum Wage Act ("PMWA").

Also in the alternative to the Motion to Compel Arbitration, the Court should dismiss the FLSA claims against 21st Ave for failure to state a claim under Rule 12(b)(6) because those claims are time-barred. And, after dismissing the federal claims against 21st Ave, the Court should decline to exercise supplemental jurisdiction over the remaining NYLL claims asserted against 21st Ave because, again, none of the Plaintiffs sufficiently alleges that 21st Ave was his or her employer.

Finally, the Court should dismiss all claims that are premised on allegations of willfulness because those allegations are entirely conclusory.

In sum, the Court should compel arbitration of all Plaintiffs' claims and stay this case pending the arbitration. In the alternative, the Court should dismiss Plaintiffs' claims against the Non-Employer Defendants, with prejudice, for failure to state a claim upon which relief can be granted, as well as dismiss all claims that are based on allegations of willfulness.

## FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT

Plaintiffs Toussaint Wortham ("Wortham"), Marcell Leonard ("Leonard"), and Mary Evans ("Evans"), allege the following facts in their respective claims in the SAC:[1]

---

[1] Defendants dispute the accuracy of most of Plaintiffs' allegations, but recognize that, for purposes of Defendants' Motion to Dismiss, argued in the alternative, the Court must accept well-pled facts as true. As set forth herein, most of the allegations in the SAC against the Non-Employer Defendants are merely conclusory and Plaintiffs therefore

*Toussaint Wortham*

Wortham alleges that he worked as a bus driver for Defendants from March 2019 until around April 10, 2021. (SAC ¶ 28.) During that time, his shifts included transporting individuals among New York City's homeless shelters for Bella Bus and transporting students on school buses for L&M and Pride. (SAC ¶¶ 29-30, 32, 35.) He alleges that Defendants paid him based on the number of hours for which he was scheduled, but he "always" worked past his shift schedule and was "never" paid for that additional work time. (SAC ¶¶ 29-32.) He further alleges that, on the days in which he drove school buses, he was required to perform various tasks in the interim period between dropping the students off at school in the morning and picking them up in the afternoon, and that he was never paid for any of that time. (SAC ¶¶ 33-34.) Wortham also alleges that he was subject to "time shaving" of approximately six hours each day during most of his employment. (SAC ¶  38.) In addition to his wage and hour claims, Wortham alleges that Defendants retaliated against him after he filed the original complaint in this action on January 7, 2021. (SAC ¶¶ 66-72.)

*Mary Evans*

Evans alleges that she began working as a bus driver "for Defendants' companies" in the New York City area on or about June 3, 2017, and that she "still works for Defendants" today. (SAC ¶ 44.) She claims that she worked as a school bus driver first for Quality and then for Pride, but that she was not paid for any interim work performed between the end of her morning route (when she dropped students off at school) and the beginning of her afternoon route (when she picked them up from school). (SAC ¶¶ 46-47.) Evans further alleges that she occasionally worked for Bella on an as-needed basis, but only received paystubs generated by Pride (also

---

fail to state a claim against them. Moreover, Plaintiffs' use of the word "Defendants" throughout the SAC would require linguistic ballet in order to admit or deny many of the allegations as pled.

reflecting her Bella hours). (SAC ¶ 49.) She claims that she was only paid for about six hours per day, depending on her route, regardless of the number of hours she actually worked, and that Defendants did not keep accurate records of her time and paid her based only on the estimated time required for the route. (SAC ¶¶ 46, 51.) She also alleges that she "observed the Defendants share buses and vehicles when needed," but offers no details regarding how she made that observation. (SAC ¶ 50.) Similarly, she does not explain how operations in Philadelphia share vehicles with operations in New York City, nor how paratransit companies share vehicles with school bus companies despite the fact that they use dramatically different vehicles.

### *Marcell Leonard*

Leonard alleges that he worked as a school bus driver for MAT Penn. from October 2015 to March 2020 and that he typically was paid a fixed rate of six hours, depending on the specific route assigned, regardless of the number of hours he actually worked. (SAC ¶¶ 40-42.) Leonard further alleges that he was not compensated for any time between dropping students off in the morning and picking them up in the afternoon, even though he performed various tasks for Defendants during that period. (SAC ¶ 42.) Leonard alleges that, although his paychecks were based on a rate of $18.00 per hour, because of the uncompensated work he performed, his hourly wage fell below that amount. (SAC ¶ 43.) Leonard's factual allegations do not specifically mention any Defendant other than MAT Penn. (SAC ¶¶ 40-43.)

### *General Allegations*

In addition to Plaintiffs' specific individual allegations, the SAC contains general allegations, including that Defendants paid drivers based on the bus route rather than on an hourly basis (SAC ¶ 58), paid only for estimated hours rather than the greater number of actual hours worked (SAC ¶ 59), failed to pay spread-of-hours compensation under the NYLL for

workdays that exceeded 10 hours per day (SAC ¶ 60), did not maintain accurate payroll records (SAC ¶ 61), and failed to pay overtime (SAC ¶ 63).

Most relevant to the Non-Employer Defendants' instant Motion, the SAC further alleges that Defendants operate as a single, integrated enterprise. (SAC ¶ 22.) To that end, Plaintiffs allege that Defendants share common ownership, management, and support staff, and operate out of the same headquarters in Brooklyn. (*See generally* SAC ¶¶ 10-20, 22, 22(a) & 22(b).) Plaintiffs further allege that Defendants share a common website, marketing department, office, and a centralized payroll department (SAC ¶ 22(c), (g), (h), (i) & (j)), that employees, including Wortham and Evans, are shared among Defendants on an as-needed basis, but still receive only one paystub "generated by the entity that primarily employed" the employee (SAC ¶¶ 22(d), 22(e) & 56). For example, Wortham alleges that when he did work for Pride and L&M, his hours were reflected on his Bella paystub. (SAC ¶ 57.)

