**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

TOUSSAINT WORTHAM, MARCELL LEONARD,
and MARY EVANS, *on behalf of themselves,*
*and all others similarly situated,*

                    Plaintiffs,

     v.

TOTAL TRANSPORTATION CORP. a
     New York Corporation,
TOTAL TRANSPORTATION CORP., a                       Case No.: 21-cv-00085
     Pennsylvania Corporation,
PRIDE TRANSPORTATION SERVCIES
     INC.,
BROOKLYN TRASPORTATION CORP.,
BELLA BUS CORP.,
QUALITY TRANSPORTATION CORP.,
L&M BUS CORP.,
MAGGIES PARATRANSIT CORP.,
GVC II INC.,
MAT BUS CORP., a New York
     Corporation,
MAT BUS CORP., a Pennsylvania
     Corporation,
21ST AVE BUS CORP.,

                    Defendants.

---

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THE SECOND AMENDED COMPLAINT

**Lee Litigation Group, PLLC**
C. K. Lee, Esq. (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiffs, FLSA Collective*
*Plaintiffs and the Class*

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ......................................................................................... ii

**EXHIBITS** .................................................................................................................... iv

**I.    PRELIMINARY STATEMENT** ........................................................................ 1

**II.   ARGUMENT SUMMARY** ................................................................................ 3

**III.  ARGUMENT AGAINST MOTION TO COMPEL ARBITRATION** ........................ 5

A.  DEFENDANTS ADMIT PLAINTIFFS' CBAS DO NOT CONTAIN CLEAR UNMISTAKABLE WAIVERS OF STATUTORY CLAIMS ......................................................................................... 5

B.  DEFENDANTS' RENEGOTIATED CBAS MAY NOT BIND FORMER EMPLOYEES, PLAINTIFF WORTHAM AND PLAINTIFF LEONARD ................................................................... 6

C.  WHILE PLAINTIFF EVANS IS A CURRENT EMPLOYEE DRIVING ROUTES FOR DEFENDANT PTS, DEFENDANTS' SHOWING IS INSUFFICIENT TO COMPEL ARBITRATION ............................... 10

D.  THE AGREEMENT IS UNCONSCIONABLE AND MUST BE REVOKED ......................... 13

E.  DEFENDANTS' PROSECUTION OF THIS ACTION ESTABLISHES A WAIVER OF ENFORCEMENT OF ANY ARBITRATION AGREEMENT ....................................................................... 15

1.  *The first factor – time elapsed from when litigation was commenced until the request for arbitration – favors waiver.* ....................................................................... 16

2.  *The second factor – the amount of litigation to date, including motion practice and discovery – favors waiver.* ................................................................................. 17

3.  *The third factor – prejudice to Plaintiffs – favors waiver.* .................................. 18

**IV.   ARGUMENT AGAINST MOTION TO DISMISS** ............................................. 19

A.  *PLAINTIFFS HAVE PROPERLY ALLEGED A SINGLE INTEGRATED ENTERPRISE* .............. 19

B.  *THE DISCOVERY PRODUCED TO DATE CORROBORATES PLAINTIFFS' ALLEGATIONS OF A SINGLE INTEGRATED ENTERPRISE* .............................................................................. 22

C.  *PLAINTIFFS HAVE PROPERLY ALLEGED WILLFULNESS* ....................................... 26

D.  THE COURT MUST CONTINUE TO EXERCISE SUPPLEMENTAL JURISDICTION ............. 28

**V.    CONCLUSION** .............................................................................................. 29

## TABLE OF AUTHORITIES

**Cases**

*Addison v. Huron Stevedoring Corp.*, 96 F. Supp. 142 (S.D.N.Y. 1950) .................................... 19

*Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. 74 (S.D.N.Y. 2011) ............................................ 20

*Agarunova v. Stella Orton Home Care Agency, Inc.*, 794 Fed. Appx. 138 (2d. Cir. 2020) ....... 7, 8

*Alfaro v Vardaris Tech, Inc.*, 69 AD3d 436, 893 N.Y.S.2d 17 (1st Dept 2010) ......................... 14

*Amer. Sales Co., Inc. v. AstraZeneca AB*, No. 10 Civ. 6062 (PKC), 2011 WL 1465786 (S.D.N.Y. Apr. 14, 2011) .......................................................................................................................... 28

*Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193 (2d Cir. 2005) ........................................ 20

*Brennan v. Arnheim & Neely,* 410 U.S. 512, 518 (1973) ............................................................ 20

*Brown v. Daikin Am., Inc.*, 756 F.3d 219 (2d Cir. 2014) ............................................................ 25

*Carnegie v. H&R Block, Inc.*, 180 Misc 2d 67, 687 N.Y.S.2d 528 (Sup. Ct., New York County 1999) ............................................................................................................................................ 14

*Cheeks v. Pancake House.* 796 F.3d 199 (2d Cir. 2017) ............................................................ 15

*Chu v. Chinese-American Planning Council Home Attendant Program, Inc.*, 194 F Supp 3d 221 (S.D.N.Y. 2016) .............................................................................................................................. 7

*Commercial Lubricants LLC v. Safety-Kleen Sys.*, 2018 U.S. Dist. LEXIS 178649 (E.D.N.Y. Oct. 17, 2018) .......................................................................................................................................... 17

*Doe v. Trump Corp.*, 453 F. Supp. 3d 634 (S.D.N.Y. 2020) ................................................. 16, 18

*Florists' Transworld Delivery, Inc. v. Fleurop-Interflora*, 261 F. Supp. 2d 837 (E.D. Mich. 2003) ...................................................................................................................................................... 9

*Freeman v. Bianco*, 2003 U.S. Dist. LEXIS 1005 (S.D.N.Y. 2003) ............................................... 9

*Hichez v. United Jewish Council of the E. Side, Home Attendant Serv. Corp.*, 179 A.D.3d 576 (1st Dept. 2018) ................................................................................................................................ 7, 8

*Hinds County v. Wachovia Bank N.A.,* 790 F. Supp. 2d 125 (S.D.N.Y. 2011) ........................... 14

*In re Currency Conversion Fee Antitrust Litigation*, 361 F Supp 2d 237 (S.D.N.Y. 2005) ......... 14

*Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92 (S.D.N.Y. 2017) .............................................. 17

*Kegun Chen v. Oceanica Chinese Rest., Inc.*, 2018 U.S. Dist. LEXIS 140925 (E.D.N.Y. 2018) 29

*Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985) ..................................... 14

*Konstantynovska v. Caring Professionals, Inc.*, 2018 NY Slip Op 31475(U) (Sup. Ct.) ............... 7

*Konstantynovska v. Caring Professionals, Inc.*, 2019 NY Slip Op 03676, 172 A.D.3d 486, 103 N.Y.S.3d 364 (App. Div. 1st Dept.) ........................................................................................ 7, 8

*La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156 (2d Cir. 2010) ............................................................................................................................ 16, 18, 19

*Lawrence v. Sol G. Atlas Realty Co.* 841 F.3d 81 (2d Cir. 2016) ............................................ 5, 6

*Leadertex v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20 (2d Cir. 1995) ..................... 7, 17

*LG Elecs., Inc. v. Wi-Lan USA, Inc.*, 623 F. App'x 568 (2d Cir. 2015) ...................................... 19

*Mason Tenders Dist. Council of Greater N.Y. v. Gilbane Bldg. Co.*, 2018 U.S. Dist. LEXIS 162337 (S.D.N.Y. Sep. 19, 2018) ............................................................................................................. 18

*McLaughlin v. Richland Shoe Co.,* 486 U.S. 128 (1988) ............................................................ 26

*Meridian Autonomous Inc. v. Coast Autonomous LLC*, No. 17 Civ. 5846, 2018 U.S. Dist. LEXIS 169653 (S.D.N.Y. Sep. 30, 2018) ............................................................................................... 18

*Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*, 775 F.3d 145 (2d Cir. 2014) ............ 10

*Nikolaeva v. Home Attendant Servs. of Hyde Park*, 2018 U.S. Dist. LEXIS 197155 (S.D.N.Y. 2018) .................................................................................................................................... 7

*Oladokun v. Ryan*, 2011 U.S. Dist. LEXIS 109638 (S.D.N.Y. 2011) ........................................ 29

*Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362 (2d Cir. 2003) ...................................... 10

*Penthouse Int'l, Ltd. v. Playboy Enters.*, 663 F.2d 371 (2d Cir. 1981). ....................................... 9

*Perez v. Westchester Foreign Autos, Inc.*, No. 11 Civ. 6091, 2013 WL 749497, 2013 U.S. Dist. LEXIS 35808 (S.D.N.Y. Feb. 28, 2013) ............................................................................. 20

*Policy Admin. Sols., Inc. v. QBE Holdings, Inc.*, No. 15 Civ. 2473, 2019 U.S. Dist. LEXIS 148632, 2019 WL 4126464 (S.D.N.Y Aug. 30, 2019) .................................................... 16, 17

*PPG Industries, Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103 (2d Cir. 1997) ......................... 16

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967) ........................................................................................................................ 10

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) . 10

*Reyes v. Altamarea Group, LLC,* No. 10 Civ. 6451, 2011 WL 280799, 2011 U.S. Dist. LEXIS 5195 (S.D.N.Y. Jan. 18, 2011) ............................................................................................. 20

*Shiflett v. Scores Holding Co.*, 601 Fed. Appx. 28 (2d Cir. 2015) ............................................ 21

*Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002) .............................................. 10

*Sweater Bee by Banff Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457 (2d Cir. 1985) ..................... 10

*Teshabaeva v. Family Home Care Servs. of Brooklyn & Queens, Inc.*, 198 A.D.3d 500 (1st Dept. 2021) ..................................................................................................................................... 8

*V.S. v. Muhammad*, 595 F.3d 426 (2d Cir. 2010) ....................................................................... 8

*Weinstein v. Jenny Craig Operations, Inc.*, 2014 N.Y. Misc. LEXIS 6067 (Sup. Ct., New York County 2014) ........................................................................................................................ 13

*Wilson v. Roberson,* No. 92-CV-2709 (KMW), 1993 WL 119695 (S.D.N.Y. Apr. 14,1993) ..... 29

## Statutes

28 U.S.C. § 1367 ................................................................................................................ 28, 29

29 U.S.C. § 203 ...................................................................................................................... 20

**EXHIBITS**

**Exhibit A** – Transcript of Court Hearing
**Exhibit B** – Plaintiff's Employment Documents from Defendants
**Exhibit C** – Defendants' Interrogatory and Supplemental Interrogatory Responses
**Exhibit D** – Declaration of Plaintiff WORTHAM appended to Plaintiff's Collective Motion
**Exhibit E** – Wage Notice Produced to Plaintiff WORTHAM
**Exhibit F** – Plaintiff WOTHAM's Payroll Summaries
**Exhibit G –** Defendants' Handbooks
**Exhibit H –** Defendant TTC NY LinkedIn page
**Exhibit I –** Redline Comparison of Def. Exhibit B and I

## I.      PRELIMINARY STATEMENT

In an attempt to mislead the Court and avoid liability, Defendants knowingly omit material facts from their Memorandum of Law.  Defendants claim that Plaintiffs are all subject to collective bargaining agreements ("CBAs") containing arbitration provisions with clear and unmistakable waivers of statutory claims.  This is not true.  Defendants knows this is not true.  Defendants' counsel Jeffrey Pollack admitted the following about Plaintiffs' CBAs on February 7, 2022, at the pre-motion hearing before the Court: "[t]hey don't have a clear and unmistaken waiver of statutory claims, correct." *See* **Exhibit A**, Transcript of Court Hearing, at 7:14-27.  Despite this admission, Defendants chose to make this exact false argument in their motion.

To buttress their intentionally false claims to the Court, Defendants spent the week between February 24, 2022 to February 28, 2022, creating irrelevant, improper Addendums to Defendants' CBAs:

- Defendant PRIDE TRANSPORTATION SERVICES, INC.'s ("PTS") addendum was signed on February 24, 2022. *See* Defendants' Exhibit A attached to the Motion to Compel.

- Defendant BROOKLYN TRANSPORTATION CORP.'s ("BTS") addendum was signed on February 27, 2022. *See* Defendants' Exhibit B attached to the Motion to Compel.

- Defendant BELLA BUS CORP.'s ("BBS") addendum was signed on February 28, 2022. *See* Defendants' Exhibit C attached to the Motion to Compel.

- Defendant L & M BUS CORP.'s (L&M) addendum was signed on February 26, 2022. *See* Defendants' Exhibit E attached to the Motion to Compel.

- Defendant MAT BUS CORP.'s (NY) ("MAT NY") addendum was signed on February 26, 2022. *See* Defendants' Exhibit H attached to the Motion to Compel.

- Defendant MAT BUS CORP.'s (PA) ("MAT PA") addendum was signed on February 27, 2022. *See* Defendants' Exhibit I attached to the Motion to Compel.

- According to Defendants' Declarant Todd Farber, Defendant QUALITY TRANSPORTATION CORP. ("QTS") has finalized negotiation for a similar addendum as of February 28, 2022 (collectively the "Addendums").

Each of the Addendums attempts, but fails, to add the clear and unmistakable waiver missing from Defendants' original CBAs.

More importantly, Defendants knowingly omitted the dates of execution of these Addendums from their Memorandum of Law. Plaintiffs only discovered Defendants' deception after reviewing the signatures and dates of each Addendum. Should Defendants have been forthcoming regarding the Addendums' dates of execution, the irrelevance of these provisions as to Plaintiff WORTHAM and Plaintiff LEONARD would have been laid bare. Plaintiff WORTHAM left the employment of Defendants on April 11, 2021. *See* **Exhibit B**, Plaintiff's Employment Documents from Defendants. Plaintiff LEONARD's employment ended in March of 2020. *See* Plaintiff's Second Amended Complaint ("SAC") [ECF 49] at ¶ 40. No cogent argument may be made that these Plaintiffs are subject to addendums to their CBAs executed years after their employment terminated. Defendants do not even attempt to argue that these Addendums apply to former employees. Instead, Defendants ignore the date of execution in the hope that Plaintiffs and the Court will not notice they are attempting to enforce CBA provisions executed aft the employment of Plaintiffs WORTHAM and LEONARD.

Not only are these Addendums inapplicable as to Plaintiffs WORTHAM and LEONARD, no proof has been presented that Plaintiff EVANS, a current employee of Defendants, is bound to any CBA. Defendants have failed to provide any proof that any Plaintiff is, or even was, a union member, or that the CBA's to which Defendants filed Addendums apply to any of the Plaintiffs. Beyond Plaintiffs' arguments regarding scope and unconscionability, Defendants' motion is fatally flawed due to this deficiency.

It is also important to note, Defendants' current application to compel arbitration bears no resemblance to the argument presented in their pre-motion letter of December 22, 2021, at the

2

February 7, 2022 pre-motion hearing before Judge D'Arcy Hall, or the argument for which the Court agreed to receive briefing. *See* **Exhibit A** at 16:16-25, 17:1-7; *see also* Defendants Pre-Motion Letter [ECF 50].  Had Defendants been honest with the Court in their intent to quickly renegotiate each Defendants' CBAs' Arbitration Agreements and apply them to their former employees, including Plaintiff WORTHAM and Plaintiff LEONARD, it is possible the Court would have rejected the motion as frivolous rather than waste time and judicial resources.

Finally, Defendants' Motion to Dismiss the supposed 'non-employer' Defendants must be denied.  Plaintiffs has adequately alleged a single integrated enterprise and joint employer relationship.  In fact, since the filing of the Amended Complaint on January 6, 2021, Plaintiffs have received some minimal discovery from Defendants as to Plaintiff WORTHAM. The discovery received to date demonstrates many of the allegations in Plaintiffs' Second Amended Complaint.  Specifically, the discovery demonstrates that putative class members were **<u>directly</u>** managed by Defendants' parent company, Defendant TOTAL TRANSPORTATION CORP. (NY) ("TTC NY").  For example, while Plaintiff WORTHAM drove routes for at least three of Defendant TTC NY's subsidiaries, he was always supervised by the same manager, Samuel Bent, an employee of Defendant TTC NY. *See* **Exhibit B**.  While Defendant TTC NY's direct management of the employees of its subsidiaries is dispositive, Plaintiffs' complaint alleges many other facts demonstrating a common enterprise. *See* Second Amended Complaint ("SAC") [ECF 49], at ¶22.

