UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

TOUSSAINT WORTHAM, MARCELL :
LEONARD, and MARY EVANS, *on behalf of* :
*themselves and all others similarly situated,* :
                        :
                 Plaintiffs, :   Case No.: 1:21-cv-00085
                        :   (LDH) (MMH)
       -against- :
                        :   **ORAL ARGUMENT REQUESTED**
TOTAL TRANSPORTATION CORP., a :
     New York Corporation, :
TOTAL TRANSPORTATION CORP., a :
     Pennsylvania Corporation, :
PRIDE TRANSPORTATION SERVICES, INC., :
BROOKLYN TRANSPORTATION CORP., :
BELLA BUS CORP., :
QUALITY TRANSPORTATION CORP., :
L & M BUS CORP., :
MAGGIES PARATRANSIT CORP., :
GVC II INC., :
MAT BUS CORP., a New York :
     Corporation, :
MAT BUS CORP., a Pennsylvania :
     Corporation, :
21ST AVE BUS CORP., :
                        :
             Defendants. :

-------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND PARTIAL MOTION TO DISMISS

Jeffrey D. Pollack
Kevin M. Brown
Timothy J. Quill, Jr.
MINTZ & GOLD LLP
600 Third Avenue, 25th Floor
New York, New York 10016
(212) 696-4848 (tel)
(212) 696-1231 (fax)

*Attorneys for Defendants*

DATE SERVED:  March 28, 2022

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

    The Amended Arbitration Agreements Require All Plaintiffs to Arbitrate Their Claims.........1

    The Contract Amendments are Enforceable .............................................................6

    Defendants Did Not Waive Arbitration ...................................................................7

    Plaintiffs' Claims Against the Non-Employer Defendants Should be Dismissed....................8

    Plaintiffs Fail to Allege Willfulness ......................................................................14

    The Court Should Not Exercise Supplemental Jurisdiction ..................................15

    CONCLUSION...........................................................................................................15

i

**TABLE OF AUTHORITIES**

Cases

*1199 SEIU United Healthcare Workers East v. PSC Community Servs. et al.*,
   520 F. Supp. 3d 588 (S.D.N.Y. 2021)........................................................................ 1

*Addison v. Reitman Blacktop, Inc.*,
   283 F.R.D.74 (S.D.N.Y. 2011) ................................................................................ 10

*Agarunova v. Stella Orton Home Care Agency, Inc.*,
   is misplaced. 794 F. App'x 138 (2d Cir. 2020) ..................................................... 3, 5

*Alfonso v. Maggies Paratransit Corp.*,
   203 F. Supp. 3d 244 (E.D.N.Y. 2016) ....................................................................... 6

*Art & Antique Dealers League of Am., Inc. v. Seggos*,
   2019 WL 416330 (S.D.N.Y. Feb. 1, 2019)................................................................ 6

*Baguidy v. Boro Transit Inc.*,
   283 F. Supp. 3d 14 (E.D.N.Y. 2017) ....................................................................... 11

*Benzinger v. Lukoil Pan Americas, LLC*,
   447 F. Supp. 3d 99 (S.D.N.Y. 2020)................................................................... 13, 14

*Chan v. Chinese-American Planning Council Home Attendant Program, Inc.*,
   180 F. Supp. 3d 236 (S.D.N.Y. 2016)..................................................................... 4, 6

*Chang Yan Chen v. Lilis 200 West 57th Corp.*,
   2020 WL 7774345 (S.D.N.Y. Dec. 30, 2020) ......................................................... 10

*Chen-Oster v. Goldman, Sachs & Co.*,
   449 F. Supp. 3d 216 (S.D.N.Y. 2020)........................................................................ 7

*Chui-Fan Kwan v. Sahara Dreams Co. II*,
   2018 WL 6655607 (S.D.N.Y. Dec. 19, 2018) ........................................................ 8, 9

*Dobrosmylov v. DeSales Media Group, Inc.*,
   532 F. Supp. 3d 54 (E.D.N.Y. 2021) ....................................................................... 12

*Duraku v. Tishman Speyer Properties, Inc.*,
   714 F. Supp. 2d 470 (S.D.N.Y. 2010)................................................................. 3, 4, 6

*Espada v. Guardian Service Industries, Inc.*,
   2019 WL 5309963 (E.D.N.Y. Oct. 18, 2019).......................................................... 6

*Germosen v. ABM Indus. Corp.*,
   No. 13-cv-1978, 2014 WL 4211347 & n.16 (S.D.N.Y. Aug. 26, 2014) .................... 2

*Guzman v. First Chinese Presbyterian Cmty. Affairs Home Att. Corp.*,
2021 WL 1852038 (S.D.N.Y. May 7, 2021) ................................................... 5

*Holick v. Cellular Sales of New York, LLC*,
802 F.3d 391 (2d Cir. 2015)........................................................................... 6

*Huer Huang v. Shanghai City Corp.*,
459 F. Supp. 3d 580 (S.D.N.Y. 2020)............................................................ 14

*Javier v. Beck*,
2014 WL 3058456 (S.D.N.Y. July 3, 2014) ................................................... 9

*Juarez v. 449 Rest. Inc.*,
29 F. Supp. 3d 363 (S.D.N.Y. 2014).............................................................. 11

*Klinkowitz v. Jamaica Hosp. Med. Ctr.*,
2020 WL 818943 n.2 (E.D.N.Y. Mar. 17, 2022) ........................................... 13

