UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
TOUSSAINT WORTHAM, *et al.*,   :
                               :
                Plaintiffs,  :
                               :  <u>REPORT AND</u>
    -against-           :  <u>RECOMMENDATION</u>
                               :
TOTAL TRANSPORTATION CORP., A NEW  :  21-CV-85 (LDH)(MMH)
YORK CORPORATION, *et al.*,    :
                               :
                Defendants.  :
------------------------------------------------------------------ x
**MARCIA M. HENRY**, United States Magistrate Judge:

      Plaintiffs Toussaint Wortham, Marcell Leonard, and Mary Evans sued Defendants, bus operating companies in New York and Pennsylvania, alleging violations of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the Pennsylvania Minimum Wage Act ("PMWA"). (*See generally* 2d Am. Compl. ("SAC"), ECF No. 49.)[1] Before the Court is Defendants' motion to compel arbitration and Plaintiffs' motion to strike the documents that Defendants attach to their reply brief in support of their motion.[2] The Honorable LaShann DeArcy Hall referred the motion to compel arbitration for report and

---

[1] All citations to documents filed on ECF are to the ECF document number (i.e., "ECF No. \_\_\_") and pagination "\_\_\_ of \_\_\_" in the ECF header unless otherwise noted.

[2] Defendants submit a notice of motion to compel arbitration (Defs.' Mot., ECF No. 68), a memorandum of law (Def. Mem., ECF No. 69), the declaration of Jeffrey D. Pollack (Pollack Decl., ECF No. 70) and its eleven exhibits (Pollack Decl. Exs. A–L, ECF Nos. 70-1 through 70-11), and ten additional declarations (ECF Nos. 71–80). Plaintiffs oppose in a memorandum of law (Pls.' Mem., ECF No. 81) that attaches nine exhibits (Pls.' Mem. Exs. A–I, ECF Nos. 81-1 through 81-9). Defendants reply with a memorandum of law (Defs.' Reply, ECF No. 82), Pollack's reply declaration (Pollack Reply Decl., ECF No. 82-1), its sixteen exhibits (Pollack Reply Decl. Exs. 2–16, ECF Nos. 82-2 through 82-17), and nine additional declarations (Pollack Reply Decl. Exs. 18–26, ECF Nos. 82-18 through 82-26). Plaintiff filed a letter motion to strike (Pls.' Ltr., ECF No. 83), which Defendants oppose (Defs.' Ltr., ECF No. 84). The parties also submitted supplemental letters supporting their respective positions. (ECF Nos. 85–90, 96.)

recommendation and the motion to strike for decision. In a docket order, the Court granted Plaintiffs' motion to strike and explains its reasons herein. Further, for the reasons stated below, the Court respectfully recommends that Defendants' motion to compel arbitration should be **denied**.

I.  BACKGROUND

    A.  Factual Allegations

Wortham, Evans, and Leonard are bus drivers employed by one or more defendants at various times between 2017 and 2021. Defendants Total Transportation Corp. ("TTC NY"), Total Transportation Corp. ("TTC Penn"), Pride Transportation Services Inc. ("Pride"), Brooklyn Transportation Corp. ("Brooklyn"), Bella Bus Corp. ("Bella"), Quality Transportation Corp. ("Quality"), L&M Bus Corp. ("L&M"), Maggies Paratransit Corp. ("Maggies"), GVC II Inc. ("GVC"), MAT Bus Corp. (based in New York) ("MAT-NY"), MAT Bus Corp. (based in Pennsylvania) ("MAT-PA"), and 21st Ave Bus Corp. ("21st Ave.") are transportation companies that provide bus services for schools, adults with special needs, homeless shelters, and elderly and disabled persons throughout New York and Pennsylvania. (SAC, ECF No. 49 ¶ 6.)

According to Wortham, he worked as a bus driver for Defendants from March 2019 to approximately April 10, 2021. (*Id.* ¶ 28.) During that period, his shifts included transporting individuals among New York City's homeless shelters for Bella and transporting students on school buses for L&M and Pride. (*Id.* ¶¶ 29–30, 32, 35.) He alleges that Defendants paid him based on the number of hours for which he was scheduled, but he "always" worked past his shift schedule and was "never" paid for that additional work time. (*Id.* ¶¶ 29–32.) He further alleges that he did not receive pay for the time required to perform

various tasks between transporting students in the morning and retrieving them in the afternoon, and that he was subject to "time shaving" of approximately six hours each day during most of his employment. (*Id.* ¶¶ 33–34, 38.) In addition to his wage and hour claims, Wortham alleges that Defendants retaliated against him after he initiated this action on January 7, 2021. (*Id.* ¶¶ 66–72.)