Plaintiffs allege that each Defendant (including MAT Penn.) has its own trailer for a remote office and employees frequently work and report to different trailers, even if they work with only one of the Defendant entities. (SAC ¶ 22(k).) Plaintiffs allege that Defendants' buses are used interchangeably on an as-needed basis, including when buses are under repair, and that employees operate interchangeably and use vehicle and equipment regardless of which Defendant owns the equipment. (SAC ¶¶ 22(l), (m).) Finally, Plaintiffs allege that "because of the common nature of the joint enterprise, all bus drivers employed by Defendants were subject to the same wage policies, on-boarding documents, employee policies, human resources policies and workplace rules and guidelines." (SAC ¶ 22(n).)

Plaintiffs do not allege, however, that the Non-Employer Defendants (*i.e.*, Defendants other than Bella, Pride, Quality, L&M, and MAT Penn.) exercise any control over Plaintiffs'

day-to-day employment. <u>Indeed, the SAC does not contain a single allegation relating to work performed by Plaintiffs for any of the Non-Employer Defendants</u> (TTC NY, TTC Penn., Brooklyn, Maggies, GVC II, MAT NY, or 21st Ave).

## THE COLLECTIVE BARGAINING AGREEMENTS

Each of the Plaintiffs is represented by a union for purposes of collectively bargaining the terms and conditions of employment with his or her employer. Accompanying Defendants' instant Motion are the Declarations of Janine Cataldo (Corporate Director of Human Resources for TTC NY) ("<u>Cataldo Decl.</u>"), Mary Cronin (Operations Director for Pride) ("<u>Cronin Decl.</u>"), Jeannie Morales (Operations Manager for Brooklyn) ("<u>Morales Decl.</u>"), Sam Bent (Operations Manager for Bella) ("<u>Bent Decl.</u>"), Sam Nyamekye (Operations Manager for L&M) ("<u>Nyamekye Decl.</u>"), Joseph Sgro (Regional Manager of Paratransit Operations for Maggies) ("<u>Sgro Decl.</u>"), David Silva (Project Manager for GVC II) ("<u>Silva Decl.</u>"), Vincent Marzella (Regional Director of Operations for MAT NY) ("<u>Marzella Decl.</u>"), Jeff Rollo (General Manager for MAT Penn.) ("<u>Rollo Decl.</u>"), and Todd Farber (Chief Operating Officer for Quality and 21st Ave) ("<u>Farber Decl.</u>"). Each of these Declarants establishes that true and correct copies of the arbitration provisions from the relevant CBAs that govern the terms and conditions of employment for the respective Defendants, are attached as exhibits to the accompanying Declaration of Jeffrey D. Pollack ("<u>Pollack Decl.</u>").[2] For the Court's convenience, attached as Exhibit J to the Pollack Declaration is a chart reflecting each Defendant, the type of service that Defendant provides, and the union with whom the Defendant entered into a CBA (if applicable).

Only two of the Defendants are not governed by a CBA—TTC NY and TTC Penn. TTC

---

[2] The sole exception is the arbitration provision from the CBA entered into between Quality and Transport Workers Union Local 100. Because of vacation schedules, the parties to that CBA have not yet signed the amendment containing the mandatory arbitration language, but they have a verbal agreement and Quality expects to receive the signed amendment shortly. (*See* Farber Decl. ¶¶ 4-5.)

NY and TTC Penn. are not parties to a CBA because those two entities do not employ bus

drivers. (Cataldo Decl. ¶¶ 3, 5.) *See* Point II, *infra*. Another Defendant, 21st Ave, is not currently

a party to a CBA because it ceased operations in June 2018. (Farber Decl. ¶ 5.) *See* Point II,

*infra*. Prior to ceasing operations its employees were covered by a CBA.

The arbitration provision in each of the CBAs covering all Defendants (other than TTC

NY, TTC Penn., and 21st Ave) provides (or will provide under a verbal agreement) an exclusive

remedy for disputes and grievances between employees (represented by the union) and their

respective employer, <u>expressly including statutory claims</u>. Although the language in each

provision may vary slightly across the relevant CBAs, the mandatory grievance and arbitration

procedure generally provides the following:

> [A]ll disputes, complaints, controversies, claims and grievances with respect to any
> rights or duties created hereunder or under any federal, state, and/or local law or
> regulation (or by force of law by any other means) shall constitute a grievance under
> this Agreement. The Company and the Union agree that the procedure outlined
> below shall be the exclusive remedy for such disputes and/or grievances . . .

(*See* Pollack Decl. Exs. A-I.)

## ARGUMENT

**Point I**          **The Mandatory Arbitration Provisions in the CBAs Compel Arbitration of
All of Plaintiffs' Claims.**

Courts deciding a motion to compel arbitration under the FAA apply a standard similar to

that for a motion for summary judgment and may consider materials outside of the pleadings,

including a CBA or arbitration agreement. "[W]here the undisputed facts in the record require

the matter of arbitrability to be decided against one side or the other as a matter of law, [a court]

may rule on the basis of that legal issue and avoid the need for further court proceedings."

*Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172

(2d Cir. 2011) (internal quotation marks omitted).

Under the Federal Arbitration Act ("FAA"), agreements to arbitrate a dispute are enforceable. As the FAA states:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. To allow such agreements to be enforced, the FAA authorizes courts to stay arbitrable disputes, providing:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The FAA then authorizes parties to petition to compel arbitration, providing:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

The Supreme Court has consistently recognized a strong federal policy in favor of arbitration. "[In enacting the FAA,] Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984); *see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (declaring a "liberal federal policy favoring arbitration agreements"). This congressional policy "requires that [the courts] rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler- Plymouth Inc.*, 473 U.S. 614, 626 (1985) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

Accordingly:

> [Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration . . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Mitsubishi Motors Corp.*, 473 U.S. at 626 (*quoting Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25). "This principle is based upon the fact that the FAA is an expression of a strong federal policy favoring arbitration as an alternative means of dispute resolution." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (cleaned up). Thus, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (internal citation and quotation omitted).

> [T]he Court must conduct the following inquiries:
>
> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*JLM Indus.*, 387 F.3d at 169 (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75–76 (2d Cir. 1998)).