For all the above reasons, outlined in greater detail below, the Court must deny Defendants' Motion to Compel Arbitration and Dismiss.

## II.     ARGUMENT SUMMARY

Defendants' Motion to Compel Arbitration pursuant to these Addendums must be denied for the following reasons:

    i.    Defendants have admitted that any CBAs which may be applied to Plaintiffs do not contain a clear unmistakable waiver of statutory claims;

    ii.    Defendants deceitfully attempted to bind Plaintiffs WORTHAM and LEONARD to Addendums entered into after their employment ended;

    iii.    Defendants have failed to demonstrate that Plaintiff EVANS is subject to a CBA;

    iv.    These Addendums are not enforceable as they were created after the filing of this action, and in violation of protections afforded to putative class members; and

    v.    Defendants' prosecution of this action establishes a waiver of enforcement of any Arbitration Agreement as to Plaintiffs.

Further, Defendants' motion to dismiss non-employing Defendants, must be denied for the following reasons:

    i.    Plaintiffs have properly alleged a single integrated enterprise, and Defendants internal transferring of employees on an as needed basis between TTC NY's subsidiaries is particularly demonstrative of this integrated relationship;

    ii.    All evidence produced to date demonstrates that TTC NY directly managed all drivers. Defendant TTC NY's employees, such as Samuel Bent, directly supervised and managed employees regardless of the nominal subsidiary of TTC NY they worked. Defendant TTC NY controlled all employee on-boarding documents, payroll, maintenance of records, and established common handbooks; and

    iii.    Defendants raise in their motion an argument never previously raised to Plaintiffs or the Court. Defendants now wrongly claim, for the first time, that Plaintiffs fail to properly allege willfulness in its Complaint.

As will be detailed below, it is clear that Defendants' motion is not an attempt to seek any actual judicial relief, but frivolous motion practice brought in a flagrant attempt to delay discovery.

> *THE COURT: Stop. I understand. But you're making the argument, so… I've got to assume that before you proffer an argument before the Court, that you found a basis for it…it makes me wonder whether you're just, you know, this letter that you sent is just you're throwing things against the wall…* See **Exhibit A** at 8-9:25-4.
>
> *MR. POLLACK: We have not found [a] case on point.* See **Exhibit A** at 9:9-10.
>
> *THE COURT: So you don't have a basis in law for your argument?* See **Exhibit A** at 9:17-18.

> *MR. POLLACK: Your Honor, we will fully support our argument when we make the motion. And also, your Honor, we are not playing hide the ball with the contracts. What I told counsel was when we file our motion, you'll get everything. Of course, we're going to file the collective bargaining agreement in our motion, we understand that.* See **Exhibit A** at 9:19-24.

> *THE COURT: Well, you're playing hide the ball on the law with me right now.* See **Exhibit A** at 9-10:25-1.

Defendants' subterfuge in manufacturing an Addendum that compels arbitration, after the February 7, 2022 pre-motion conference, leaves a stench of unfair and improper litigation tactics that thwarts the rights of prospective class members, who must be protected by the Court.

Defendants' motion must be denied as it is brought with the intention to delay and frustrate the litigation, and consistent with Defendants' counsel's statements at the preliminary hearing, lacks any basis in caselaw or factual support.

## III.     ARGUMENT AGAINST MOTION TO COMPEL ARBITRATION

### A.  DEFENDANTS ADMIT PLAINTIFFS' CBAs DO NOT CONTAIN CLEAR UNMISTAKABLE WAIVERS OF STATUTORY CLAIMS

Defendants have already admitted at the February 7, 2022 conference before the Court that any and all CBAs, which at the time could be applied to Plaintiffs, lacked a clear and unmistakable waiver of statutory claims necessary to compel arbitration based on provisions found within Defendants' CBAs. *See* **Exhibit A**, Transcript of Court Hearing, at 7:14-27 ("THE COURT: So they don't have the language that would subject them to arbitration of these claims? MR. POLLACK [Defense Counsel]: They don't have a clear and unmistaken waiver of statutory claims, correct.").

The Second Circuit Court of Appeals laid out the controlling law in *Lawrence v. Sol G. Atlas Realty Co.*, where it held that "[c]laims under Section 1981, Title VII, the NYSHRL, the FLSA, and NYLL may be made subject to arbitration" by a CBA only if the purported arbitration

5

provision "contains a 'clear and unmistakable' waiver of Plaintiff's right to pursue his statutory claims in federal court." 841 F.3d 81, 83 (2d Cir. 2016).  Such a waiver requires "specific references in the CBA either to the statutes in question or to statutory causes of action generally." *Id*. at 84.

In this case, the Plaintiffs drove routes for the following TTC NY subsidiaries: (1) MAT BUS CORP., (2) BELLA BUS CORP., (3) L & M BUS CORP., (4) PRIDE TRANSPORTATION SERVICES INC., (5) QUALITY, and (6) (based on recent discovery) BROOKLYN TRANSPORTATION CORP.

Defendants admit that during Plaintiff WORTHAM's and PLAINTIFF LEONARD's employment, the CBAs potentially applicable to Plaintiffs did not have arbitration provisions with clear unmistakable waiver of statutory claims.  As the CBAs potentially relevant to Plaintiff WORTHAM and Plaintiff LEONARD lack the requisite language to enforce arbitration, the Court must deny Defendants' Motion to Compel Arbitration.

### B.  DEFENDANTS' RENEGOTIATED CBAS MAY NOT BIND FORMER EMPLOYEES, PLAINTIFF WORTHAM AND PLAINTIFF LEONARD

Throughout the week of February 24, 2022 to February 28, 2022, after the pre-motion conference held with the Court on February 7, 2022, Defendants executed addendums to seven of Defendants' CBAs in an attempt to manufacture CBAs with a 'clear and unmistakable' waiver of employees' right to pursue statutory claims in federal court.

As to Plaintiffs WORTHAM and LEONARD, these Addendums are irrelevant.  Both Plaintiff WORTHAM and Plaintiff LEONARD ended their employment long before these new agreements were executed.  As noted above, Plaintiff WORTHAM left the employment of Defendants on April 10, 2021, and Plaintiff LEONARD's employment ended in March of 2020. *See* **Exhibit B**; *see also* SAC at ¶ 40.  These addendums were all signed in February of 2022.

6

It is blackletter law that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute [to] which he has not agreed [ ] to submit." *Leadertex v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 27 (2d Cir. 1995).  Here, Defendants improperly attempt to bind the Plaintiffs WORTHAM and LEONARD to a contract for which they were not signatories and for which they were not a represented union member.

Courts analyzing this basic contractual principle routinely refuse to apply the arbitration provisions of CBAs against individuals whose employment ended before the provision was executed. *See Agarunova v. Stella Orton Home Care Agency, Inc.*, 794 Fed. Appx. 138, 140, (2d. Cir. 2020) ("Agarunova was not bound to arbitrate her statutory claims by the 2015 MOA [Memorandum of Agreement Modifying a CBA] because she was no longer an employee nor represented by the union as of December 16, 2015, the date of the signing of the 2015 MOA"). *Konstantynovska v. Caring Professionals, Inc.*, 2018 NY Slip Op 31475(U), 12-13 (Sup. Ct.) ("This Court agrees with the relevant holdings in *Chu* and *Safonova* that plaintiffs, to the extent that they were not employed with defendant at the time the MOA  was ratified, are not bound to it.), *aff'd*, 172 A.D.3d 486, 487 (1st Dept. 2019); *Hichez v. United Jewish Council of the E. Side, Home Attendant Serv. Corp.*, 179 A.D.3d 576, 577 (1st Dept. 2018) ("Nor are plaintiffs bound by the new article 'hereby created' by the MOA…); *Chu v. Chinese-American Planning Council Home Attendant Program, Inc.*, 194 F Supp 3d 221, 228 (S.D.N.Y. 2016) (Because Plaintiffs were former employees at the time a CBA's amendment was executed, the Court ruled, "[P]laintiffs may not be bound by subsequently adopted amendments to a collective bargaining agreement to which they were not parties."); *Nikolaeva v. Home Attendant Servs. of Hyde Park*, 2018 U.S. Dist. LEXIS 197155, *13 (S.D.N.Y. 2018) (Disregarding Addendum to CBA adopted after Plaintiff's employment).