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*,
67 F.3d 20 (2d Cir. 1995) .............................................................................. 7

*Lopez v. Acme Envtl. Co., Inc.*,
2012 WL 6062501 (S.D.N.Y. Dec. 6, 2012) ........................................ 8, 10, 12, 13

*Meng v. Ipanema Shoe Corp.*,
73 F. Supp. 2d 392 (S.D.N.Y. 1999)............................................................. 13

*Morangelli v. Chemed Corp.*,
922 F. Supp. 2d 278 (E.D.N.Y. 2013) .................................................... 10, 14

*Oladokun v. Ryan*,
2011 WL 4471882 (S.D.N.Y. Sept. 27, 2011)............................................... 15

*Perez v. Westchester Foreign Autos, Inc.*,
2013 WL 749497 (S.D.N.Y. Feb. 28, 2013)............................................ 10, 11, 13

*Pontier v. U.H.O. Mgmt. Corp.*,
No. 10-cv-8828, 2011 WL 1346801 (S.D.N.Y. Apr. 1, 2011) ............................ 3, 5

*Raymond v. Mid-Bronx Haulage Corp.*,
15 cv 5803 (S.D.N.Y. Nov. 3, 2017) .............................................................. 3

*Reyes v. Altamarea Group, LLC*,
2011 WL 280799 (S.D.N.Y. Jan. 18, 2011) ................................................... 10

*Rodriguez v. New York Foundation for Senior Citizens Home Attendant Servs., Inc.*,
2016 WL 11707094 (S.D.N.Y. July 14, 2016) .......................................... 2, 4, 5

*Romero v. Manhattan and Bronx Surface Transit Operating Authority*,
    2002 WL 24451 (S.D.N.Y. Mar. 2, 2022) ............................................................... 15

*Rosen v. County of Suffolk*,
    121 Fed. Appx. 885 (2d Cir. 2005) ....................................................................... 15

*Stewart v. Hudson Hall LLC*,
    2020 WL 8732875 (S.D.N.Y. Oct. 19, 2020) ................................................... 10, 11

*Teshabaeva v. Family Home Care Servs. of Brooklyn & Queens*,
    198 A.D. 3d 500 (1st Dept. 2021) ........................................................................... 5

*Weiss v. Starr Rest. Org., LP*,
    2021 WL 3099895 (S.D.N.Y. July 21, 2021) ................................................... 10, 11

*Whiteside v. Hover-Davis, Inc.*,
    995 F.3d 315 (2d Cir. 2021) ............................................................................. 14, 15

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998) .................................................................................. 11

<u>The Amended Arbitration Agreements Require All Plaintiffs to Arbitrate Their Claims</u>

Mr. Leonard and Ms. Evans, as current employees, are clearly bound by the arbitration

provisions in their respective collective bargaining agreements (Mr. Leonard, Local 455/MAT-

PA; Ms. Evans, Local 917/Pride). Plaintiffs state in their opposition ("<u>Opp.</u>") that "Leonard's

employment ended in March of 2020." (Opp. at 2, 6.) That is simply not correct: Mr. Leonard

was rehired by MAT-PA on February 17, 2022 -- ten days before the MAT-PA addendum was

executed, and one month before Plaintiffs submitted their brief. (Reply Declaration of Jeff Rollo

¶ 4; *see* Feb. 27, 2022 Declaration of Jeffrey D. Pollack ("<u>Pollack Moving Decl.</u>") ¶ 11, Ex. I.)[1]

Mr. Wortham is also bound despite the fact that he is no longer employed by Bella Bus.

This issue came up just last year in *1199 SEIU United Healthcare Workers East v. PSC*

*Community Servs. et al.,* 520 F. Supp. 3d 588 (S.D.N.Y. 2021), which involved a motion to

confirm an arbitration award. In or about 2015, the union and each of the respondents signed a

memorandum of agreement that expressly included statutory claims in the arbitration provision.

In 2019, the union filed a class action grievance alleging violation of wage and hour statutes,

despite that fact that some current and former employees (including some whose employment

ended prior to the 2015 MOA), had already filed class action suits with similar claims.

---

[1]     Plaintiffs go out of their way to paint a picture of Defendants trying to pull a fast-one by amending the respective collective bargaining agreements after the February 7 conference with the Court, accusing Defendants of intentionally omitting the amendment dates. (Opp. at 2-3). But Plaintiffs know that is not true: Defendants clearly set forth dates of the operative contract amendments in their supporting declarations and exhibits. Further, Defendants did not include every relevant Collective Bargaining Agreement in their moving papers (*see* Opp. at 11) because they did not wish to burden the Court with hundreds of pages of mostly irrelevant material. If the Court wishes to review the CBAs governing the relationship between Defendants and their respective unions, however, those documents are attached as Exhibits to the Reply Declaration of Jeffrey D. Pollack ("<u>Pollack Reply Decl.</u>").

Nevertheless, the arbitrator determined that the grievances of both current <u>and former</u> employees were arbitrable. He also ruled that he had jurisdiction to decide the claims.[2]

Certain <u>former</u> employees moved to intervene, arguing that persons no longer employed when the 2015 MOA took effect were not bound by it. The court disagreed:

> [T]he Proposed Intervenors' arguments confuse the question of consent to arbitration (namely, did parties consent to arbitrate) with the question of arbitrability (namely, whether the dispute at issue is within the scope of the arbitration agreement). The searching review that the Proposed Intervenor encourages this Court to undertake is not appropriate, because the parties to the CBA–namely the Union and the Respondents–plainly agreed to arbitrate grievances and to delegate such questions of arbitrability to the Arbitrator.