Evans alleges that she began working as a bus driver "for Defendants' companies" in the New York City area on or about June 3, 2017, and that she "still works for Defendants" today. (*Id.* ¶ 44.) She claims that she worked as a school bus driver first for Quality and then for Pride, but that she was not paid for any interim work performed between the end of her morning route (when she dropped students off at school) and the beginning of her afternoon route (when she picked them up from school). (*Id.* ¶¶ 46–47.) Evans further alleges that she occasionally worked for Bella on an as-needed basis, but only received paystubs generated by Pride (also reflecting her Bella hours). (*Id.* ¶ 49.) She claims that she was only paid for about six hours per day, depending on her route, regardless of the number of hours she actually worked, and that Defendants did not keep accurate records of her time. (*Id.* ¶¶ 46, 51.) She also alleges that she "observed the Defendants share buses and vehicles when needed." (*Id.* ¶ 50.)

Leonard alleges that he worked as a school bus driver for MAT-PA from October 2015 to March 2020[3] and that he typically was paid a fixed rate of six hours, depending on the specific route assigned, regardless of the number of hours he actually worked. (*Id.* ¶¶ 40–42.) Leonard further alleges that he was not compensated for any time between

---

[3] Defendants state that Leonard was rehired by MAT-PA on February 17, 2022. (Defs.' Reply, ECF No. 82 at 6.)

3

dropping students off in the morning and picking them up in the afternoon, even though he performed various tasks for Defendants during that period. (*Id.* ¶ 42.) Leonard alleges that, although his paychecks were based on a rate of $18.00 per hour, because of the uncompensated work he performed, his hourly wage fell below that amount. (*Id.* ¶ 43.)

In addition to Plaintiffs' individual allegations, the SAC includes allegations applicable to all Defendants. For example, Plaintiffs allege that Defendants paid drivers based on the bus route rather than on an hourly basis, paid only for estimated hours rather than the greater number of actual hours worked, failed to pay spread-of-hours compensation under the NYLL for workdays that exceeded 10 hours per day, did not maintain accurate payroll records, and failed to pay overtime. (*Id.* ¶¶ 58–61, 63.) Plaintiffs also claim that Defendants share common ownership, management, and support staff, and operate out of the same headquarters in Brooklyn. (*See generally id.* ¶¶ 10–20, 22(a)–(e), (g)–(m) & 56.)[4] Finally, Plaintiffs allege that "because of the common nature of the joint enterprise, all bus drivers employed by Defendants were subject to the same wage policies, on-boarding documents, employee policies, human resources policies and workplace rules and guidelines." (*Id.* ¶ 22(n).)

B.  **Procedural History**

On January 6, 2021, Wortham filed suit against TTC NY, Pride, Brooklyn, Bella, Quality, L&M, Maggies, GVC II, MAT-NY, 21st Ave., Agostino Vona, and John Cronin, alleging violations of the FLSA and NYLL for time shaving, failure to pay overtime

---

[4] For example, Wortham alleges that when he did work for Pride and L&M, his hours were reflected on his Bella paystub. (SAC, ECF No. 49 ¶ 57.)

premiums, and failure to pay spread of hours premiums. (*See generally* Compl., ECF No. 1.) As set forth below, the ensuing litigation resulted in extensive motion practice.

First, Defendants requested a premotion conference in March 2021 for their anticipated motion to dismiss. (*See generally* ECF No. 14.) In response, Plaintiffs filed the First Amended Complaint ("FAC"), which eliminated the claims against the individual defendants. (FAC, ECF No. 17.) Defendants again moved to dismiss. (*See generally* ECF No. 19.)

While that motion was pending, in June 2021, Wortham moved for conditional certification of a collective action and for leave to amend the amended complaint, which Defendants opposed. (ECF Nos. 24, 26–27.) The Court granted leave, and, in July 2021, Plaintiffs moved to amend. (*See* ECF Nos. 30–31.) In opposition, Defendants argued that Plaintiffs' claims against Maggies and GVC II were futile because employees of those Defendants are governed by collective bargaining agreements ("CBAs") that contain mandatory arbitration provisions governing wage disputes—the first time Defendants mentioned arbitration. (ECF No. 36 at 22.) Defendants did not seek to enforce the arbitration provisions, however. (*See id.*)

Thereafter, the parties engaged in several discovery disputes. (*See generally* ECF Nos. 42, 44–45.) Defendants asserted that they had produced significant discovery, including nearly 900 pages of responsive documents. (*See* ECF Nos. 43, 46.) The Court ultimately granted Plaintiffs leave to amend the FAC and ordered the parties to submit a discovery schedule. (Dec. 3, 2021 Min. Entry & Order.)