In this case, each of the inquiries set forth in *JLM Industries* leads to the inexorable conclusion that the Court should compel arbitration of Plaintiffs' FLSA, NYLL, and PMWA claims. The parties clearly agreed to arbitrate, as reflected in the applicable CBAs' arbitration provisions. (*See* Pollack Decl., Exs. A-I.)[3] Further, there is no indication that Congress intended

---

[3] Even though the SAC does not mention any collective bargaining agreement, the Court may consider the arbitration provisions of the applicable CBAs for purposes of the instant Motion, whether analyzed under Rule 12(b)(1) or Rule

that FLSA claims would be non-arbitrable. Courts have repeatedly held that claims under the FLSA, NYLL, and PMWA are subject to mandatory arbitration where arbitration agreements and CBAs provide for it. *See, e.g., Rodriguez-Depena v. Parts Authority, Inc.*, 877 F.3d 122, 123 (2d Cir. 2017) ("FLSA claims are arbitrable"); *Shang Zhong Chen v. Kyoto Sushi, Inc.*, No. 15-CV-7398 (DLI) (JO), 2017 WL 4236556, at *3 (E.D.N.Y. Sept. 22, 2017) (finding FLSA and NYLL claims arbitrable); *Kocjancic v. Bayview Asset Mgmt., LLC*, Civil Action No. 14-4037, 2014 WL 5786900, at *1 (E.D. Pa. Nov. 6, 2014) (granting motion to compel arbitration of complaint alleging violation of FLSA and PMWA).

Moreover, there can be no doubt that the scope of the arbitration provisions in the CBAs cover Plaintiffs' claims in this action. "A collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate ADEA claims is enforceable as a matter of federal law." *14 Penn Plaza LLC v. Pyett,* 556 U.S. 247, 274 (2009).[4] Courts find a collective bargaining agreement "clearly and unmistakably" covers FLSA claims if either (1) the arbitration clause contains a provision where employees "specifically agree to submit all federal causes of action arising out of their employment to arbitration," or (2) it contains "an explicit incorporation of the statutory . . . requirements in addition to a broad and general arbitration clause." *McLean v. Garage Mgmt. Corp.*, No. 10-cv-3950, 2011 WL 1143003, at *5 (S.D.N.Y. Mar. 29, 2011) (citing *Rogers v. N.Y. Univ.*, 220 F.3d 73, 76 (2d Cir. 2000)).

The CBAs governing the parties' employment relationships in this case fall squarely

---

12(b)(6). *See, e.g., Hamzaraj v. ABM Janitorial Northeast Inc.*, No. 15 Civ. 2030 (ER), 2016 WL 3571387, at *1 n.2 (S.D.N.Y. June 27, 2016) (drawing facts from CBA even though not referenced in the complaint because "[c]ourts are permitted to consider documents outside the pleadings when ruling on a 12(b)(1) motion.").

[4] Although *14 Penn Plaza* involved claims under the ADEA, the same analysis applies here because claims under the FLSA, NYLL, and PMWA also are arbitrable. *Gjoni v. Orsid Realty Corp.,* No. 14 Civ. 8982 (GBD), 2015 WL 4557037, at *3 (S.D.N.Y. July 22, 2015) (citing *Reynolds v. de Silva,* No. 09 Civ. 9218, 2010 WL 743510, at *4 (S.D.N.Y. Feb. 24, 2010)).

within the former category. Indeed, each CBA contains (or will per a verbal agreement) an arbitration provision that clearly and unmistakably requires Plaintiffs to arbitrate their statutory claims against their respective employers in this matter, rather than pursue them in court. (*See* Pollack Decl., Exs. A-I.) This language clearly covers all the FLSA, NYLL, and PMWA claims asserted by Plaintiffs in this action. It also covers the individual retaliation claim of Wortham.[5]

Indeed, Judge Chen already held in a prior case that the arbitration provision in the CBA entered into between Maggies and Division 1181-1061, Amalgamated Transit Union, AFL-CIO—one of the CBAs Plaintiffs have put at issue in the instant case—requires arbitration of FLSA and NYLL claims. *See Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244 (E.D.N.Y. 2016) (compelling arbitration of FLSA and NYLL claims). Courts also routinely compel arbitration with respect to retaliation claims under the FLSA, where a CBA governs resolution of the dispute. *See, e.g.*, *Chung v. 335 Madison Avenue LLC*, No. 21-cv-3861 (LJL), 2021 WL 4710483 (S.D.N.Y. Oct. 7, 2021) (compelling arbitration of plaintiff's retaliation claim). Thus, Plaintiffs' FLSA, NYLL, and PMWA wage and hour claims and Wortham's FLSA retaliation claim all are subject to mandatory arbitration under the CBAs. As such, Plaintiffs should be compelled to arbitrate all their claims in accordance with the CBAs' arbitration provisions.

Finally, the Court should stay these proceedings in their entirety pending arbitration. "[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco*

---

[5] Courts also enforce arbitration provisions executed by the parties after plaintiffs sued unless the plaintiffs can demonstrate "actual or potential coercion or deception" in the execution of the arbitration agreement. *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 255 (S.D.N.Y. 2020), *objections overruled*, No. 10 CIV 6950 (AT) (RWL), 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021) (collecting and discussing case law applicable to both class and collective actions).

*Partnership,* 794 F.3d 341, 347 (2d Cir. 2015). Further, even if the Court determines that only

some of Plaintiffs' claims are arbitrable (the fourth inquiry under *JLM Industries*), the Court

should nevertheless stay this action in its entirety pending that arbitration. Although three

Defendants are not parties to a CBA containing a mandatory arbitration provision (TTC NY,

TTC Penn., and 21st Ave), it would make little sense from a judicial efficiency perspective to

litigate Plaintiffs' cases against those entities—two of which never employed drivers and the

other one of which ceased operations beyond the FLSA limitations period (*see* Cataldo Decl. ¶¶

3, 5; Farber Decl. ¶ 5)—separately from the similar claims being arbitrated, particularly given

that Plaintiffs' claims against those three Defendants are subject to dismissal under Rule

12(b)(6). *See* Point II, *infra*.