As detailed above, controlling law from the Second Circuit Court of Appeals and controlling law from State intermediary Courts have held that plaintiffs may not be bound to provisions of a CBA executed after their employment was terminated. *See Agarunova*, 794 Fed. Appx. At 140, (2d. Cir. 2020); *Hichez*, 179 A.D.3d at 577 (1ˢᵗ Dept. 2018); *Konstantynovska,* 172 A.D.3d at 487 (1st Dept. 2019); *Teshabaeva v. Family Home Care Servs. of Brooklyn & Queens, Inc.*, 198 A.D.3d 500, 500 (1st Dept. 2021); *see also V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010) (Federal court are "bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion.").

Defendants attempt to have this Court eschew clear controlling case law and fundamental contractual principles through <u>crucial</u> omissions from their Memorandum of Law.  Specifically, Defendants fail to mention that Plaintiff WORTHAM and Plaintiff LEONARD were former employees when these Addendums were executed.

Not only are these Addendums not enforceable against Plaintiffs WORTHAM and LEONARD, in the case of Plaintiff LEONARD, Defendants do not even provide a relevant Addendum.  During Plaintiff LEONARD's employment, he only drove routes for Defendant MAT PA. *See* SAC [ECF 49] at ¶¶ 40-43.  The addendum altering MAT PA's CBA arbitration provision was signed on February 27, 2022, and applied to a CBA effective from September 1, 2021 through August 31, 2024. *See* Defendants' Exhibit I attached to the Motion to Compel. Plaintiff LEONARD left Defendants' employment almost two (2) years before the MAT PA addendum was signed, and a full year before the CBA, which the addendum amended, went into effect.

Once again, in Defendants' attempt to mislead the Court into breaking basic contractual principals, Defendants omit from their argument: (i) the dates of Plaintiffs employment, (ii) the

date these Addendums were executed and, (iii) in the case of LEONARD, the date of effectiveness of the relevant amended CBA.

Such intentional misrepresentation by omission must be sanctioned, as Defendants know that if they included such bad facts, the motion would not even bear consideration by the Court. *Freeman v. Bianco*, 2003 U.S. Dist. LEXIS 1005, *16 (S.D.N.Y. 2003) (Finding the deliberate omission of the dates of alleged events from a Complaint potentially sanctionable when those dates were materially significant to the claim.); *Florists' Transworld Delivery, Inc. v. Fleurop-Interflora*, 261 F. Supp. 2d 837, 840 (E.D. Mich. 2003) ("The omission from the complaint of any reference to the dates of the events are alleged to have occurred strongly suggests that the plaintiffs and their counsel were aware of the statute of limitation problem from the outset and attempted to hide it.").

Parties, witnesses, and counsel must be truthful and not misrepresent facts through active deception or deliberate omission to opposing parties or the Court.  When they are not truthful, federal courts "possess[] broad inherent power to protect the administration of justice by levying sanctions in response to abusive litigation practices." *Penthouse Int'l, Ltd. v. Playboy Enters.*, 663 F.2d 371, 386 (2d Cir. 1981).  The misconduct outlined above is sanctionable and the Court may issue sanctions its own inherent authority.  The Court's inherent authority to impose sanctions should be used where "false testimony, material misrepresentations [by counsel] and foot-dragging were used in an effort to prevent [the plaintiff] from getting at [] records that were relevant to the central issue of the case." *Penthouse Int'l, Ltd.*, 663 F.2d at 392.

The clear purpose of Plaintiff WORTHAM's and Plaintiff LEONARD's inclusion in this Motion to Compel Arbitration was to provide an excuse for Defendants' continued refusal to engage in any discovery and, in so doing, allow Defendants to continue delaying this matter's

ultimate resolution. *Sweater Bee by Banff Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 466 (2d Cir. 1985) ("[A] district judge can recognize the tactics of delay or harassment that operate to prejudice the opposing party and to cause him expense..."). This case has been in litigation since January 6, 2021. While most other cases would already be trial-ready, here formal discovery has not even started.

As there is no basis in law to apply these Addendums on Plaintiff WORTHAM and Plaintiff LEONARD, the Court must deny Defendants' Motion to Compel Arbitration with respect to them.

### C. While Plaintiff Evans is a Current Employee Driving Routes for Defendant PTS, Defendants' Showing is Insufficient to Compel Arbitration

Unlike Plaintiff WORTHAM and Plaintiff LEONARD, Plaintiff EVANS is a current employee currently driving routes for Defendant PTS. Despite Plaintiff EVANS's continued employment with Defendants, Defendants' showing is entirely insufficient to compel Plaintiff EVANS to waive her right to pursue her claims in Court.

Arbitration agreements are contracts, "on equal footing with other contracts," so courts must "enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) (internal citation omitted). Indeed, the purpose of the FAA was "to make arbitration agreements as enforceable as other contracts, *but not more so*." *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003) (emphasis in original); *quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967). Since arbitration agreements are considered contracts, *Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*, 775 F.3d 145, 148 (2d Cir. 2014), whether the parties entered into a binding arbitration agreement is governed by state contract law principles. *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 27 (2d Cir. 2002).

Fatal to Defendants' attempt to compel arbitration is Defendants' failure to provide any proof that Plaintiffs are subject to any of these Addendums.  Defendants failed to provide the following: (i) any of the CBAs that supposedly bind or apply to Plaintiffs, Defendants only produced the Addendums, (ii) any proof that Plaintiff EVANS (or any Plaintiff) is a bargained for union member bound to any CBA, and (iii) any document or testimony that these mid-contract addendums have been ratified or do not require ratification pursuant to each CBA or the bylaws of Plaintiffs' supposed unions.  The Defendants are asking the Court to make a finding of enforceability of a CBA without including the CBA for the Court or anyone to consider.  Even before the motion, and as was raised at the pre-motion conference, Plaintiff had asked for the full CBA. *See* **Exhibit A** at 6:6-24.  Although Defendants said they would provide the CBAs at the preliminary conference, they have refused to do so and did not provide a copy in their motion.  As the Court itself noted, it is impossible for the Court to approve enforceability of a CBA when Defendants failed to submit to the Court the contract at issue.

> *THE COURT: So let's assume they [the CBAs] don't have the waiver of the statutory claims, what would be the basis to suggest that I must grant your request with respect to the compulsion of arbitration when the named plaintiffs, and I'll look at the provision, you didn't provide it in your letter, presumably, you were planning to include it in your motion **because if you didn't then, obviously, you wouldn't be able to prevail.** So hide-the-ball can only work for so long.* See **Exhibit A** at 7:18-25 (emphasis added).

> *MR. POLLACK: Of course, we're going to file the collective bargaining agreement in our motion, we understand that.* See **Exhibit A** at 9:23-24.

Despite requests from Plaintiffs, clear guidance from the Court, and Defendants' statement that they understood the necessity of presenting a CBA, Defendants still chose to withhold the relevant CBAs from Plaintiffs and the Court.

### ***That Defendants' motion is fundamentally flawed for these reasons cannot be argued!***

Based on this clear failure alone, Defendants have not established a proper nexus between an enforceable agreement and any of the Plaintiffs.  Not only does Defendants' motion fail to provide the CBAs they seek to enforce, they fail to establish – or even claim – that Plaintiffs are members of any of the unions.

Even if Defendants had properly made specific claims of union membership and submitted necessary evidence, many of the addendums provided by Defendants, including the Addendum for Defendant PTS, the entity for whom Plaintiff EVANS currently drives, do not contain a waiver of an employee's right to bring suit in Federal Court.  Defendants' amended Dispute Resolution provision found within PTS's Addendum only pertains to the Union and the Employer, not to individual employees.

First, the PTS's Addendum very clearly states it covers only disputes between (i) the Employer, and (ii) the Union or (iii) any group of employees. *See* Defendants' Exhibit A attached to the Motion to Compel. ("All disputes…between the Employer and the Union, or any <u>group</u> of employees' covered by this Agreement…") (emphasis added).  As this provision does not apply to individual employees, Defendants may not attempt to enforce this Arbitration Agreement as to Plaintiff EVANS.