*Id.* at 606. The court explained its reasoning:

> [G]iven the absence of temporal limitations in the CBA or the 2015 MOA, with the appropriate highly deferential review, this Court cannot say that the Arbitrator's finding that claims based on violations of the Covered Statutes that occurred prior to the 2015 MOA's effective date were arbitrable either failed to draw its essence from the CBA or was outside the scope of his authority. The Proposed Intervenors argue that the Union cannot represent its former employees, either in assenting to the 2015 MOA or in initiating the grievance, and thus—at least—former employees did not "consent" to arbitration. But this misconceives the relationship between a Union and its bargaining unit members and oversimplifies the CBA at issue. As the "exclusive bargaining" agent for home care employees of the Respondents, the Union had authority to enter into CBAs and subsequent agreements, on behalf of its bargaining unit members.

> The Proposed Intervenors' arguments that former employees cannot be bound by a CBA or cannot be represented by their Union in arbitration are without merit. To accept that conclusory argument would "essentially allow Union members to opt-out of their obligations under a collective bargaining agreement by simply withdrawing from their union prior to bringing suit." *Germosen v. ABM Indus. Corp.*, No. 13-cv-1978, 2014 WL 4211347, at *6 & n.16 (S.D.N.Y. Aug. 26, 2014). Indeed, courts in this Circuit have compelled former employees to arbitrate claims under CBA alternative dispute provisions, including in instances where supplemental agreements were executed after the plaintiff ceased employment. *See e.g., Rodriguez*, 2016 WL 11707094, at *3 (finding a former employee who ceased working prior to the date the 2015 MOA took effect was still compelled to arbitrate her wage-hour claims, including statutory claims); *Pontier v. U.H.O. Mgmt. Corp.*, No. 10-cv-8828, 2011 WL 1346801, at *3 (S.D.N.Y. Apr. 1, 2011) (the fact that

---

[2]    He expressly excluded from the award the named plaintiffs in the pending state cases because other courts had ruled they were not compelled to arbitrate. *See id.* at 596-97.

2

plaintiff was discharged before the union executed a supplemental agreement requiring arbitration of Title VII claims "d[id] not relieve Plaintiff of his obligation to abide by the mediation and arbitration provisions" contained therein); *Duraku v. Tishman Speyer Properties, Inc.*, 714 F. Supp. 2d 470, 474 (S.D.N.Y. 2010) (compelling arbitration of an employees' Title VII and state law discrimination claims, based on a supplemental agreement's alternative dispute resolution provision negotiated after the claims were filed).

The Proposed Intervenors' [and Plaintiffs' here] reliance on the Court of Appeals' summary affirmance in *Agarunova v. Stella Orton Home Care Agency, Inc.*, is misplaced. 794 F. App'x 138 (2d Cir. 2020). In *Agarunova*, the Court of Appeals affirmed the district court's determination that a former employee could not be compelled to arbitrate by the 2015 MOA because she was no longer an employee or 1199 SEIU member when the 2015 MOA took effect. However, the panel declined to address the employer's argument that this was a "question of arbitrability" that was delegated to the arbitrator under the CBA, because that issue was not properly raised in the district court. Because the question of whether the Arbitrator's jurisdiction extended to former employees' statutory claims is a question of arbitrability, and the CBA delegated such questions to the Arbitrator, *Agarunova* does not support the Proposed Intervenors' argument. Because the CBA and 2015 MOA evince a clear consent to arbitrate and delegate questions of arbitrability to the Arbitrator, and because the Arbitrator's Award is sufficient to survive the highly deferential review appropriate for confirmation of LMRA arbitration awards, the Award is confirmed.

*Id.* at 607-08 (some citations omitted).

Here, as in that case, the arbitration provisions in the following agreements provide that the <u>arbitrator</u> shall determine issues of arbitrability: Bella (Pollack Moving Decl., Ex. C ¶ 9); Brooklyn (Pollack Moving Decl., Ex. B ¶ 9); L&M (*Id.*, Ex. E ¶ 9); MAT-NY (*Id.*, Ex. H ¶ 9); MAT-PA (*Id.*, Ex. I ¶ 9); Quality (Pollack Reply Decl., Ex. 16). Inasmuch as Wortham was covered by the Local 355/Bella CBA, it is for an arbitrator, not this Court, to determine if he is covered by the addendum.

In a decision in *Raymond v. Mid-Bronx Haulage Corp.,* 15 cv. 5803 (S.D.N.Y. Nov. 3, 2017) (*see* Pollack Reply Decl., Ex. 13), the court compelled a former employee to arbitrate his claims even though he left employment before the arbitration provision was amended.

Plaintiffs cite no legal authority that supports the proposition that a union may not

> represent ex-employees. Rather, the cases cited in [p]laintiffs' letters pertain either to former employees who are no longer members of the relevant union or to disputes involving the mandatory bargaining obligations imposed upon employers by the National Labor Relations Act, which are not at issue here. Indeed, many of the cases cited by [p]laintiffs confirm that a union may legally and fairly represent former employees.

*Id.* at 4-5 (citations omitted).

In *Chan v. Chinese-American Planning Council Home Attendant Program, Inc.,* 180 F. Supp. 3d 236 (S.D.N.Y. 2016), the court reached the same conclusion.