Plaintiffs filed the SAC on December 9, 2021. (*See* SAC, ECF No. 49.) Wortham and Evans alleged violations of the FLSA and NYLL, and Leonard raised claims under the

5

FLSA and the PMWA. (*Id.* ¶¶ 1–6, 86–120.) Less than two weeks later, Defendants requested leave to seek dismissal and to compel arbitration, the first time they articulated a desire to enforce the CBAs' arbitration provisions. (*See* Defs.' Ltr., ECF No. 50.) Plaintiffs opposed, noting that Defendants had not disclosed any of the CBAs on which they relied. (*See* Pls.' Ltr., ECF No. 52.) The parties also continued to dispute whether discovery should proceed, given the anticipated motions. (ECF Nos. 53, 54.)

The parties appeared for a premotion conference on Defendants' anticipated motions to compel arbitration and to dismiss in February 2022. (Feb. 7, 2022 Min. Entry & Order.) The Court issued a briefing schedule for Defendants' motion to compel arbitration, Plaintiffs' opposition, and any reply to be filed by March 28, 2022. (*Id.*) The parties continued to litigate disputes regarding the scope of discovery and the pending conditional certification motion. (*See, e.g.*, ECF No. 60 (Defendants' motion for protective order) & ECF No. 63 (Plaintiffs' motion for supplemental briefing on the conditional certification motion).) The Court subsequently stayed discovery pending resolution of the motion to compel arbitration and denied the other motions as moot or premature. (May 17, 2022 Min. Entry & Order.)

The Court denied Defendants' motion to dismiss with leave to renew and referred the remaining motion to compel arbitration for report and recommendation. (Apr. 19, 2022 Order.) Plaintiffs then moved to strike the sixteen documents attached to Defendants' reply papers. (Pls.' Ltr., ECF No. 83.) The parties appeared for oral argument on the motions to strike and compel. (Dec. 13, 2022 Min. Entry & Order; Dec. 13, 2022 Tr., ECF No. 91.) The Court granted the motion to strike and indicated its reasoning would be forthcoming.

6

(Mar. 9, 2023 Order.) In the meantime, the parties have filed supplemental materials for the Court's review related to the pending motion. (*See* ECF Nos. 85–90, 96.)

## II. DISCUSSION

### A. Motion to Strike

The Court first addresses its ruling to grant Plaintiffs' motion to strike the documents (including CBAs) attached to Defendants' reply brief on the motion to compel because the decision necessarily impacts the submissions upon which the Court relies to decide the motion to compel. (*See* Mar. 9, 2023 Order.)

Plaintiffs assert that Defendants' inclusion of the CBAs in their reply brief when they did not attach them to their initial motion is improper and prejudicial to Plaintiffs. (Pls.' Ltr., ECF No. 83 at 1.) Plaintiffs contend that the inclusion of potentially material evidence only on reply, when Plaintiffs will not have the opportunity to respond, should be rejected. Further, Plaintiffs argue that Defendants improperly withheld the CBAs, even after the Court admonished them for failing to produce the documents, and Defendants should not be able to introduce them now. (*Id.*) In opposition, Defendants respond that they did not include the CBAs in their initial motion papers because they "wished to avoid burdening the Court with hundreds of pages of irrelevant material." (Defs.' Ltr., ECF No. 84 at 1.) As stated in the Court's March 9, 2023 docket order and explained below, Plaintiffs' motion is granted.