     In sum, the Court should compel arbitration of Plaintiffs' claims as required under the

governing CBAs and stay this proceeding in its entirety.

**Point II          The Court Should Dismiss All Claims Against the Non-Employer
                    Defendants.**

     Alternatively, even if the Court were to find that these grievances are not subject to

mandatory arbitration, the Court should dismiss Plaintiffs' claims against all Non-Employer

Defendants, with prejudice, for failure to state a claim under Rule 12(b)(6).

     It is well settled that only an "employer" may be held liable for wage and hour claims

under the FLSA, NYLL, and PMWA. *See, e.g.*, *Dobrosmylov v. DeSales Media Grp., Inc.*, No.

19-cv-5122 (BMC), 2021 WL 1224376, at *5 (E.D.N.Y. Apr. 1, 2021); *Sakalas v. Wilkes-Barre

Hosp. Co.*, No. 3:11-CV-0546, 2012 WL 3230546, at *9 (M.D. Pa. Aug. 6, 2012).

     In determining whether a defendant is an employer, such that it may face liability under

those statutes, "the Court's inquiry focuses on the 'economic reality' of the relationship between

the purported employer and the workers in question." *Chen v. DG & S NY, Inc.*, 406 F. Supp. 3d

216, 221 (E.D.N.Y. 2016); *see Livi v. Hyatt Hotels Corp.*, Civil Action No. 15-5371, 2017 WL 5128173, at *9 (E.D. Pa. Nov. 6, 2017). The "economic reality" test concerns how much authority the alleged employer exercises over the supposed employees, including "whether an alleged employer: '(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the employees' pay rate and method of payment, and (4) maintained employment records.'" *Chen*, 406 F. Supp. 3d at 221 (quoting *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 142) (2d Cir. 2008) (emphasis added). Taking these factors together, the term "employer" under the FLSA, NYLL, and PMWA generally does not include those "who do not control the terms and conditions of employment." *New York State Court Clerks Ass'n v. Unified Court Sys. of State of New York*, 25 F. Supp. 3d 459, 471 (S.D.N.Y. 2014) (internal quotation and citation omitted).

Here, Plaintiffs fail to allege that any of the Non-Employer Defendants directly control the terms and conditions of Plaintiffs' own employment. Indeed, the SAC does not contain any specific allegation to satisfy the test set forth above with respect to any of these Defendants. Specifically, Plaintiff Wortham does not allege any direct connection between the work he performed and any Defendants other than Bella, Pride, and L&M. (*See* SAC ¶¶ 28-39.) Similarly, Plaintiff Evans' specific allegations relate to work performed only for Quality, Pride, and Bella. (*See* SAC ¶¶ 44-51.) Plaintiff Leonard alleges that he worked in Pennsylvania, and only for MAT Penn. (*See* SAC ¶¶ 40-43.) The absence of an allegation that Plaintiffs worked for, or were subject to the direction of, any of the Non-Employer Defendants is fatal to Plaintiffs' attempt to state a claim against them under the FLSA, NYLL, and PMWA. *See Diaz v. Consortium for Worker Educ., Inc.*, No. 10 Civ. 01848 (LAP), 2010 WL 3910280, at *4

13

(S.D.N.Y. Sept. 28, 2010) (dismissing FLSA and NYLL claims against purported "employers" because the complaint failed to allege that the defendant entities "had any direct role in managing the plaintiffs, hiring or firing the plaintiffs, determining their working hours, or maintaining employment records.").

There may be circumstances—not present here—in which a defendant that does not serve as the plaintiff's direct employer also may be held liable for the plaintiff's statutory claims.[6] *See, e.g.*, *Brown v. Daikin America, Inc.*, 756 F.3d 219 (2d Cir. 2014) (finding complaint sufficiently alleged parent company of plaintiff's direct employer was potentially liable as part of single integrated enterprise). But because corporate separateness is generally recognized, <u>liability of non-employers under a single integrated enterprise theory should be found (like piercing a corporate veil) only in extraordinary circumstances</u>. *Dobrosmylov v. Desales Media Group, Inc.*, 2021 WL 1224376, at *6 (citing *Fenner v. News Corp.*, No. 09-cv-9832, 2013 WL 6244156, at *9 (S.D.N.Y. Dec. 2, 2013)). <u>For such liability to attach, there must be at least some specific allegation of direct control by the non-employing defendant over the plaintiff or at least a connection between the two parties</u>. *See Lopez v. Acme Am. Env. Co.*, No. 12 Civ. 511 (WHP), 2012 WL 6062501, at *4 (S.D.N.Y. Dec. 6, 2012) ("Although they allege an 'integrated enterprise,' Plaintiffs cannot escape their obligation under the FLSA to allege a relationship of control between the Corporate Moving Defendants and themselves.").

Thus, courts routinely grant motions to dismiss complaints asserting claims based on a single integrated enterprise theory where there is no control and no <u>direct</u> connection alleged

---

[6] There remains a question whether the single enterprise theory even applies to establish liability for related entities under the FLSA. *See Dobrosmylov v. DeSales Media Group, Inc.*, No. 19-cv-5122 (BMC), 2021 WL 1224376, at *5 (E.D.N.Y. Apr. 1, 2021) ("The Second Circuit has never endorsed this theory of liability in the FLSA context, and district courts in this Circuit are divided on its application to FLSA and NYLL cases.") (internal quotation and citation omitted). *But see Hsieh Liang Yeh v. Han Dynasty*, No. 18 Civ. 6018 (PAE), 2019 WL 633355, at *6 n.6 (collecting cases in which courts applied the single integrated enterprise theory to FLSA claims and noting that courts have increasingly applied the test for those claims).