Second, the PTS's Addendum to its CBA provides no mechanism for an individual to advance a dispute against the Employer.  The new grievance procedure very clearly is limited to use by the Employer and a Union.  For example, the agreements procedure mandates the matter be first discussed between the Union and the Employer. *Id.* ("The matter shall be 1st taken up between a representative of the Union and the Employer…").  Should the Union not bring an

employee's claim to the Employer, no procedure is outlined for an employee to advance his own claims.

Finally, the Agreement requires all arbitration costs be split between the Employer and Union, which is a clear indication that the Agreement only contemplates the resolution of disputes between the Union and the Employer, not individual employee grievances. *Id.* ("The Cost of the arbitration shall be shared equally by the Employer and the Union.").

Defendants' presentation is clearly inadequate to compel arbitration of any Plaintiffs' claims, including Plaintiff EVANS.  Defendants fail to identify the Unions with whom Plaintiffs are supposedly members. A fatal flaw <u>requiring</u> denial of Defendants' motion.  Defendants fail to provide proof of any union membership of the Plaintiffs. A fatal flaw <u>requiring</u> denial of Defendants' motion.  Defendants fail to provide the actual CBAs they are attempting to enforce, a fatal flaw <u>requiring</u> denial of Defendants' motion. Defendants fail to identify the employees covered by these CBAs, a fatal flaw <u>requiring</u> denial of Defendants' motion. Defendants fail to provide Addendum to a CBA from a Plaintiff's relevant years of employment, a fatal flaw <u>requiring</u> denial of Defendants' motion.  Even if Defendants provided this necessary information and documentation, Defendants' Addendums contain agreements inapplicable to individual employees.

A failure to provide any of the above would require the denial of a motion to compel arbitration.  Due to Defendants' failure to provide all of the above, the Court must deny Defendants' Motion.

### D.  THE AGREEMENT IS UNCONSCIONABLE AND MUST BE REVOKED

It is black letter law in New York, that arbitration agreements signed by current employees after class litigation is commenced are deemed unconscionable and thus unenforceable. *Weinstein v. Jenny Craig Operations, Inc.*, 2014 N.Y. Misc. LEXIS 6067 (Sup. Ct., New York County 2014);

*see also In re Currency Conversion Fee Antitrust Litigation*, 361 F Supp 2d 237, 253 (S.D.N.Y. 2005); *Carnegie v. H&R Block, Inc.*, 180 Misc 2d 67, 70-72, 687 N.Y.S.2d 528 (Sup. Ct., New York County 1999) (after litigation is commenced, a defendant may not have "coercive" or "misleading" communications with potential class members or "attempt to affect" their "decision to participate in the class"); *Alfaro v Vardaris Tech, Inc.*, 69 AD3d 436, 893 N.Y.S.2d 17 (1st Dept 2010) ("the inescapable inference that defendant[] drafted the [agreements and had] … potential class members [sign them] for the purpose of … exclud[ing] them[] from the class[.]).

Federal and State Courts both consistently find arbitration agreements to be unenforceable and coercive when Defendants institute arbitration agreements on potential class members without ensuring "that potential class members receive accurate and impartial information regarding the status, purposes and effects of the class action." *Hinds County v. Wachovia Bank N.A.,* 790 F. Supp. 2d 125, 134 (S.D.N.Y. 2011); *citing Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985); *see e.g., In re Currency Conversion Fee Antitrust Litig*., 361 F. Supp. 2d 237, 254 (S.D.N.Y. 2005) (the court held that arbitration clauses were unenforceable as "defendants' unsupervised communications were improper because they sought to eliminate putative class members' rights in this litigation.").

That Defendants were able, in a single week no less, to create and execute Addendums to seven of their CBAs indicates coercive actions for purposes of excluding putative class members from this litigation.  Defendants provide no affidavit that this litigation was discussed with the Union representatives, nor do they provide an affidavit, stating that Defendants' Addendums were not the result of coercive tactics such as threats of reductions in future pay, reductions in time-off, or other employee benefits.  In fact, at least two of the Addendums acknowledge using future negotiations as part of the basis for the Addendum:

14

- "In anticipation of their upcoming negotiations…" *See* Defendants' Exhibit A attached to the Motion to Compel.
- "WHEREAS the parties are in discussions regarding a successor collective bargaining agreement." *See* Defendants' Exhibit B attached to the Motion to Compel.

Defendants forced Addendums, so as to attempt to exclude current employees from the class. Defendants have provided these agreements without providing any proof that proper notice was given to Union Representatives negotiating these addendums, and that no coercive threats to future pay or working conditions were used to secure such agreements.

Defendants also fail to state they solicited these Addendums a year after the Complaint was filed.  As such, any release of rights after filing without Court approval cannot be approved.  They are tampering with the Class and must be sanctioned.  In exchange for a paid vacation day on the Juneteenth holiday starting in 2023 (approximately $160 in value), which Defendant PTS gave to the Union, the Union in return gave up possibly millions of dollars for its members.  This is a type of settlement or elimination of rights that requires judicial supervision under *Cheeks v. Pancake House.* 796 F.3d 199 (2d Cir. 2017).  Based on the Addendums, Plaintiffs' counsel has already compelled compensation on behalf of the Class of at least $160 per person.

Due to the clear violation of the rights and protections afforded to putative class members, the arbitration provisions detailed in the Addendums must not be applied to Plaintiffs or prospective class members.

### E. Defendants' Prosecution of this Action Establishes a Waiver of Enforcement of any Arbitration Agreement

While there is no contract which may even arguably be claimed to bind Plaintiffs WORTHAM and LEONARD, Defendants' delay in requesting arbitration constitutes a waiver of any contractual right to arbitrate against all the Plaintiffs. Courts in this circuit consider three factors when determining whether a party has waived its right to arbitrate: "(1) the time elapsed

15

from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010) (citation and quotation marks omitted); *accord Policy Admin. Sols., Inc. v. QBE Holdings, Inc.*, No. 15 Civ. 2473, 2019 U.S. Dist. LEXIS 148632, 2019 WL 4126464, at *7 (S.D.N.Y Aug. 30, 2019).

Here, all three factors dictate a waiver of the right to arbitrate occurred in this case. *La. Stadium & Exposition Dist.*, 626 F.3d at 159 (application of these factors is "specific [to the] context of each particular case" and lacks a "rigid formula or bright-line rule.").

  1. *The first factor – time elapsed from when litigation was commenced until the request for arbitration – favors waiver.*

Plaintiffs filed the Complaint last year on January 6, 2021. *See* Plaintiff WORTHAM's Complaint [ECF 1]. Defendants did not request to arbitrate the claims until December 22, 2021, almost 1 year after the litigation began. *See* Defendants' Letter to the Court [ECF 50]. Further, Defendants did not provide the real basis for their request until the instant motion served on February 28, 2022, more than a year after litigation in this action began. Because Defendants did not have an enforceable arbitration with respect to wage claims, they sought to manufacture arbitrations by Addendum during the litigation of the Class lawsuit in February of 2022.

Courts in this Circuit find delays of less than even six months enough to warrant a finding of waiver. *See PPG Industries, Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 108 (2d Cir. 1997) (finding waiver in part because "approximately five months passed between the time defendants asserted arbitrable claims and [the plaintiff] filed its petition to compel"); *see also Doe v. Trump Corp.*, 453 F. Supp. 3d 634, 638-639 (S.D.N.Y. 2020) (finding waiver in part because "Defendants did not request to arbitrate the claims until…over eight months after

the litigation began."); *Leadertex Inc. v. Morganton Dyeing and Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (finding waiver in part because the defendant "could have invoked the arbitration clause at the outset of the litigation" but instead "allowed seven months…to elapse before seeking to enforce the contractual arbitration clause."); *Commercial Lubricants LLC v. Safety-Kleen Sys.*, 2018 U.S. Dist. LEXIS 178649 at *7 (E.D.N.Y. Oct. 17, 2018) (finding waiver in part because "Defendant waited seven months…to raise arbitration issue").

Here, over a year has elapsed since Plaintiff WORTHAM's filing of the action, which under the Second Circuit is more than enough to favor waiver under the first prong.