> Plaintiffs seek to avoid this mandatory arbitration clause by arguing that the agreement to arbitrate embodied in the 2015 MOA cannot apply retroactively to claims that may have accrued prior to the execution of the 2015 MOA. This argument is meritless. The Second Circuit has indicated that, in the absence of a provision placing a temporal limitation on arbitrability, an arbitration provision may cover claims that accrued prior to the execution of the agreement to arbitrate. Significantly, the arbitration provision at issue here contains no such clear limiting language. Furthermore, to the extent there is doubt about the scope of arbitrable issues, the Court must resolve that doubt in favor of arbitration.

*Id.* at 241.

Similarly, in *Rodriguez v. New York Foundation for Senior Citizens Home Attendant Servs., Inc.*, 2016 WL 11707094 (S.D.N.Y. July 14, 2016), the court held that plaintiff was bound by the arbitration provision modified after his employment ended.

> The Second Circuit has indicated that, in the absence of a provision placing a temporal limitation on arbitrability, an arbitration provision may cover claims that accrued prior to the execution of the agreement to arbitrate. Plaintiff cannot point to any temporal limit on arbitrability in either the 2001 CBA or the 2015 MOA; the language covering the scope of eligible disputes for arbitration provides that "all" disputes, arising "in any manner" under the relevant statutes must be arbitrated. Thus, the 2015 MOA applies to [p]laintiff's claims.

*Id.* at *3 (citations and quotations omitted).

In *Duraku v. Tishman Speyer Properties, Inc.,* 714 F. Supp. 2d 470 (S.D.N.Y 2010), defendant first informed the court of a modified CBA arbitration provision when it filed its reply brief in support of its motion to compel arbitration. The court held that plaintiff was bound by the

supplemental agreement even though his employment ended prior.

> The fact that the February 2010 Agreement does not expressly state that it applies "retroactively" or to employees who, like plaintiffs, have already elected to pursue their statutory rights in another forum does not relieve plaintiffs of their obligation to abide by the mediation and arbitration protocol. The February 2010 Agreement states: "*Whenever* it is claimed that an employer has violated the no discrimination clause (including claims based in statute) of one of the CBAs, ... the matter *shall* be submitted to mediation." (Emphasis added.) Thus, mediation is available *whenever* the "no discrimination" clause of the CBA is allegedly violated . . . .

*Id.* at 474. *See also Pontier*, 2011 WL 1346801 at *3 ("That the Supplemental Agreement does not expressly state that it applies retroactively or to employees who, like Plaintiff, have been discharged before filing suit does not relieve Plaintiff of his obligation to abide by the mediation and arbitration provisions."). *But see Agarunova*, 794 F. App'x 138; *Teshabaeva v. Family Home Care Servs. of Brooklyn & Queens,* 198 A.D. 3d 500 (1st Dept. 2021). *Cf. Guzman v. First Chinese Presbyterian Cmty. Affairs Home Att. Corp.*, 2021 WL 1852038, *4 (S.D.N.Y. May 7, 2021) (certifying for appeal: "Whether this Court has federal jurisdiction, pursuant to Section 301 of the LMRA over state court actions in which the state court plaintiffs filed motions to vacate an arbitration award and stay further arbitration proceedings in a class action arbitration that began pursuant to a collective bargaining agreement."); 2d Cir. Case No. 21-2106-civ.[3]

---

[3]   Plaintiffs argue that defendants failed to provide "any document or testimony that these mid-contract addendums have been ratified or do not require ratification pursuant to each CBA or the bylaws with plaintiffs supposed unions." (Opp. at 11) (emphasis added). Defendants need not make that showing. *See Rodriguez,* 2016 WL 11707094, at *3 ("absent any evidence that the Union [acted] in bad faith or on an arbitrary or discriminatory manner, plaintiff does not have a claim that she was inadequately represented such that the agreement is invalid and she is excused from its application.").

Plaintiffs' argument that Defendants did not establish that they were members of any of the unions (*see* Opp. at 11-12) is a red herring given the recognition and union security clauses in the CBAs that require employees to be members in good standing of the union to remain employed. Nevertheless, as set forth in the Reply Declaration of Janine Cataldo ("Cataldo Reply Decl."), documents showing Plaintiffs' respective membership are attached to the Reply Declaration of Jeffrey D. Pollack: Wortham, as employee of Bella, Local 355; Evans, as current employee of Pride, Local 917; and Leonard, as current employee of MAT-PA, Local 455. (*See* Cataldo Reply Decl. ¶¶ 3-5; Pollack Reply Decl., Exs. 10-12.)

Plaintiffs also argue that this motion differs from that presented in our pre-motion letter. Even if that were true (it is not) it is not grounds to deny the motion. *See Art & Antique Dealers League of Am., Inc. v. Seggos*, 2019 WL 416330, at *2 (S.D.N.Y. Feb. 1, 2019) ("that Defendants did not raise the issue

Defendants argue that the CBAs do not provide a mechanism for individual employees to pursue arbitration (Opp. at 12-13), but that is not sufficient to defeat this motion. "Based on *Penn Plaza*, the Court cannot find that the mere existence of a provision in a collective bargaining agreement that confers unfettered discretion on the union in deciding which claims to arbitrate— *without* any showing that the union, *in fact*, exercised that discretion to block arbitration of an employee's claims and left him without recourse—is enough for the Court to find a substantive waiver." *Alfonso v. Maggies Paratransit Corp.,* 203 F. Supp. 3d 244, 249–50 (E.D.N.Y. 2016). *See also Espada v. Guardian Service Industries, Inc.,* 2019 WL 5309963, *5 (E.D.N.Y. Oct. 18, 2019) ("the CBA must be construed as preserving an employee's right to litigate their statutory discrimination claims where the Union has declined to arbitrate the claim under the CBA").