#### 1. Legal Standard

"A court has discretion to consider documents filed in violation of procedural rules." *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010) (citing, *inter alia*, *Ruggiero v. Warner–Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005)). "It is plainly improper to submit on reply evidentiary information that was available

7

to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden." *JTH Tax LLC v. Agnant*, No. 22-CV-2385 (PKC)(CLP), 2022 WL 1556656, at *9 n.19 (E.D.N.Y. May 17, 2022), *aff'd*, 62 F.4th 658 (2d Cir. 2023) (citing *Revise Clothing*, 687 F. Supp. 2d at 387). A court may grant a motion to strike "based on Defendants' conduct," such as attaching documents to their reply brief, to support their initial motion, that they had at the time of their initial motion. *See Signature Fin. LLC v. Chicago Elite Cab Corp.*, No. 16-CV-6063 (DRH)(SIL), 2018 WL 1385896, at *2 (E.D.N.Y. Mar. 19, 2018) (granting plaintiffs' motion to strike documents attached to a reply brief; defendants "[c]uriously" filed a declaration in support of their motion purporting to attach certain documents, but no such documents were attached); *Thompson v. Spota*, No. 14-CV-2473 (NGG)(AKT), 2019 WL 2602062, at *2–3 (E.D.N.Y. June 25, 2019) (denying reconsideration of order striking documents attached to reply briefs where the documents concern "a fundamental factual question that has long been a part of the case," were available to Defendants at the time the motion was filed, and were necessary for defendants to meet their burden).

Courts have typically denied motions to strike only if they find that the party moving to strike would not be prejudiced by the newly produced documents or information. *See, e.g.*, *Madorskaya v. Frontline Asset Strategies, LLC*, No. 19-CV-895 (PKC)(RER), 2021 WL 3884177, at *18 (E.D.N.Y. Aug. 31, 2021) ("[B]ecause Plaintiff is not prejudiced by the information in Defendant's reply, there is no need to strike the reply, and the Court declines to do so."); *Siokas v. Ironstone Cap. Holdings LLC*, No. 21-CV-236 (DRH)(SIL), 2022 WL 228335 (E.D.N.Y. Jan. 11, 2022), *adopted by* No. 21-CV-236 (DRH)(SIL), 2022 WL

227235 (E.D.N.Y. Jan. 26, 2022) (denying motion to strike defendants' arguments in reply where plaintiff did not allege that he was prejudiced by the information in the reply).

2. **Analysis**

Here, it was plainly improper for Defendants to submit the CBAs on reply. *See Revise Clothing*, 687 F. Supp. 2d at 387. First, Defendants do not contest—and affirmatively conceded twice to the Court—that the CBAs were available and in their possession at the time they filed their initial motion. (*See* Feb. 7, 2022, Tr., ECF No. 81-1 at 6–7 (premotion conference); Dec. 13, 2022, Tr., ECF No. 91 at 6 (motion hearing).) At the premotion conference for the instant motion, Plaintiffs reported that Defendants refused to disclose the relevant CBAs despite Plaintiffs' requests. (*See* Feb. 7, 2022 Tr., ECF No. 81-1 at 6.) Defendants offered no cogent reason for failing to disclose the CBAs before seeking to enforce the arbitration provisions within the same CBAs. (*See id.* at 7.) Defendants further conceded that the CBAs allegedly applicable to Plaintiffs "don't have a clear and unmistaken waiver of statutory claims." (*Id.* at 8.)

Importantly, the Court expressly advised Defendants that attaching those documents was necessary for Defendants to meet their burden:

> So let's assume [the CBAs] don't have the wavier of the statutory claims, what would be the basis to suggest that I must grant your request with respect to the compulsion of arbitration when the named plaintiffs, and I'll look at the provision, you didn't provide it in your letter, presumably, you were planning to include it in your motion because if you didn't then, obviously, you wouldn't be able to prevail. So hide-the-ball can only work for so long.

(*Id.*) Despite this clear warning, and even after acknowledging to the Court that they were "going to file the collective bargaining agreement in our motion, we understand that[,]" Defendants continued to withhold the CBAs until their reply brief. (*Id.* at 10.)

9

Additionally, Defendants' conduct prejudiced Plaintiffs. Because Defendants withheld the CBAs from Plaintiffs during initial discovery and did not produce them until their reply brief, Plaintiffs did not have the opportunity to review and raise appropriate legal arguments. As Plaintiffs correctly note, had the "extremely relevant" CBAs been produced with the initial motion, Plaintiffs might have been able to raise arguments with respect to how Plaintiffs were tied to each CBA, given that Plaintiffs "seemed to be moved around between these unions and other CBAs without any express agreements." (Dec. 13, 2022 Tr., ECF No. 91 at 7–8.)[5] Defendants argue that they did not initially attach the CBAs because they "wished to avoid burdening the Court with hundreds of pages of irrelevant material." (Defs.' Ltr., ECF No. 84 at 1; Defs.' Reply, ECF No. 82 at 6 n.1; Dec. 13, 2022 Tr., ECF No. 91 at 6.) However, this reasoning is inconsistent with Defendants' filings to the Court throughout initial discovery and the Court's explicit guidance at the February 7, 2022 premotion conference.