14

between the non-employer defendants and the plaintiff. *See, e.g., Weiss v. Starr Rest. Org., LP,*
No. 20-CV-8090 (JMF), 2021 WL 3099895, at *3 (S.D.N.Y. July 21, 2021) ("[c]ourts must
dismiss complaints against defendants within a broader alleged enterprise that lack a nexus
suggesting control of the plaintiff at hand"); *Stewart v. Hudson Hall LLC,* No. 20 Civ. 885
(PGG) (SLC) (Report & Recommendation), 2020 WL 8732875, at *6 (S.D.N.Y. Oct. 19, 2020),
*adopted*, 2021 WL 735244 (S.D.N.Y. Feb. 24, 2021) ("because [the plaintiff] does not allege that
[non-employer defendants] had any connection to him or control of his employment, there is no
basis for bringing them into this lawsuit. . . .") (internal citations and quotations omitted).[7]

In *Weiss,* the plaintiff alleged:

- Common business activities, same ownership, same business purpose, centralized structure and human resources, and the same policies. *Weiss* First Amended Complaint ("FAC") ¶ 17.
- Common website, common social media, common logo, and common email addresses. *Weiss* FAC ¶ 20.
- Centralized HR and advertisements for help wanted. *Weiss* FAC ¶ 21.
- A single HR department. *Weiss* FAC ¶ 25.

In *Stewart,* the plaintiff alleged:

- Employees were interchangeable. *Stewart* FAC ¶ 10(c) & (m).
- Common website. *Stewart* FAC ¶ 10(f), (h) & (i).
- Common payroll methods and labor relations system. *Stewart* FAC ¶ 10(d).
- Central marketing department. *Stewart* FAC ¶ 10(e).
- Common social media paragraph. *Stewart* FAC ¶ 10(g).
- Centralized employment applications. *Stewart* FAC ¶ 10(k).
- Centralized reservations. *Stewart* FAC ¶ 10(l).
- Employees transported items between restaurants. *Stewart* FAC ¶ 10(n).
- Plaintiff was "transferred to other Restaurants and Kiosks on an as-needed basis." *Stewart* FAC ¶ 31.[8]

Here, like the plaintiffs in *Weiss* and *Stewart*, Plaintiffs allege:

---

[7] Plaintiffs' counsel in this case represented the plaintiffs in both *Weiss* and *Stewart*.

[8] The First Amended Complaints in *Weiss* and *Stewart* are attached to the Pollack Declaration as Exhibits K and L.

- Common ownership, management, and a common business purpose. (SAC ¶ 22(a).)
- Common office space and garage for management, support staff, and operations. (SAC ¶ 22(b), (c), (f) & (k).)
- Common website and marketing department. (SAC ¶ 22(g), (i) & (j).)
- Common phone number and email address. (SAC ¶ 15(i).)
- Employee and equipment interchange. (SAC ¶ 22(d), (e), (k), (l) & (m).)
- Common payroll system. (SAC ¶ 22(h).)
- Common policies. (SAC ¶ 22(n).)

In *Weiss,* Judge Furman granted the motion to dismiss filed by the non-employing defendants because the plaintiff failed to allege facts from which the court plausibly could infer that those defendants had any control over the plaintiff employee's terms and conditions of employment. As Judge Furman explained:

> [C]ourts must dismiss complaints against defendants within a broader alleged enterprise that lack a nexus suggesting <u>control of the plaintiff at hand</u>: for example, where the plaintiff fails to allege that he worked at the other locations in the enterprise, that he transferred items between those stores, or that he communicated with anyone at those stores.

2021 WL 3099895 at *3 (emphasis added) (citation and quotation omitted). In that case, the plaintiff's allegations of the use of a single gift card, that the restaurants were advertised on a single website, and that the defendants used the same email domain also were insufficient to demonstrate an "interrelation of operations."

> [I]t is not uncommon for two or more businesses that are run independently and manage their labor relations independently to use a single website or a common name for marketing purposes. That does not make each responsible for the labor law violations of the other. . . . Such evidence may establish that two or more businesses share a common purpose, but it does not, without more, "establish an interrelation of operations or centralized control of labor relations with plaintiffs' identified direct corporate employer sufficient to hold one corporation liable for the [NYLL] violations of the other corporation."

> \* \* \*

> At bottom, missing from the Complaint is any allegation permitting the inference that the Other Starr Restaurants possessed the power to control [the plaintiff].

*Weiss*, 2021 WL 3099895 at *5-6 (emphasis added) (citations and quotations omitted).

Further, allegations of a single integrated enterprise theory must satisfy the same

plausibility standards as other factual allegations in order to survive a motion to dismiss. *See*

*Chang Yan Chen v. Lilis 200 West 57th Corp.*, No. 19-CV-7654 (VEC), 2020 WL 7774345, at

*4 (S.D.N.Y. Dec. 30, 2020) (rejecting plaintiff's single integrated enterprise theory where

allegations were merely "naked assertions or formulaic recitations of elements necessary to

establish the existence of a single integrated business"). Thus, even where the plaintiff in *Weiss*

alleged facts that could, in theory, suggest some level of control by the non-employer defendants,

those allegations were "entirely conclusory" and therefore insufficient to support the single

integrated enterprise theory. *Weiss*, 2021 WL 3099895 at *5. For example, the conclusory and

generic allegation that "[e]mployees are interchanged among and transferred between

[d]efendants' restaurants" was not supported by specific facts. *Id.*

Similarly, in *Stewart* the court granted the non-employing defendants' motion to dismiss

because the plaintiff did not allege that those defendants "had any connection to him or control

of his employment," and thus there was "'no basis for bringing them into this lawsuit which, at

present, contains allegations of violations of law solely as to him.'" *Stewart*, 2020 WL 8732875,

at *6 (quoting *Hsieh Liang Yeh*, 2019 WL 633355, at *8). As the court in that case noted:

> Stewart's conclusory allegations of common ownership and common purpose,
> without more, do not answer the fundamental question of whether each corporate
> entity controlled Stewart or any other employees. . . . The [complaint] also fails the
> test of functional control as to [the non-employing defendants]. In fact, the
> [complaint] contains so little detail as to effectively disable the Court from
> analyzing the functional factors as to [the non-employing defendants] at all.