2. *The second factor – the amount of litigation to date, including motion practice and discovery – favors waiver.*

"The Second Circuit has generally found that a party waves its right to arbitrate when it engaged in protracted litigation, such as extensive pre-trial discovery and substantive motions over the course of several months before seeking arbitration." *Policy Admin. Sols., Inc.*, 2019 U.S. Dist. LEXIS 148632 at *8 (*quoting Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 101 (S.D.N.Y. 2017)).

Here, as of the date of this letter, parties have: (1) exchanged preliminary discovery, (2) engaged in Court hearings, (3) argued several discovery motions, (4) Plaintiff WORTHAM filed a motion for collective certification, (5) Plaintiffs won their motion to Amend the Complaint to pursue claims on a multi-state basis, and (6) opposed to premotions request for Defendants' motion to dismiss (in writing and by oral argument) and opposed this instant motion.

As parties have undergone considerable litigation, the second factor clearly demands waiver.

*3.   The third factor – prejudice to Plaintiffs – favors waiver.*

"[The Second Circuit has] recognized two types of prejudice: substantive prejudice and prejudice due to excessive cost and time delay." *Mason Tenders Dist. Council of Greater N.Y. v. Gilbane Bldg. Co.*, 2018 U.S. Dist. LEXIS 162337 at *20 (S.D.N.Y. Sep. 19, 2018) (*quoting La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010)). Both substantive and procedural prejudice exist in this case.

Defendants intend to limit any adjudication of this action to only Plaintiffs' individual claims, with no mechanism for class or collective certification.   Class Members will be substantively prejudiced by a dismissal.  Class Members afraid to speak out who currently believe their claims are being adjudicated through this suit will have delayed bringing their own claims. Due to Defendants' tactical year long delay, these Class Members may now have their rights and claims wholly extinguished.  The statute of limitations has not tolled for collective members.

As the Court is aware from Plaintiff WORTHAM's Motion for Conditional Certification, Plaintiff has spoken to multiple employees complaining of Defendants violations. *See* Plaintiff's Decl. at ¶3, 8-9 [ECF 21-2]. These individuals have in turn spoken with many others.  Had these individuals known that Plaintiffs would be unable to adjudicate their claims, they may well have stepped forward and brought their own claims.

Additionally, Plaintiff himself will also suffer substantive prejudice.  Substantive prejudice may be demonstrated "'when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration.'" *Doe v. Trump Corp.*, 453 F. Supp. 3d 634, 638-639 (S.D.N.Y. 2020); *see also Meridian Autonomous Inc. v. Coast Autonomous LLC*, No. 17 Civ. 5846, 2018 U.S. Dist. LEXIS 169653 (S.D.N.Y. Sep. 30, 2018). Such prejudice also exists if the defendant seeks to benefit from information obtained through judicial proceedings that would be unavailable in arbitration. *See LG Elecs., Inc. v. Wi-Lan USA, Inc.*, 623 F. App'x 568, 569-70 (2d

18

Cir. 2015) "A litigant is not entitled to use arbitration as a means of aborting a suit that did not proceed as planned in the District Court." *La. Stadium & Exposition Dist.*, 626 F.3d at 161.

Defendants make their motion for arbitration only after reviewing Plaintiff's motion for conditional certification, and within weeks of losing their opposition to Plaintiff's Motion to Amend.  Now, after receiving Plaintiff's motion for conditional certification and after Plaintiffs' winning the right to Amend the Complaint to pursue claims on a multi-state basis, Defendants now seek a change of forum.  Moreover, Defendants' obtained discovery not required in an arbitration, i.e., specifically, Plaintiff's sworn statement as to his claims.  An affidavit as to the claims in this action with which to cross-examine Plaintiff is a material and significant source of discovery. Further, in arbitrations, party depositions of FLSA and NYLL claims only occur at the discretion of the arbitrator.  In this context, Plaintiff's such sworn statement is even more significant.

In addition to the above substantive prejudice, there has also been procedural prejudice against Plaintiff.  "A dollar a week is not a trivial matter to a workingman." *Addison v. Huron Stevedoring Corp.*, 96 F. Supp. 142, 181 (S.D.N.Y. 1950).  As the Court is aware, Plaintiffs earn only slightly more than a minimum wage – workingmen.

Defendants' attempt to dismiss the case will only result in even further delay in prosecution and resolution of this matter, depriving Plaintiffs and Class Members of their rightful compensation and allowing Defendants to incur yet another violation against these vulnerable workers.

## IV.   ARGUMENT AGAINST MOTION TO DISMISS

### A.   PLAINTIFFS HAVE PROPERLY ALLEGED A SINGLE INTEGRATED ENTERPRISE

As the allegations contained within Plaintiffs' Second Amended Complaint state a valid claim for relief, Magistrate Judge Marcia M. Henry's Order of December 3, 2021, allowed Plaintiffs to Amend their Complaint.  Judge Marcia M. Henry's ruling was made over Defendants'

objections, which are fruitlessly reargued here. Multiple legally distinct entities are liable as a single employer when the entities operate as a single integrated enterprise, as in the case of "parent and wholly-owned subsidiary corporations, or separate corporations under common ownership and management." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005).

Plaintiff's SAC properly alleges a 'single integrated enterprise' as to all Defendants. Courts have repeatedly allowed employees to include other entities as defendants under the "single integrated enterprise" theory. *Perez v. Westchester Foreign Autos, Inc.*, No. 11 Civ. 6091, 2013 WL 749497, 2013 U.S. Dist. LEXIS 35808 (S.D.N.Y. Feb. 28, 2013) (denying defendants' motion to dismiss plaintiffs' FLSA claims against a parent company when plaintiff sufficiently plead defendants to be a single integrated enterprise); *Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. 74 (S.D.N.Y. 2011) (denying defendants' cross motion to dismiss when plaintiff alleged that the corporate defendants formed a 'single integrated enterprise.'); *Reyes v. Altamarea Group, LLC*, No. 10 Civ. 6451, 2011 WL 280799, 2011 U.S. Dist. LEXIS 5195 (S.D.N.Y. Jan. 18, 2011).

The FLSA provides, in relevant part, that the term, "[e]nterprise means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all activities whether performed in one or more establishments ...." 29 U.S.C. § 203(r). Typically, the three elements to be satisfied are: (1) related activities, (2) common control, and (3) common business purpose. *See Brennan v. Arnheim & Neely,* 410 U.S. 512 (1973).

The Second Circuit has most recently held that, in the employment context, the single enterprise doctrine examines four factors to determine whether two or more nominally distinct entities are actually a single employer: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.

20

Although no one factor is determinative, control of labor relations is the central concern." *See*

*Shiflett v. Scores Holding Co.*, 601 Fed. Appx. 28, 29, (2d Cir. 2015). As detailed below, Plaintiffs

properly allege facts consistent with all four factors.

(1) TTC NY's individual entities are busing companies offering the same or similar services across New York and Pennsylvania *See* DE 31-1, ¶22(d)-(e)

(2) Defendants internally transferred employees between the nominally different corporate entities controlled by Defendants' parent company TTC NY. *See* DE 31-1, ¶22(d)-(e), ¶44-45. For example, three Plaintiffs allege they drove routes for the following five (5) entities: PTS, QTS, L&M, BBC, and MAT PA. *See id.*, ¶22(d)-(e), (k)-(m). Further, discovery indicates that Plaintiff WORTHAM also drove routes for a sixth entity BTS.

(3) Defendants share a common career page allowing applicants to apply to Defendants collectively, and be placed on an as needed basis amongst the nominally different corporations. *See* id. at ¶22(j) and p. 49.

(4) Defendants used dispatchers amongst the nominally different corporate entities. *See* id. at ¶22(e) and p. 65 ¶23.

(5) The nominally different corporate entities maintained a single central office in Brooklyn, NY. *See* id. at ¶22(b).

(6) The nominally different corporate entities maintained the same executive management teams. *See* id. at ¶22(a)-(b). Specifically, Defendants operate in a shared headquarters with common CEOs and common management, at the following location 3167 Atlantic Avenue, Brooklyn, New York, which may be confirmed in many of Defendants' corporate registration documents. *See* id. at ¶22(a)-(b).