<u>The Contract Amendments are Enforceable</u>

Plaintiffs devote three pages of their brief to arguing that arbitration agreements signed after litigation are unenforceable (*see* Opp. at 13-15), but they fail to appreciate the difference between individual arbitration agreements and a collective bargaining agreement. *See, e .g., Chan,* 180 F. Supp. 3d at 245 ("[T]his case involves an arbitration clause contained in a collective bargaining agreement, a circumstance that the [c]ourt in <u>*Holick*</u> *[v. Cellular Sales of New York, LLC,* 802 F.3d 391 (2d Cir. 2015)], expressly distinguished from the individual contracts at issue in that case."). Not a single one of Plaintiffs' cited cases in this section involved a collective bargaining agreement. Thus, the Court should reject that argument.

---

of Plaintiffs' standing in their pre-motion letter or during the pre-motion conference does not mean they cannot raise the issue on a motion to dismiss"); *see also Duraku,* 714 F. Supp. 2d 470 (S.D.N.Y 2010) (defendant first informed court of change in CBA's arbitration language in its reply brief).

<u>Defendants Did Not Waive Arbitration</u>

Plaintiffs argue that Defendants' "prosecution" of the action acts as a waiver of arbitration. (*See* Opp. at 15.) That is utterly ridiculous -- Defendants moved to compel arbitration in their very first responsive pleading. And the litigation is in its very early stages, despite Plaintiffs' unilateral filing of a motion for conditional certification before entry of a scheduling order (*see* ECF No. 24) and serving numerous discovery requests even with a motion to stay discovery pending before the magistrate (*see* ECF No. 56). Neither party has taken a single deposition. (Pollack Reply Decl. ¶ 19.). Plaintiffs complain that this case has been pending since January 2021 (Opp. at 10), but the delay was caused entirely by them amending the complaint and then moving for leave to amend it again (*see* ECF Nos. 17, 30); had Plaintiffs stood on their original complaint, there would have been no delay.

Plaintiffs argue that Defendants had the advantage of "reviewing plaintiffs' motion for conditional certification" including "Plaintiff's sworn statement as to his claim." (*See* Opp. at 19.) But Plaintiffs cannot manufacture their own prejudice by unliterally serving a motion for conditional certification before the Court had even entered a scheduling order. In any event, having one plaintiff's sworn statement is not the level of prejudice necessary to deny arbitration. *See Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 26 (2d Cir. 1995) ("Since it has divulged no significant information in discovery, the only prejudice [plaintiff] can claim is the expense and delay inherent in the procedure. . . . without more, [these] do not constitute prejudice sufficient to support a finding of waiver.") Thus, Plaintiffs will not suffer any prejudice in arbitration, and the Court should hold that Defendants did not waive arbitration. *See Chen-Oster v. Goldman, Sachs & Co.,* 449 F. Supp. 3d 216, 233-35 (S.D.N.Y. 2020) (no

waiver where defendant moved to compel in first responsive pleading following class certification, <u>ten years</u> into the litigation).

Thus, the Court should compel arbitration of all claims of all three Plaintiffs and stay this matter pending said arbitrations.

<u>Plaintiffs' Claims Against the Non-Employer Defendants Should be Dismissed</u>

Alternatively, the Second Amended Complaint ("<u>SAC</u>") should be dismissed against the Non-Employer Defendants (TTC NY, TTC Penn., Brooklyn, Maggies, GVC II, MAT NY, and 21st Ave.), and nothing in Plaintiffs' opposition papers suggests otherwise.[4]

In trying to expand liability beyond the only employers for whom Wortham, Evans, and Leonard allege they actually worked, Plaintiffs ignore the key requirement of a single integrated enterprise – the exercise of "formal or functional control over the plaintiff-employees." *See Chui-Fan Kwan v. Sahara Dreams Co. II*, 2018 WL 6655607, at *3 (S.D.N.Y. Dec. 19, 2018) (citing *Lopez v. Acme Envtl. Co., Inc.*, 2012 WL 6062501, at *5 (S.D.N.Y. Dec. 6, 2012)). Absent a specific allegation of day-to-day control, Plaintiffs' single integrated enterprise theory fails and their claims against the Non-Employer Defendants should be dismissed.

Contrary to Defendants' arguments, the SAC does not contain any specific allegations that the Non-Employer Defendants exercised functional control over Wortham, Evans, or Leonard. Instead, Plaintiffs simply lump together all Non-Employer Defendants with the only entities for whom Plaintiffs allege they actually drove (Pride, Bella, Quality, and MAT PA). In fact, Plaintiffs scarcely even mention the Non-Employer Defendants by name in the SAC.

---

[4]     Plaintiffs falsely contend that because Judge Henry granted Plaintiffs' Motion to Amend, the Non-Employer Defendants are somehow precluded from moving to dismiss the Second Amended Complaint. They are simply wrong. Merely because Judge Henry permitted the amendment under the very liberal standard for amending a complaint does not make Defendants' instant motion a "fruitless[] reargue[ment]." (*See* Opp. at 20.)