Defendants also argue that their reply brief "does not present new arguments" with respect to the CBAs and that the CBAs were included to rebut assertions made by Plaintiffs in their opposition brief. (Defs.' Ltr., ECF No. 84 at 1.) While "reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party," it is improper to submit evidentiary information that was available to Defendants at the time of filing the motion. *Thompson*, 2019 WL 2602062, at *3. Moreover, Defendants were forewarned when the Court stated during the premotion

---

[5] According to Plaintiffs, they moved to strike rather than to file a sur-reply because the CBAs filed with the reply brief were "irrelevant material" in Defendants' own words. Therefore, Plaintiffs argue that striking them should not affect Defendants' motion. (Dec. 13, 2022 Tr., ECF No. 91 at 9; *see* Defs.' Ltr., ECF No. 84 at 1.)

10

conference, "if you didn't [include the CBAs in your motion] then, obviously, you wouldn't be able to prevail." (Feb. 7, 2022 Tr., ECF No. 81-1 at 8.) Therefore, Defendants' arguments lack merit.

For these reasons, the Court will not consider the documents attached to Defendants' reply brief in its analysis of Defendants' motion to compel arbitration. *Signature Fin.*, 2018 WL 1385896, at *2. The Court will consider the memorandum of agreement, two excerpted CBAs and five addenda (collectively, the "CBA Addenda") that Defendants attached to their motion, which were executed between February 24 and 28, 2022. (*See* Pollack Decl. Exs. A–C & E–I, ECF Nos. 70-1 through 70-8.)[6] The Court will also consider the ten declarations that Defendants attached in support of their motion. (*See* ECF Nos. 71–80.)

### B. Motion to Compel Arbitration

#### 1. Legal Standard

"The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate are 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019) (quoting 9 U.S.C. § 2). To determine whether parties are contractually bound to arbitrate a dispute, courts apply a standard similar to the summary judgment standard, drawing all reasonable inferences in favor of the non-moving party. *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 221 (2d Cir. 2019). Courts ordinarily answer four questions in this inquiry: "(1) whether the parties agreed to arbitrate; (2) the 'scope' of the arbitration agreement; (3) whether the plaintiff's federal statutory claims are 'nonarbitrable'; and (4) if some, but not all of the claims in the case are arbitrable, whether to

---

[6] Defendants do not attach an "Exhibit D" to Pollack's declaration.

stay the balance of the proceedings pending arbitration." *Id.* at 221–22. Here, the first two questions are in dispute.

"The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022) (collecting cases). "This burden does not require the moving party to show that the agreement would be enforceable—only that an agreement to arbitrate existed." *Id.* at 102. "Once the existence of an agreement to arbitrate is established, the burden shifts to the party seeking to avoid arbitration to 'show[ ] the agreement to be inapplicable or invalid.'" *Id.* (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)). Whether an agreement to arbitrate exists between the parties is determined by state contract law. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73–74 (2d Cir. 2017) (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). Under New York law, agreements must be "construed in accord with the parties' intent." *Abdullayeva*, 928 F.3d at 222 (citing *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002)). "The terms of an agreement provide the best evidence of what the parties intend, and 'a written agreement that is complete, clear[,] and unambiguous on its face must be enforced according to the plain meaning of its terms.'" *Id.*

As to the "scope" of the arbitration agreement, courts normally resolve "any doubts . . . in favor of arbitration." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983). However, one exception to this presumption arises when a union waives its members' right to bring statutory claims in court. *Id.* "The Supreme Court has held that a union can, on behalf of its members, 'agree to the inclusion of an arbitration provision in a collective-bargaining agreement,' even one that mandates arbitration of FLSA

claims." *Id.* (citations omitted). But such waivers of union members' right to bring claims in court "must be 'clear and unmistakable.'" *Lawrence v. Sol G. Atlas Realty Co., Inc.*, 841 F.3d 81, 82 (2d Cir. 2016). A "clear and unmistakable waiver exists where one of two requirements is met: (1) the arbitration clause contains an explicit provision whereby an employee specifically agrees to submit all causes of action arising out of his employment to arbitration, or (2) the arbitration clause specifically references or incorporates a statute into the agreement to arbitrate disputes." *Freeman v. River Manor Corp.*, No. 17-CV-5162 (RJD)(RER), 2019 WL 1177717, at *4 (E.D.N.Y. Mar. 13, 2019) (citation omitted). Courts apply this "clear and unmistakable" standard not to ask whether the parties clearly and unmistakably agreed to arbitrate, but "whether, once we have established that an agreement exists, that agreement clearly and unmistakably encompasses the plaintiff's statutory claims." *Abdullayeva*, 928 F.3d at 223.