*Id.* (emphasis added) (internal citations and quotations omitted).[9]

_____

[9] *See also Chen v. Lilli's 200 West 57th Corp,* No. 19-CV-7654 (VEC), 2020 WL 7774345 (S.D.N.Y. Dec. 30, 2020)
(granting motion to dismiss because no allegations tying alleged joint employer to other defendants in connection
with plaintiff's employment); *Hsieh Liang Yeh*, 2019 WL 633355, *8 (S.D.N.Y. Feb. 14, 2019) (granting motion to
dismiss because moving defendants had no connection to location where plaintiff actually performed his work);
*Apolinar v. RJ 49 Rest., LLC,* No. 15-cv-8655 (KBF), 2016 WL 2903278, *4 (S.D.N.Y. May 18, 2016) (granting

Here, like the complaints in *Weiss* and *Stewart*, Plaintiffs' complaint contains no specific allegations from which the Court could plausibly infer that any of the Non-Employer Defendants have direct control over any of the three Plaintiffs' day-to-day employment. For example, Plaintiffs allege that Defendants "engage in interrelation of operations, share common ownership and management, [and] have centralized control of labor relations." (SAC ¶ 22.) But this conclusory allegation mimicking the factors of the integrated single employer test does not help Plaintiffs with respect to the Non-Employer Defendants. *See Chang Yan Chen*, 2020 WL 7774345, at *4; *Solis v. ZEP LLC*, No. 19-CV-4230 (JGK), 2020 WL 1439744, at *8-9 (S.D.N.Y. Mar. 24, 2020) (finding conclusory allegations insufficient to hold defendant liable under single integrated enterprise theory).

Further, although Plaintiffs allege that they occasionally drove buses for companies that did not issue their paychecks, there is no allegation that Wortham, Leonard, or Evans ever worked for or had any connection whatsoever to any of the Non-Employer Defendants. Indeed, all the references in the SAC to interchanging drivers for entities other than Bella, Pride, Quality, L&M, and MAT PA are conclusory allegations that fail to identify specific Non-Employer Defendants or facts. For example, Plaintiffs allege that "other bus drivers and dispatchers would work for various Defendants indiscriminately" (SAC ¶ 22(h)), but Plaintiffs neither identify a source of information for this allegation, nor even allege the specific driver, dispatchers, or "Defendants" to which they refer. Similarly, Plaintiffs allege that "Defendants" share and exchange employees and buses (*see* SAC ¶¶ 22(d) & (l)), but there is no information regarding which Defendants purportedly engaged in this practice. There certainly is no allegation in the

motion to dismiss because allegations did not identify any relationship that plaintiffs, as employees, had with locations other than the one location where they actually worked); *Lopez*, 2012 WL 6062501 (granting motion to dismiss because plaintiffs failed to allege that the corporate moving defendants had functional control over them).

SAC, for example, that Non-Employer Defendants Maggies or GVC II (paratransit companies) exchanged buses with Pride or Quality (school bus companies).[10]

In fact, Wortham does not allege that the companies "assigned" or "required" him to work a school bus route. (*Cf.* SAC ¶ 32.) Leonard only alleges working for MAT Penn., and Evans states she began working for Quality but was quickly transferred to Pride—where she remained (with an occasional stint on the Bella route, which she does not allege was required or assigned)). (*See generally* SAC ¶¶ 44-51.) Thus, the Plaintiffs' own specific allegations counter their conclusory allegations of employee interchange.

As in *Stewart*, there is "no basis for bringing" the Non-Employer Defendants "into this lawsuit which, at present, contains allegations of violations of law solely as to" Wortham, Evans, and Leonard, as they make no concrete allegations against any of the Non-Employer Defendants. Because Plaintiffs lack any specific facts concerning control by the Non-Employer Defendants, throughout the SAC they indiscriminately alternate between naming the specific employer for whom one of the Plaintiffs performed work and using the generic term "Defendants" in an obvious attempt to sow confusion. (*See, e.g.*, SAC ¶¶ 1 & 2 (alleging Wortham "worked 5-night shifts per week for [Bella]" but also that he worked "for <u>Defendants</u>"), ¶ 13 (alleging that Leonard "was hired in or around October 2015 to work as a school-bus driver for MAT," but that he "worked for <u>Defendants</u>") (emphasis added).) The Court should not countenance Plaintiffs' verbal trickery. Indeed, here, as in *Stewart*, the complaint "contains so little detail as to effectively disable the Court from analyzing the functional factors as to [the non-employer defendants] at all." 2020 WL 8732875 at *6 (internal citation and quotation omitted).

---

[10] Indeed, such an allegation would be absurd on its face because paratransit companies, such as Maggies and GVC II, could not possibly share vehicles with school bus companies, as they use completely different types of vehicles. (*See* Cataldo Decl. ¶¶ 11-12.)

Furthermore, contrary to Plaintiffs' conclusory allegations that all Defendants—including the Non-Employer Defendants—constitute a single integrated enterprise, Defendants provide different types of transportation service and each defendant that employs drivers operates independently under its own operations manager subject to its own collective bargaining agreement. As set forth in the accompanying Declaration of Janine Cataldo, the Defendants provide a range of transportation services.[11] Plaintiffs' allegation—that bus companies serving students in Wappingers Falls in Upstate New York are "indiscriminately" exchanging drivers and sharing vehicles on an "as-needed basis" with a bus company serving students in Philadelphia, more than 150 miles away—defies logic and common sense. (*See* SAC ¶¶ 22(e) & (l).) And Defendants TTC NY and TTC Penn. do not have <u>any</u> bus driver employees and therefore cannot "exchange" drivers as Plaintiffs allege. (*See* Cataldo Decl. ¶¶  3, 5.)

Further, Defendants do not have—nor do Plaintiffs even allege that they have—centralized control of labor relations, referred to as the "central concern" of the single integrated enterprise test. *See, e.g.*, *Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 285 (E.D.N.Y. 2013) (quoting *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996)). As noted in Point I, *supra*, six different unions represent (or represented) the respective drivers for Pride, Brooklyn, Bella, Quality, L&M, Maggies, GVC II, MAT NY, MAT Penn, and 21st Ave. (*See* Pollack Decl., Exs. A-J.)