(7) That Defendants had a common centralized payroll system, which Plaintiffs allege created a system where employees would work part time for any of the nominally different corporate entities and still be paid on the same payroll. *See* id. at ¶22(d)(e). Specifically, when employees were transferred between the nominally different entities, they were paid in a single payroll system. *See* id.

(8) Plaintiffs also allege that employees received the same on-boarding documents, employee policies, human resources policies and workplace rules and guidelines. *See* id. at ¶22(n). Specifically, Defendants transferred Plaintiffs between corporate entities without providing further on-boarding documents like wage notices. *See* id.

(9) Plaintiffs all allege that they witnessed Defendants share and interchange equipment and assets on an as needed basis. *see* id. ¶11.

(10) Defendants other than TTC PA and MAT PA share a vehicle depot facility at the following location 400 Stanley Avenue, Brooklyn, NY. *See* id. at ¶¶ 22(k).

(11) Defendants share a website, which allows prospective employees to apply to all Defendants through a single shared career page. *See* id. at ¶¶ 22(i); *see also* at p. 50-51.

(12) Defendants share a website, which allows prospective customers to order rides through a single charter page. *See* id. at ¶¶ 22(j); *see also* at p. 52, 56.

21

(13)  All the Defendants use a central marketing department located at the Atlantic Avenue Garage, 3167 Atlantic Avenue, Brooklyn, New York. *See* id. at ¶¶ 22(g)

Alone, the specific allegations demonstrating common ownership and management, commonly controlled payroll, and the constant shifting of employees between entities without new on-boarding documents, would be sufficient to support an allegation of single integrated enterprise and demand the denial of Defendants' Motion to Dismiss.  However, Plaintiffs' allegations are furthered by the limited discovery produced to date.

### B. THE DISCOVERY PRODUCED TO DATE CORROBORATES PLAINTIFFS' ALLEGATIONS OF A SINGLE INTEGRATED ENTERPRISE

As detailed below, the discovery produced to date demonstrates that TTC NY is the parent company of all other Defendants in this action and is the direct employer of all the drivers operating under its umbrella.  The production to date shows that Plaintiffs and all Covered Employees were all hired and directly managed by TTC NY. *See* **Exhibit B**, Documents Demonstrating Management by Samuel Bent.   TTC NY would then cause Plaintiffs and Covered Employees to drive bus routes operated by one or more other companies under its control. *See* id.  In this case, the three (3) Plaintiffs drove routes for the following TTC NY six (6) subsidiaries: (i) Defendant MAT PA, (ii) Defendant BELLA BUS CORP., (iii) Defendant L&M, (iv) Defendant PTS, (v) Defendant QTS, and (vi) Defendant BTC (based on recent discovery). *See generally* SAC [ECF 49].

Plaintiff WORTHAM's direct manager when he drove routes for BBC, L&M, PTS, and potentially for BTS remained the same individual, Samuel Bent, an employee of TTC NY. *See* **Exhibit B**.  TTC NY, through its manager Samuel Bent, disciplined Plaintiff WORTHAM when he drove routes for BBC and when he drove routes for L&M. *Id.*  TTC NY had the power to fire, and in fact at one point discussed the potential termination and/or suspension of Plaintiff WORTHAM via email. *Id.*  As Defendants' responses and documents demonstrate, Samuel Bent

is an employee of Defendant TTC NY, and he remained Plaintiff WORTHAM's manager throughout the entirety of Plaintiff WORTHAM's employment. *Id.* TTC NY at all times directly managed Plaintiff WORTHAM despite the fact that Plaintiff WORTHAM drove for at least three of TTC NY's corporate subsidiaries: BBC, L&M, and PTS.

It is without question that TTC NY maintains pay records for all the drivers of the corporate subsidiaries for whom Plaintiff Wortham drove, and a clear inference may be made that it maintains such records for all of the subsidiaries it operates. *See* **Exhibit C**, Defendants' Interrogatory and Supplemental Interrogatory Responses at p. 18 and 37-41. As part of discovery, Plaintiff WORTHAM (the only Plaintiff for whom any discovery has been conducted) requested responses pertaining to both Plaintiff WORTHAM's employment and Defendants' employment policies and procedures generally. In providing Interrogatory and Document responses as to Plaintiff WORTHAM, only two individuals were identified as having participated in the collection of Plaintiff WORTHAM's pay records and the formation of interrogatory responses: Defendant TTC NY employees Lisa Miljoner and Samuel Bent. *See* **Exhibit C** at p. 18 and 37-41.

Defendant TTC NY directly controlled the employees, who were only nominally employed by its subsidiaries. Not only did Defendant TTC NY directly manage all employees of its subsidiaries, but TTC NY also maintained (i) all payroll records and timecards, (ii) all on-boarding documents, and (iii) set all company policy including handbooks for its subsidiaries.

The records produced to date demonstrate that TTC NY operates its subsidiaries and manages all drivers through a central Human Resource Department. For example, Plaintiff and employees are constantly transferred to work for routes for all of Defendant's subsidiaries. *See generally,* Declaration of Plaintiff WORTHAM appended to Plaintiff's Collective Motion attached hereto as **Exhibit D**. TTC NY employees do not receive new wage notices when transferring

between TTC NY's subsidiaries. Since employers are required to issue notices to new employees, this is a tacit admission that the various subsidiaries are not independent employers. *See* **Exhibit E**, the Only Wage Notice Produced to Plaintiff WORTHAM.  Employee's hours are all compiled at a central location even when they drive for multiple TTC NY subsidiaries in the same week. *See* **Exhibit F**, Plaintiff WOTHAM's Payroll Summaries. Plaintiff WORTHAM's wage notice and hiring documents were signed by TTC NY human resources personnel Chantel Rivers, who manages on-boarding for drivers for TTC NY subsidiaries and identifies herself as a Total Transport employee. *See* **Exhibit B**.  Plaintiff WORTHAM's resignation was provided to a TTC NY employee Samuel Bent terminated his employment with all TTC NY subsidiaries. *Id.*  Finally, Defendants' handbooks are identical with only the cover-page and entity name changed throughout. *See* **Exhibit G**, Defendants Handbooks.

  ***<u>In fact, Defendant TTC NY itself acknowledges that it operates all its subsidiaries!</u>*** *See* **Exhibit H**, Defendant TTC NY LinkedIn page ("Total Transportation Corp. owns and operates a number of transportation companies…the companies operating in New York are Quality Transportation Corp., L&M Bus Corp., Brooklyn Transportation Corp., Bella Bus Corp., Maggies Paratransit Corp. and GVC II, Inc…in Pennsylvania we operate MAT BUS Corp.").

  Astonishingly, Defendants' joint management and control of employees may be seen from this Motion to Compel Arbitration and Dismiss.  The Addendums demonstrate that Defendants CBAs are negotiated and drafted by the same entity.  This central negotiation and drafting are demonstrated by the coordinated effort of negotiating seven (7) Addendums, almost one for each Defendant, within a one week span.  Additionally, the central negotiation and drafting of the Addendums is seen through the almost identical language and common spelling error seen across these documents:

24

- The BTS Addendum contains in its recitations a typographical error stating "toamend" as a single word.

- The BBS Addendum contains in its recitations a typographical error stating "toamend" as a single word.

- The L&M Addendum contains in its recitations a typographical error stating "toamend" and "bargainingagreement" as single words.

- The MAT NY Addendum contains in its recitations a typographical error stating "toamend" and "bargainingagreement" as single words.

- The MAT PA Addendum contains in its recitations a typographical error stating "toamend" and "bargainingagreement" as single words.

- A comparison of two of the Addendums reveals the copy and paste nature of the terms between the agreements. *See* **Exhibit I**, Redlined Comparison of Agreements.

That Defendants centrally negotiated and drafted all these Addendums is evident from the copy and paste language and identical errors found across the agreements.

Given the clear allegations in Plaintiff's Second Amended Complaint and all the evidence produced to date, Plaintiff has more than properly alleged a single integrated enterprise. This is especially true in light of the early stage of this litigation. Dismissal of allegations of a single integrated enterprise is strongly disfavored at this stage in the litigation as the Second Circuit has found determinations against single enterprise allegations to be a fact specific inquiry. *See Brown v. Daikin Am., Inc.*, 756 F.3d 219, 226 (2d Cir. 2014) ("Whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss.").