Plaintiffs mention GVC (a paratransit company) only twice in their allegations, as a New York corporation based at the Atlantic Avenue Garage that shares the same "owner, shareholder, officer, director and/or supervisor" as Bella (special needs adults transportation). (SAC ¶¶ 17, 22(a)). That's it; Plaintiffs do not allege a single substantive fact tying GVC to Plaintiffs' employment. The same is true for Maggies (paratransit) and 21st Ave. (a defunct school bus company). (*See* SAC ¶¶ 16, 20, 22(a).) Plaintiffs' only allegation specific to Brooklyn is that it shares a common CEO with the other Defendants. (SAC ¶ 22(a)).

To that end, Plaintiffs' claims against the Non-Employer Defendants are like those asserted in *Javier v. Beck*, 2014 WL 3058456 (S.D.N.Y. July 3, 2014). There, the plaintiff sued his direct employer and all its affiliates under the FLSA, but did not "allege that each of the corporate defendants supervised his schedule, determined his rate of pay, or maintained his employment records." 2014 WL 305845 at *4.[5] The plaintiff alleged "remarkably few details" regarding his relationships with the moving corporate defendants. *Id.* Because the complaint was "bereft of any substantive allegations regarding" those defendants, the plaintiff failed to state a claim against them as joint employers. *Id.* at *5.

Similarly, in *Kwan*, plaintiff's "conclusory, boilerplate allegations"—that defendants had a "high degree of interrelated and unified operation," shared "common management, centralized control of labor relations, common ownership, common control, common website, common business purposes and interrelated business goals," and transferred employees between hotels— were insufficient to support a single integrated enterprise theory. *Kwan*, 2018 WL 6655607, at *3-4. Those allegations did not suggest that the defendants "shared centralized control of labor relations or interrelation of operations, much less that they had any control—as a matter of

---

[5]    Here, each individual company maintains the records for its own employees. (*See* Cataldo Reply Decl. ¶ 6.)

economic reality—over [p]laintiff." *Id.* at *4. So too, here, although Plaintiffs may allege that the Non-Employer Defendants were subsidiaries of TTC NY, shared a common website, and had common ownership and management (*see* SAC ¶ 22), Plaintiffs do <u>not</u> allege that any of the Non-Employer Defendants exercised any day-to-day control over Plaintiffs' conditions of employment. This, alone, is <u>fatal</u> to Plaintiffs' claims against the Non-Employer Defendants.

Judge Cogan has noted that the central issue in determining if a company is part of an integrated enterprise is whether it was "the final decision-maker with regard to <u>the employment issue underlying the litigation</u>." *Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 286 (E.D.N.Y. 2013) (quotation and citation omitted) (emphasis added). Here, the purported common policies in Paragraph 22 of the SAC do not show that the Non-Employer Defendants made decisions regarding Plaintiffs' conditions of employment. This, too, warrants dismissal.

Plaintiffs argue that claims of a single integrated enterprise "are not suitable for motions to dismiss." (*See* Opp. at 25.) But Defendants cite several cases in their moving brief in which courts granted motions to dismiss complaints that were premised on a single integrated enterprise theory, including cases where Plaintiffs' counsel here represented the plaintiffs.[6] Plaintiffs

---

[6]      *See, generally*, Defendants' Br. (citing, *inter alia*, *Weiss v. Starr Rest. Org., LP*, 2021 WL 3099895 (S.D.N.Y. July 21, 2021); *Stewart v. Hudson Hall LLC*, 2020 WL 8732875 (S.D.N.Y. Oct. 19, 2020), *adopted*, 2021 WL 735244 (S.D.N.Y. Feb. 24, 2021); *Chang Yan Chen v. Lilis 200 West 57th Corp.*, 2020 WL 7774345 (S.D.N.Y. Dec. 30, 2020), *Lopez*, 2012 WL 6062501 (S.D.N.Y. Dec. 6, 2012)).
        In contrast, Plaintiffs cite only three cases in which the court found plaintiff sufficiently alleged a single integrated enterprise theory. (*See* Opp. at 20 (citing *Perez v. Westchester Foreign Autos, Inc.*, 2013 WL 749497 (S.D.N.Y. Feb. 28, 2013); *Addison v. Reitman Blacktop, Inc.*, 283 F.R.D.74 (S.D.N.Y. 2011); and *Reyes v. Altamarea Group, LLC*, 2011 WL 280799 (S.D.N.Y. Jan. 18, 2011)). In both *Reyes* and *Addison*, the court does not appear to have engaged in a substantive analysis of the alleged facts, but instead accepted conclusory allegations. In more recent cases, courts engage in a more detailed and careful review of the allegations in complaints to confirm they are sufficiently specific to support a single integrated enterprise theory. Further, *Perez* is distinguishable from the instant case because in *Perez*, the plaintiffs alleged that all the defendants had only one employee handbook – for "Bay Ridge Automotive Management Corp. ("BRAM") and All Affiliated Dealerships" – which defined the company as "BRAM and its affiliated dealerships," and included timekeeping and work schedule policies for all affiliates. *See Perez*, 2013 WL 749497, at *8. Here, that simply is not the case. *See also Juarez v. 449 Rest. Inc.*, 29 F.

simply ignore these factually analogous cases in their opposition. Moreover, as noted in Defendants' original moving papers, opposing counsel here represented the plaintiffs in two of those cases—*Weiss* and *Stewart*. (*See* Defendants' MOL at 15 n.7.) Amazingly, Plaintiffs did not even mention—let alone attempt to distinguish—those cases.