2. Analysis

The CBA addenda submitted in support of Defendants' motion plainly show written, signed agreements between Plaintiffs' unions and Defendants. Plaintiffs' unions have legal authority to bind Plaintiffs to the terms of the CBA addenda because unions are "legally authorized to negotiate collective bargaining agreements on behalf of their members, and in so doing, may waive members' right to bring claims in court." *Sanchez v. Clipper Realty, Inc.*, 638 F. Supp. 3d 357, 366 (S.D.N.Y. 2022), *aff'd*, No. 22-2917-CV, 2023 WL 7272062 (2d Cir. Nov. 3, 2023) (citing 29 U.S.C. § 159(a)). Here, Wortham alleged that he worked for Bella, L&M and Pride (*see* SAC, ECF No. 49, ¶¶ 29–30, 32, 35), which all "have employees that are represented by several different unions" and whose relationship with their employees is "governed by a unique collective bargaining agreement." (Cataldo Decl., ECF

No. 72, ¶¶ 16–17.) Specifically, Bella and L&M drivers are represented by Local 355, United Service Workers Union-IUJAT, and Pride is represented by Local 917, International Brotherhood of Teamsters. (*Id.* ¶ 16.) The CBA addenda show an agreement to arbitrate between these unions and Defendants and explicitly reference "employees" of these companies. (*See* Pollack Decl. Ex. A, ECF No. 70-1 at 1 ("or any group of employees covered by this agreement"); Ex. C, ECF No. 70-3 at 1 ("the Company and the Union encourage employees to discuss the matter"); Ex. E, ECF No. 70-4 at 1 (same).) Similarly, Leonard alleged that he worked for MAT-PA (SAC, ECF No. 49, ¶¶ 40–42), whose "drivers are represented by yet another different union – Local 455, United Service Workers Union-IUJAT." (Cataldo Decl., ECF No. 72 ¶ 16.) This union also executed a CBA addendum with MAT-PA. (Pollack Decl. Ex. I, ECF No. 70-8.) Finally, Evans alleged that she worked for Quality, Pride, and Bella in the past, and currently works for Pride (SAC, ECF No. 49 ¶¶ 44, 46–49; Pls.' Mem., ECF No. 81 at 15); their employees are represented by Transportation Workers Union of Greater New York-AFL-CIO, Local 917, International Brotherhood of Teamsters, and Local 355, United Service Workers Union-IUJAT, respectively. (Cataldo Decl., ECF No. 72 ¶ 16.) Evans' employers, except for Quality, likewise executed CBA addenda with the respective employees' unions that show an agreement to arbitrate. (Pollack Decl. Ex. A, ECF No. 70-1; *id.* Ex. C, ECF No. 70-3.) Accordingly, Defendants have met their initial burden of showing that an agreement to arbitrate exists. *Zachman*, 49 F.4th at 101–02.

Notwithstanding the existence of these agreements, they apply differently to each Plaintiff. *First*, as to Wortham, whom the parties agree is no longer employed by Bella as of April 2021 (SAC, ECF No. 49 ¶ 28; Defs.' Reply, ECF No. 82 at 6), any arbitration