Plaintiffs' sole basis for including the Non-Employer Defendants in this lawsuit—as opposed to only those Defendants they plausibly allege exercised at least some direct control

---

[11] Brooklyn and Bella provide bus transportation for adults with special needs (Cataldo Decl. ¶¶ 7, 8); GVC II and Maggies provide paratransit services to the elderly and disabled (Cataldo Decl. ¶¶ 11, 12); and L&M, Pride, and Quality provide student transportation in New York City (and L&M provides two different types of student transportation) (Cataldo Decl. ¶¶ 6, 9, 10). In addition, MAT NY provides school bus transportation in several different locations in Upstate New York, including Wappingers Falls, Yorktown Heights, Peekskill, and Haverstraw (Cataldo Decl. ¶ 13), whereas MAT Penn. provides school bus transportation near Philadelphia, Pennsylvania (Cataldo Decl. ¶ 14).

over their employment—appears to be that most Defendants (including the Non-Employer

Defendants) are referenced on the TTC NY website. (*See* SAC Exs. 2, 3.) Allegations based on a

shared website and common ownership, however, are simply insufficient to support Plaintiffs'

single integrated enterprise theory. *See Weiss* at *5; *Huer Huang v. Shanghi City Corp.*, 459 F.

Supp. 3d 580, 587 (S.D.N.Y. 2020)*; Hsieh Liang Yeh*, 2019 WL 633355, at *8 (rejecting

argument that restaurants were a single joint enterprise despite a centralized website); *Kwan v.

Sahara Dreams Co.*, No. 17-CV-4058 (RA), 2018 WL 6655607, at *4 (S.D.N.Y. Dec. 19, 2018)

("While sharing a common website may be sufficient to infer common ownership, it does [not]

suggest that [d]efendants shared centralized control over their employees."); *Apolinar*, 2016 WL

2903278, at *4 (allegations that defendants were listed on the same website and had identical

menus for each location, were insufficient to infer "an interrelation of operations or centralized

control of labor relations with plaintiffs' identified direct corporate employer").

      Plaintiffs' other allegations supposedly supporting application of the single integrated

enterprise theory are conclusory, and therefore also fail to state a plausible claim against the

Non-Employer Defendants. For example, Plaintiffs allege that "all bus drivers employed by

Defendants were subject to the same wage policies, on-boarding documents, employee policies,

human resource policies and workplace rules and regulations." (SAC ¶ 22(n).) This conclusory

allegation—which is contradicted by the irrefutable fact that each company operates under its

own collective bargaining agreement with one of several unions—lacks the specificity required

to support a claim against all the Non-Employer Defendants. *See, e.g.*, *Kwan*, 2018 WL

6655607, at *3-4 (dismissing claims against corporate defendants where the complaint

"principally relies on conclusory, boilerplate allegations of the elements of a single integrated

enterprise"). Plus, that allegation relies on reverse or circular logic: Plaintiffs begin with the

21

conclusion they wish to reach—that Defendants operate a "joint enterprise"—and then generally allege that "because of the common nature of the joint enterprise," all bus drivers "were subject to the same wage policies, on-boarding documents, employee policies, human resources policies, and workplace rules and guidelines." (SAC ¶ 22(n).) But to state a plausible claim for a single integrated enterprise, Plaintiffs must have a good faith basis for allegation of specific <u>facts</u>, not rely on the theory of an enterprise to reverse engineer non-specific factual allegations.

In sum, because Plaintiffs fail sufficiently to allege facts showing the existence of a single integrated enterprise in which the Non-Employer Defendants exercise any control whatsoever over Plaintiffs, the Court should dismiss Plaintiffs' claims against the Non-Employer Defendants, with prejudice, under Rule 12(b)(6).[12]

**Point III          The Court Should Dismiss All Claims Premised on Allegations of Willfulness for Failure to State a Claim.**

The statute of limitations for FLSA claims is two years, or three years if the violation was willful. 29 U.S.C. § 255(a). In order for the longer three-year limitations period to apply,

---

[12] *Brown v. Daikin America, Inc.*, 756 F.3d 219 (2d Cir. 2014), which the Court raised during the February 4th pre-motion conference, is factually distinguishable and therefore should not control the Court's decision here.

In *Brown*, the plaintiff relied on a single integrated enterprise theory to allege that the Japanese parent of the U.S.-based subsidiary for whom he worked, was liable for his discriminatory termination. The plaintiff alleged that the Japanese parent operated and directed a formal program in which employees rotated between the Japanese parent and the U.S. subsidiary for a period of years, that the Japanese parent "closely supervised" the U.S. subsidiary's employee group, and that the Japanese parent's approval was required for any employee-related action by the U.S. subsidiary. *Brown*, 756 F.3d at 227 n.8. The plaintiff alleged that the Japanese parent directed the U.S. subsidiary to discharge only non-Japanese employees. These facts were sufficient to allege centralized control of the plaintiff's direct employer and supported plaintiff's allegation of a single integrated enterprise. *Id.* at 228.

Here, unlike in *Brown*, there is no allegation in the SAC that the Non-Employer Defendants exercised control over Plaintiffs or their direct employers in a fashion that relates to Plaintiffs' wage and hour or retaliation claims. As such, Plaintiff cannot establish a single integrated enterprise with respect to the Non-Employer Defendants.

Finally, although "[w]hether two related entities are sufficiently integrated to be treated as a single employer is <u>generally</u> a question of fact not suitable to resolution on a motion to dismiss," *Brown* at 226 (emphasis added), courts in this Circuit have regularly issued decisions post-*Brown* dismissing complaints for failure to allege a single integrated enterprise. *See, e.g.*, *Weiss*, 2021 WL 3099895; *Stewart*, 2020 WL 8732875; *Apolinar*, 2016 WL 2903278; *Hsieh Liang Yeh*, 2019 WL 633355.