Despite the clear evidence produced to date and the clear controlling case law stating that single integrated allegations are not suitable for motions to dismiss, Defendant still improperly seek to dismiss all claims as to the supposedly non-employing Defendants, which includes TTC NY. As described above, TTC NY is the parent entity who directly managed Plaintiffs and all putative class members.

As Plaintiff has properly pled a single enterprise and as all the evidence produced to date contribute to a demonstration of a single enterprise, the Court must once again reject Defendants' argument and deny Defendants' Motion to Dismiss.

### C. PLAINTIFFS HAVE PROPERLY ALLEGED WILLFULNESS

For the first time in this Motion to Dismiss, Defendants raise an issue with Plaintiffs' allegations of willful violation of the FLSA. Defendants have filed three premotion letters regarding their desire to seek dismissal, and this issue was never raised. *See* ECF 14, 19, and 50, Defendants' Letters to the Court Seeking a Premotion-Conference to Dismiss. Further, Defendants failed to raise this issue in parties' February 7, 2022 pre-motion conference with the Court. *See* **Exhibit A**. For this reason, Defendants did not satisfy the Court's protocol for dismissing claims, and Defendants' efforts to dismiss Plaintiffs' willfulness claims must be denied.

Regardless of the deficiencies of Defendants late claim for dismissal, Plaintiffs' claims for willfulness are properly alleged. The Second Amended Complaint alleges willfulness in the violations affecting all Plaintiffs and putative class members. *See* ¶62, ¶64 ("As such, the various violations of the FLSA, NYLL and PMWA alleged herein were committed knowingly, willfully, and intentionally by Defendants.").

Beyond the mere claim of willfulness, Plaintiff's Second Amended Complaint details allegations which necessitated Defendants' knowledge and improper affirmative actions. *See* *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988) (Explaining that under the FLSA, willful conduct is conduct that demonstrates "that the employer knew or showed reckless disregard" for potential FLSA violations.).

Plaintiff WORTHAM detailed how Defendants' improper policy reduced the compensable time for those working shifts in designated areas. While working shifts for BBC, Plaintiff

26

WORTHAM drove routes at Ward's Island.  The nature of Defendants' time-shaving required both Defendants knowledge and Defendants affirmative action.

> [During his shifts with BBC], Plaintiff WORTHAM would receive calls from Defendants' clients, homeless shelters, and would be tasked with bussing the homeless population between shelters to accommodate overcapacity.  During this period of time, Plaintiff WORTHAM's shift was scheduled for seven (7) hours between 9:00 PM to 4:00 AM…At all times, Defendants had a policy of requiring Plaintiff WORTHAM to continue taking calls, until the end of their shift.  To accommodate these end of shift calls, Plaintiff WORTHAM, FLSA Collective Members, and Class Members had to remain in the area of their assignment until the close of their shift…Defendants had a policy of failing to compensate for [ ] return time [to Defendants' Bus Depot], and Defendants compensated Plaintiff WORTHAM and Class Members only for their scheduled shifts…See SAC at ¶¶ 30-31.

If Plaintiff WORTHAM's allegations are true, Defendants must know the following: (i) Defendants know they compensate based on the shift, (ii) Defendants know they have a policy of requiring employees to stay in their designated areas until the end of their shift, and (iii) Defendants would have to know that employees are forced to drive back to the depot after their shift without compensation.

Additionally, Plaintiffs allege facts that, if true, necessitate Defendants' awareness that their policies mandated uncompensated work from both Plaintiffs and putative class members.  For example, Plaintiffs allege that they and putative class members were required to work two shifts, a morning shift picking up school kids and dropping them off at school, and an afternoon shift doing the reverse. *See* SAC at ¶¶ 33-34, 41-42, 45-46.  Plaintiffs allege that Defendants had a policy of never paying for the intervening time between the two shifts despite requiring significant work. *See id.*  As Defendants instituted the policy of not compensating between these shifts, Defendants would be aware that any work required work conducted in these intervening hours went uncompensated.

27

Plaintiffs go on to allege that "Defendants claim to pay Plaintiffs and Class Members on an hourly basis, but in reality, Plaintiffs and Class Members are paid by route." *See* ¶58, *see also* ¶39, 43. Defendants' false claim of paying employees by the hour, when really paying by the shift, would, by necessity, require Defendants' knowledge. As the violations alleged in the complaint required Defendants' knowledge, Plaintiffs properly alleged willfulness.

While Plaintiffs' SAC is properly alleged, should any deficiency be found by the Court, Plaintiffs must be granted permission to Amend. Defendants in their Memorandum of Law have raised wildly new arguments, which Plaintiffs have not had opportunity to address by way of Amendment. As such, Plaintiffs' prior Amendments were made without the benefit of Defendants' raising this new supposed deficiency. *See Amer. Sales Co., Inc. v. AstraZeneca AB*, No. 10 Civ. 6062 (PKC), 2011 WL 1465786, at *6 (S.D.N.Y. Apr. 14, 2011) (granting leave to amend where "flaws in the current pleading were not previously explored by the Court in a premotion conference.").

### D. THE COURT MUST CONTINUE TO EXERCISE SUPPLEMENTAL JURISDICTION

According to Defendants' motion, Plaintiffs' original complaint was filed two and one-half years after Defendant 21ST AVE BUS CORP. ("21A") ceased operations. *See* Defendants' Decl. of Todd Farber ¶5. Defendants argue that if Plaintiffs' claims for willfulness are dismissed, the federal claims against Defendant 21A will be time-barred and the Court should dismiss Defendant 21A from the case for lack of federal subject matter jurisdiction.

First, as none of Plaintiffs' Federal Labor Standards Act claims should be dismissed, the Court must continue to exercise federal subject matter jurisdiction against Defendant 21A.

Even should the federal claims against Defendant 21A be dismissed, the Court would still have supplemental jurisdiction as to this Defendant. In order to trigger the 28 U.S.C. § 1367(c)(3) exception to supplemental jurisdiction, a court must have dismissed all federal claims arising out

28

of a common nucleus of operative fact with the remaining state claims. *See Kegun Chen v. Oceanica Chinese Rest., Inc.*, 2018 U.S. Dist. LEXIS 140925 (E.D.N.Y. 2018). "All claims" does not mean all claims against one defendant; "all claims" means all claims in the case stemming from a common nucleus of operative fact. *See Oladokun v. Ryan*, 2011 U.S. Dist. LEXIS 109638, at *11 (S.D.N.Y. 2011) ("[§ 1367(c)(3)] does not apply in a situation where federal claims remain in the litigation, even if those claims have been dismissed against one of the parties involved."); *Wilson v. Roberson,* No. 92-CV-2709 (KMW), 1993 WL 119695, at *2 (S.D.N.Y. Apr. 14,1993).

Here, Plaintiffs' federal and state law allegations against all Defendants arise from a common violation subject to the same nucleus of operative facts. Even if the Court were to dismiss all federal claims against Defendant 21A, this Court must continue to exercise supplemental jurisdiction as to Defendant 21A's state law claims as (i) the federal claims against the other Defendants will remain and (ii) the remaining federal claims against the other Defendants arise out of the same violation and facts as the state law claims against Defendant 21A.

Plaintiffs properly pled willfulness and the Court retains federal subject matter jurisdiction over Defendant 21A. As Plaintiff's federal claims are not time-barred, the Court must deny Defendants' Motion to Dismiss Defendant 21A. However, even if the Court finds the federal claims against Defendant 21A are time-barred, the Court must deny Defendants' Motion to Dismiss and continue to exercise supplemental jurisdiction over the state law claims.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Compel Arbitration and Dismiss the Second Amended Complaint.

Dated:  New York, New York
        March 21, 2021

                         LEE LITIGATION GROUP, PLLC

                         By: */s/ C.K. Lee*
                         C.K. Lee (CL 4086)
                         Lee Litigation Group, PLLC
                         148 West 24th Street, Eighth Floor
                         New York, NY 10011
                         (212) 465-1188
                         cklee@leelitigation.com
                         *Attorneys for Plaintiffs, FLSA Collective*
                         *Plaintiffs and the Class*