Tacitly conceding that the allegations in the SAC—Plaintiffs' <u>third</u> attempt to assert a claim against some of the Non-Employer Defendants—fail to support a single integrated enterprise theory, Plaintiffs spend nearly five pages discussing exhibits that they contend support their theory. (*See* Opp. at 22-26 (discussing Exhibits B - I, attached to Plaintiffs' Opp.). The Court should reject out-of-hand Plaintiffs' argument that relies on such purported "evidence."

As an initial matter, these exhibits should have been attached to a declaration from a witness with personal knowledge of the facts asserted therein, rather than appended to Plaintiffs' brief. Further, Plaintiffs submitted these exhibits for the <u>first time</u> in their opposition brief; not one of them appears anywhere in Plaintiffs' SAC. (*See* SAC Exs. 1 - 3.) A party cannot amend its complaint through statements in its briefs. *See, e.g.*, *Baguidy v. Boro Transit Inc.*, 283 F. Supp. 3d 14, 26 (E.D.N.Y. 2017) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)). Rather than addressing relevant case law cited by Defendants, Plaintiffs submitted new exhibits -- in their <u>fourth</u> attempt to state a claim against the Non-Employer Defendants. How many bites at the proverbial apple do Plaintiffs expect?

Were the Court to consider the exhibits appended to Plaintiffs' Opp., it should still dismiss Plaintiffs' claims against the Non-Employer Defendants because these exhibits do not allege "a relationship of control between the [Non-Employer Defendants] and themselves." *See*

---

Supp. 3d 363, 368 (S.D.N.Y. 2014) (owner of all chain restaurants hired and paid plaintiffs himself and was person plaintiff spoke to about a pay increase, and employees in all restaurants wore same uniforms).

*Lopez*, 2012 WL 6062501, at \*4 (S.D.N.Y. Dec. 6, 2012). Indeed, none of the exhibits suggests that the Non-Employer Defendants exercised functional control over Plaintiffs' employment. In fact, aside from a reference to the LinkedIn page (Opp. Exhibit H) and the caption, the terms "Maggies" (or "MPC") and "GVC" do not appear in Plaintiffs' opposition papers at all.

Even where the exhibits reference one of the Non-Employer Defendants, they are still insufficient. Exhibit B to Plaintiffs' Opp., for example, merely suggests that the general manager of TTC NY (Bella's parent company) may have been involved in certain decisions regarding discipline for Wortham. But officers with positions in different companies, including a parent and subsidiary, often change hats to represent the two entities separately; that, alone, does not make the two companies a single integrated enterprise. *See Dobrosmylov v. DeSales Media Group, Inc.*, 532 F. Supp. 3d 54, 63 (E.D.N.Y. 2021).

In *Lopez*, 2012 WL 6062501, the court dismissed the complaint.

Similarly, Plaintiffs fail to allege that the Corporate Moving Defendants had functional control over the Plaintiffs. To be sure, Acme Environmental shares offices with the other companies in the Acme Group, and all of the companies within the Acme Group shared cleaning supplies.

\*\*\*

The Acme Group produces nothing. It is a collection of companies that perform separate services to accommodate the needs of commercial kitchen owners. When Acme Environmental performed on its contracts, responsibility for and supervision of Acme Environmental's employees never passed to the Corporate Moving Defendants. Instead, "at all times relevant," Acme Environmental's employees reported directly to Schwartz, their supervisor within Acme Environmental, "who had the power to direct and evaluate the work of Plaintiffs ... and to hire, fire, and schedule."

As an "economic reality," the Corporate Moving Defendants had no control over Acme Environmental's cleaners. The bookkeeper, accountant, and general manager of the Acme Group provide a foil to illustrate this point. Unlike Plaintiffs, these shared employees were paid by each company within the group. As they performed their duties to each company, their business shifted from one employer to another. And, as managers and administrators, their services were not for clients; they

worked exclusively for the companies in the Acme Group. Each member of the Acme Group had functional control over the shared employees. By contrast, Acme Repairs, Acme Refrigeration, and Factory Parts had no control over Acme Environmental's cleaners.

*Lopez*, 2012 WL 6062501, at *5 (emphasis added).[7]

In fact, Plaintiffs' own exhibits show that even the Defendants who allegedly employed Plaintiffs operate as distinct entities. Exhibit G shows that Bella, L&M, Pride, and Quality each has its own employee handbook. (*See* Opp. Ex. G.) In contrast, in *Perez*, all the defendants used a single handbook that expressly applied to all affiliated companies. 2013 WL 749497 at *8. That Bella's, L&M's, Pride's, and Quality's handbooks are similar suggests only that these four companies rely on the same counsel to advise them on employment policies. Plaintiffs do not cite any case to suggest that this supports their single integrated enterprise theory.[8] Indeed, courts have reached the opposite conclusion. *See, e.g.*, *Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99, 135 (S.D.N.Y. 2020) ("The fact that a subsidiary adopted policies promulgated by its parent is insufficient to show that the parent exercised centralized control over the subsidiary's employees.") (citation and quotation omitted); *Meng v. Ipanema Shoe Corp.*, 73 F. Supp. 2d 392, 405 (S.D.N.Y. 1999) ("common benefits package speaks only to economies of scale . . . and not to centralized control of labor relations") (citation and quotation omitted).

Distinct entities that together actually exercise control over a plaintiff's day-to-day employment may support a single integrated enterprise theory, but the SAC does not include

---

[7]     Further, that two TTC NY employees collected records for responding to Plaintiffs' Document Requests and Interrogatories does not suggest control over Plaintiffs' day-to-day employment either.