agreement executed after the end of his employment would not be binding under New York law. *Sanchez*, 638 F. Supp. 3d at 369 (citing *Agarunova v. Stella Orton Home Care Agency, Inc.*, 794 F. App'x 138 (2d Cir. 2020)). Federal courts have reached different conclusions on whether addenda to CBAs are binding on former employees, but New York courts have held that they are not binding. *Compare Sanchez*, 638 F. Supp. 3d at 371 (finding that unions may not negotiate on behalf of former members), *with 1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.*, 520 F. Supp. 3d 588, 607–08 (S.D.N.Y. 2021) (finding that former employees may be compelled to arbitrate claims under CBA alternative dispute provisions, including where supplemental agreements were executed after the plaintiff ceased employment[7]); *cf. Abdullayeva*, 928 F.3d at 223 (determining that plaintiff was bound by CBA arbitration provision that his union negotiated because he belonged to the union and the relevant agency employed him at all relevant times). However, the clear consensus in New York courts is that arbitration agreements executed after a plaintiff's employment ends do not bind that plaintiff. *See, e.g.*, *Teshabaeva v. Family Home Care Servs. of Brooklyn and Queens, Inc.*, 156 N.Y.S.3d 21, 22 (N.Y. App. Div. 2021); *Hichez v. United Jewish Council of the East Side*, 117 N.Y.S.3d 214, 215–16 (N.Y. App. Div. 2020). Because Wortham was no longer an employee at the time of the execution of the CBA addenda in February 2022, and thus no longer a represented union member, he cannot be retroactively bound by the arbitration clause. *See Sanchez*, 638 F. Supp. 3d at 371.

*Second*, the arbitration provisions are enforceable against Evans. Unlike Wortham, Evans is a current employee of Pride. (SAC, ECF No. 49 ¶ 44; Pls.' Mem., ECF No. 81 at

---

[7] *PSC Community Services*, however, is distinguishable from this case because it concerned a motion to confirm an arbitral award—a "very different context" from a motion to compel arbitration. *See Sanchez*, 638 F. Supp. 3d at 370.

15; Defs.' Reply, ECF No. 82 at 6.) Local 917 International Brotherhood of Teamsters represents employees of Pride, and it entered into a Memorandum of Agreement ("MOA") with Pride on February 24, 2022, while Evans was still an employee. (Pollack Decl. Ex. A, ECF No. 70-1 at 2.) Further, the arbitration provision in Pride's MOA clearly and unmistakably incorporates Plaintiffs' statutory claims. *Freeman*, 2019 WL 1177717, at *4. Specifically, the MOA states: "all disputes, complaints, controversies, claims and grievances with respect to any rights or duties created hereunder or under any federal, state, and/or local law or regulation (or by force of law by any other means) shall constitute a grievance under this Agreement." (*See* Pollack Decl. Ex. A, ECF No. 70-1 at 2, § 1.) These "specific references . . . to statutory causes of action generally" encompass Evans' claims arising under federal and state labor laws. *Lawrence*, 841 F.3d at 84 (collecting cases); *see also Sanchez*, 638 F. Supp. 3d at 369 (finding that a CBA addendum's "explicit reference to statutory claims is sufficiently clear to constitute an enforceable waiver").

*Third*, while Leonard's varied employment status presents a closer call, he is also subject to the arbitration provision of MAT-PA's CBA addendum. As noted, Leonard was a school bus driver for MAT-PA from October 2015 to March 2020 and was rehired by MAT-PA on February 17, 2022—ten days before the MAT-PA addendum was executed on February 27, 2022. (SAC, ECF No. 49 ¶ 40; Defs.' Reply, ECF No. 82 at 6; Rollo Decl., ECF No. 82-25 ¶ 4.) MAT-PA's arbitration provision includes the same clear and unmistakable waiver as Pride's MOA and Bella's CBA addendum. (Pollack Decl. Ex. I, ECF No. 70-8 at 2 ("all disputes, complaints, controversies, claims and grievances with respect to any rights or duties created hereunder or under any federal state and/or local law or regulation . . . shall constitute a grievance under this Agreement").) Therefore, because

16

Leonard was a MAT-PA employee when its CBA addendum went into effect, he is subject to its arbitration provision.

However, even if the arbitration provisions in the CBA addenda are valid and binding upon all Plaintiffs, the Court finds that Defendants have waived their right to compel arbitration in this case. Waiver "is the intentional relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022). "Federal policy strongly favors arbitration, and waiver of the right to arbitrate 'is not to be lightly inferred.'" *De Jesus v. Gregorys Coffee Mgmt., LLC*, No. 20-CV-6305 (MKB)(TAM), 2022 WL 3097883, at *7 (E.D.N.Y. Aug. 4, 2022). "To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party. That analysis applies to the waiver of a contractual right, as of any other." *Morgan*, 596 U.S. at 417 (declining to create an arbitration-specific procedural rule that a party can waive its arbitration right by litigating only when its conduct has prejudiced the other side).