"plaintiffs must plausibly allege willfulness . . . . a court should not accept as true allegations that amount to mere legal conclusions, including those concerning a defendant's state of mind. Under this framework, a court need not accept as true a plaintiff's conclusory allegation that a defendant willfully violated the FLSA." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320-21 (2d Cir. 2021) (citations and quotations omitted).

Here, Plaintiffs fail to meet that burden because the SAC does not include even a single specific allegation that shows willfulness—each and every allegation of willfulness is conclusory. Thus, the Court should dismiss all claims that are premised on allegations of willfulness, and any FLSA claims Plaintiffs assert here are therefore subject to a two-year limitations period.

**Point IV**     **The Court Should Dismiss Plaintiffs' FLSA Claims Against 21st Ave Corp. as Time-Barred and Decline to Exercise Supplemental Jurisdiction Over Any State Law Claims Against 21st Ave Corp.**

21st Ave ceased operating in June 2018. (Farber Decl. ¶ 5.) This case was filed on January 6, 2021. (*See* ECF No. 1.) By that time, all Plaintiffs' potential FLSA claims against 21st Ave under the FLSA two-year limitations period had run.

Even under the three-year limitations period, all claims against 21st Ave are time-barred. Plaintiff Wortham did not begin his employment with any Defendant until after 21st Ave ceased operating (SAC ¶ 28), so he could not possibly have a claim against that company. Further, the other two plaintiffs did not file their opt-ins until the second half of 2021, more than three years after 21st Ave ceased operating in June 2018.[13] Thus even under a three-year limitations period, all Plaintiffs' claims against 21st Ave would be outside the FLSA limitations period.

---

[13] Marcel Leonard and Mary Evans both filed their opt-ins with Plaintiffs' Motion to Amend the First Amended Complaint on July 23, 2021 (ECF No. 31-3).

After dismissing the FLSA claims against 21st Ave, the Court should decline to exercise supplemental jurisdiction over the state wage law claims against 21st Ave. Notably, none of the plaintiffs allege they drove a 21st Ave route even once. The claims are completely dependent on the single integrated enterprise theory.

Under 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction. Here, inasmuch as all federal claims against 21st Ave are time-barred, the Court is permitted to decline to exercise supplemental jurisdiction. The Court should decline to exercise that jurisdiction because 1) 21st Ave has been out of business for almost four years, and 2) none of the plaintiffs even alleges doing a single minute of work for 21st Ave.

"In the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *McPherson v. NYP Holdings, Inc.*, 227 Fed.Appx. 51, 54 (2d Cir. 2007) (quoting *Kolari v. New York–Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)).

> Factors a district court may consider in deciding whether to exercise supplemental jurisdiction include the values of judicial economy, convenience, fairness, and comity. Here, only a complaint has been filed. Dismissal would not be unfair or manifestly inconvenient for Plaintiff Cabrera since only the barest of pre-trial proceedings have been completed, and dismissal of the pendent state law claims would not run afoul of the interests of judicial economy.

*Urresta v. MBJ Cafeteria Corp.*, No. 10 Civ. 8277, 2011 WL 4962969, at *5 (S.D.N.Y. Oct. 18, 2011) (citations and quotations omitted)

Just last year, Magistrate Judge Bulsara wrote:

> This is a "usual case," and the balance of factors weighs in favor of declining supplemental jurisdiction. For one, it is more economical to do so. When evaluating judicial economy, the Court looks to its familiarity with the facts, the timing of the case, the number of parties and claims, the amount of discovery, and whether there is ongoing parallel litigation. While this case was filed over four years ago, the

24

ensuing years of litigation have complicated rather than clarified this Court's understanding of the facts. No discovery has been taken, and the Court has decided no motions on the merits. This factor weighs heavily in favor of declining jurisdiction.

For another, it would not be inconvenient or unfair for Lin to pursue these wage notice and statement claims in state court. . . . Nor would Lin's claims be barred by the statute of limitations, despite the passage of time since the commencement of this case.

And while the remaining issues of state law are straightforward, comity favors in favor of them being decided in state court.

*Lin v. Quality Woods, Inc.,* No. 17-CV-3043 (DLI) (SJB), 2021 WL 4129151, *14-15 (E.D.N.Y. Aug. 10, 2021) (citations and quotations omitted). *See also Bernstein v. The MONY Group, Inc.*, 228 F. Supp. 2d 415, 420 (S.D.N.Y. 2002) (declining to exercise supplemental jurisdiction over state law claims because all federal claims dismissed); *Podell v. Citicorp Diners Club, Inc.*, 859 F.Supp. 701, 706 (S.D.N.Y. 1994) (citations omitted) (declining supplemental jurisdiction because it was "well before trial, with only the barest of pre-trial proceedings completed. Consequently, dismissal of the state claims would not be unfair or manifestly inconvenient to Podell.  State adjudication of Podell's remaining claims also favors comity.").

Accordingly, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' claims against 21st Ave.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court compel

Plaintiffs to submit all their claims to arbitration under the applicable CBAs and stay these

proceedings. Alternatively, the Court should dismiss, with prejudice, all claims against the Non-

Employer Defendants and all claims premised on allegations of willfulness.

Dated:  New York, New York
        February 28, 2022

Respectfully submitted,

MINTZ & GOLD LLP

 /s/ *Jeffrey D. Pollack*
Jeffrey D. Pollack
Kevin M. Brown
Timothy J. Quill, Jr.
600 Third Avenue, 25th Floor
New York, New York 10016
Tel: (212) 696-4848
Fax: (212) 696-1231
pollack@mintzandgold.com
brown@mintzandgold.com
quill@mintzandgold.com
*Attorneys for Defendants*

To:   C.K. Lee
      Anne Seelig
      Robert Kansao
      Lee Litigation Group, PLLC
      148 West 24th Street, 8th Floor
      New York, NY 10011
      (212) 465-1180
      cklee@leelitigation.com
      anne@leelitigation.com
      robert@leelitigation.com
      *Attorneys for Plaintiffs*