[8]     Similarly, rather than demonstrating the existence of a single integrated enterprise, the repeated errors in the CBA addenda that Plaintiffs identify in their Opp. merely reflects that the Defendants used the same attorney to draft the addenda to their respective CBAs. *See* Opp. at 24-25 & Ex. I. "[T]hat parties are represented by the same counsel in a different matter does not make them 'employers' in the present litigation; nor is 'control' established by representation by the same law firm." *Klinkowitz v. Jamaica Hosp. Med. Ctr.*, 2020 WL 818943, at *6 n.2 (E.D.N.Y. Mar. 17, 2022).

13

such allegations. To the contrary, the allegations here suggest a corporate parent (TTC NY) and its subsidiaries utilizing economies of scale by using a similar template for different subsidiaries' employee handbooks (Opp. Ex. G), relying on a payment processing company for payroll for all subsidiaries (*see* SAC ¶ 22(h)), maintaining a single centralized website and social media presence (*see* SAC ¶ 22(i), (j); Opp. Ex. H), and relying on the same format for timecards (Opp. Ex. F). These facts simply cannot support a claim of a single integrated enterprise. *See, e.g.*, *Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 587 (S.D.N.Y. 2020) (single website or common marketing name does not support integrated enterprise); *Benzinger*, 447 F. Supp. 3d at 135 (subsidiary using policies of parent does not establish integrated enterprise).

Plaintiffs fail to allege sufficient facts to suggest that this is one of those "extraordinary circumstances" in which the Court should find the existence of a single integrated enterprise. *Morangelli*, 922 F. Supp. 2d at 285.  As such, the Court should dismiss Plaintiffs' claims against the Non-Employer Defendants in their entirety.

<u>Plaintiffs Fail To Allege Willfulness</u>

Plaintiffs fail sufficiently to allege willfulness in the SAC. Under Second Circuit precedent, conclusory allegations of willfulness are insufficient to entitle a plaintiff to the FLSA's longer three-year statute of limitations. *See Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320-21 (2d Cir. 2021). Merely stating "violations of the FLSA, NYLL and PMWA alleged herein were committed knowingly, willfully, and intentionally," as Plaintiffs do here (*see* Opp. at 26; SAC ¶ 64), does not warrant the exception to the standard two-year limitations period.

"To be a willful violation of [the] FLSA, the employer must have 'either kn[own] or show[n] reckless disregard for the matter of whether its conduct was prohibited by the Act.'" *Romero v. Manhattan and Bronx Surface Transit Operating Authority*, 2022 WL 24451, at *4

(S.D.N.Y. Mar. 2, 2022) (quoting *Whiteside*, 995 F.3d at 324)). Plaintiffs cannot point to any allegations in the SAC from which the Court could plausibly infer that Defendants acted in a "manner suggesting an awareness that their actions violated or could violate the FLSA." *Whiteside* at 324. Instead, Plaintiffs basically argue that because Defendants allegedly underpaid Plaintiffs, their actions <u>must have been</u> willful. Were these allegations sufficient, there would be no distinction between the two-year and three-year limitation provisions in the statute because <u>every</u> FLSA violation would be willful. That is clearly not what Congress intended.[9]

<u>The Court Should Not Exercise Supplemental Jurisdiction</u>

Finally, in the event the Court dismisses Plaintiffs' FLSA claims against certain Defendants but allows others to continue, the Court should decline to exercise supplemental jurisdiction over the state law claims against those Defendants. In arguing the contrary view, Plaintiffs cite *Oladokun v. Ryan*, (*see* Opp. at 29), but they ignore Second Circuit precedent referenced in that very case. *See Oladokun v. Ryan*,, 2011 WL 4471882, at *10 (S.D.N.Y. Sept. 27, 2011) (citing *Rosen v. County of Suffolk*, 121 Fed. Appx. 885, 887 (2d Cir. 2005), in which the Second Circuit instructed to pursue party-by-party exercise of supplemental jurisdiction).

<u>**CONCLUSION**</u>

For all the foregoing reasons and those set forth in Defendants' initial moving papers, Defendants respectfully request the relief sought in their instant Motion.

Dated: New York, New York
       March 28, 2022                          Respectfully submitted,

                                               MINTZ & GOLD LLP

                                               /s/ *Jeffrey D. Pollack*

---

[9]     Apparently recognizing their failure to plead willfulness, Plaintiffs now seek permission to file a <u>Third Amended Complaint</u>. (*See* Opp. at 28.) Plaintiffs' repeated failures to state plausible claims emphasizes the absurdity of their argument that Defendants somehow caused the delay in this case or that Defendants somehow waived their right to compel arbitration. *See* p. 7, *supra*.

Jeffrey D. Pollack
Kevin M. Brown
Timothy J. Quill, Jr.
600 Third Avenue, 25th Floor
New York, New York 10016
Tel: (212) 696-4848
Fax: (212) 696-1231
pollack@mintzandgold.com
brown@mintzandgold.com
quill@mintzandgold.com
*Attorneys for Defendants*

To:   C.K. Lee
      Anne Seelig
      Robert Kansao
      Lee Litigation Group, PLLC
      148 West 24th Street, 8th Floor
      New York, NY 10011
      (212) 465-1180
      cklee@leelitigation.com
      anne@leelitigation.com
      robert@leelitigation.com
      *Attorneys for Plaintiffs*