Before *Morgan*, courts within this Circuit traditionally considered three factors to determine whether a party has waived its right to arbitrate, including prejudice to the other party: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *Deng v. Frequency Electronics, Inc.*, 640 F. Supp. 3d 255, 263 (E.D.N.Y. Nov. 14, 2022). While the Supreme Court eliminated the prejudice factor under *Morgan*, the decision did not clarify whether courts should (1) continue using the existing three-factor test but omit the prejudice prong (the "stripped-down arbitration standard," *see Deng*, 2022 WL 16923999, at *6) or (2) apply a general test for waiver that applies in any

other contractual dispute, which provides that "[a] contractual right may be waived if it is 'knowingly, voluntarily and intentionally abandoned'" (the "general waiver test"). *See Herrera v. Manna 2d Ave. LLC*, 20-CV-11026, 2022 WL 2819072, at *7 (S.D.N.Y. July 18, 2022) (citing *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 95 (2d Cir. 2015)). Therefore, following *Morgan*, some courts have applied the general waiver test, while others continued to use the traditional test without considering prejudice. *Compare, e.g.*, *Herrera*, 2022 WL 2819072, at *8–9, and *Deng*, 2022 WL 16923999, at *7 (applying the general waiver test), *with De Jesus*, 2022 WL 3097883, at *7 (applying the stripped-down arbitration standard).

Here, Defendants waived their right to arbitrate under either test. Under the stripped-down arbitration standard, Defendants waived any right to arbitrate because they engaged in motion practice and substantive litigation for eleven months before finally invoking their right to arbitrate. *See Carollo v. United Cap. Corp.*, No. 6:16-CV-00013 (DNH), 2022 WL 9987380, at *4 (N.D.N.Y. Oct. 17, 2022) (collecting Second Circuit cases that found five, seven, and eight months of elapsed time to favor a finding of waiver); *cf. McCants v. Team Electric, Inc.*, No. 19-CV-9565 (AJN)(RWL), 2021 WL 653122, at *5 (S.D.N.Y. Feb. 19, 2021) (finding no waiver when defendant moved to compel arbitration one year after initiation of the action when counsel located the arbitration agreement while reviewing discovery). Defendants did not raise arbitration until December 22, 2021, nearly one year after Plaintiffs filed suit in January 2021 and moved to dismiss twice, in March 2021 and May 2021. (*See* Defs.' Ltrs., ECF Nos. 14, 19, 50.) After May 2021, Defendants also submitted several substantive filings—including arguments for dismissal, against conditional certification, and regarding discovery—yet did not attempt to enforce an arbitration clause in

any of them. (*See* ECF Nos. 27–28, 32–34, 36–38, 43, 46.) In fact, Defendants acknowledged arbitration provisions for at least two defendants, Maggies and GVC II, as early as August 2021, when they opposed Plaintiff's motion for leave to amend the complaint. (*See* ECF No. 36 at 22.) Defendants' conduct thus supports a finding of waiver under the stripped-down arbitration standard.

The same conclusion follows under the general waiver analysis, which focuses on whether Defendants "knowingly relinquish[ed]" the right to arbitrate. *Morgan*, 596 U.S. at 419; *see Herrera*, 2022 WL 2819072, at *8 ("Waiver requires 'a clear manifestation of an intent . . . to relinquish [a] known right.'") (quoting *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 585 (2d Cir. 2006)). As noted, Defendants did not seek to enforce the arbitration provisions even though it would have obviated the need for the discovery and motion practice during the first eleven months of the case. (*See* Dec. 3, 2021, Min. Entry & Order) (defense oral argument on Plaintiffs' motion to amend and numerous discovery disputes with no mention of intent to pursue arbitration). This conduct, along with the substantial discovery Defendants themselves acknowledge (*i.e.*, producing 900 documents in response to one request), further supports a finding that Defendants waived the right to seek arbitration under the general waiver test. *See Deng*, 2022 WL 16923999, at *7.

Accordingly, the Court respectfully recommends that Defendants' motion to compel arbitration should be denied.

### III. <u>CONCLUSION</u>

For the reasons set forth above, the Court respectfully recommends that Defendants' motion to compel arbitration at ECF No. 68 should be **denied**. As noted in the Court's

March 9, 2023 docket order, Plaintiffs' motion to strike the documents attached to Defendants' reply brief at ECF No. 83 is **granted**.

A copy of this Report and Recommendation is being served on the parties via ECF. Within 14 days of service, a party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge DeArcy Hall. If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
May 31, 2024

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge